# United States Court of Appeals for the Federal Circuit

MEGAN JACKLER and BRANDON JAROCH

*Petitioners,*

— v. —

DEPARTMENT OF JUSTICE and DIRECTOR OF THE OFFICE OF PERSONNEL MANAGEMENT

*Respondents.*

*Petition for Review from the Merit Systems Protection Board in No. CF-0752-26-0069-I-1*

## MOTION FOR LEAVE TO FILE AMICI CURIAE BRIEF IN SUPPORT OF PETITION FOR INITIAL HEARING EN BANC

KEVIN L. OWEN
CHRISTOPHER H. BONK
ANDREW J. PERLMUTTER
WILLIAM CARTER SCHUBERT
GILBERT EMPLOYMENT LAW, P.C.
8403 Colesville Rd, Ste 1000
Silver Spring, MD 20910
(301) 608-0880
kowen-efile@gelawyer.com
cbonk-efile@gelawyer.com
aperlmutter-efile@gelawyer.com
wschubert-efile@gelawyer.com

*Counsel for Petitioner*

APRIL 13, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 26-1575

**Short Case Caption** Jackler v. DOJ

**Filing Party/Entity** Senators Chris Van Hollen, Angela Alsobrooks, Tim Kaine, Andy Kim, Gary Peters, Mark Warner

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/13/2026

Signature: *Kevin L. Owen*

Name: Kevin L. Owen

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Senator Chris Van Hollen | | |
| Senator Angela Alsobrooks | | |
| Senator Tim Kaine | | |
| Senator Andy Kim | | |
| Senator Gary Peters | | |
| Senator Mark Warner | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☑    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| Gilbert Employment Law, P.C. | Andrew J. Perlmutter | |
| Kevin L. Owen | William Carter Schubert | |
| Christopher H. Bonk | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐  Yes (file separate notice; see below)   ☐  No   ☑  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
| | | |

# MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF IN SUPPORT OF PETITION FOR INITIAL HEARING EN BANC

Pursuant to Fed. R. App. P. 29 and Federal Circuit Rule 40(i), *Amici* hereby submit this motion for leave to file the accompanying brief in support of the petition for initial hearing *en banc.* Counsel for *Amici* obtained consent to file this from Nathaniel Zelinsky (Counsel for Petitioner) and Daniel Aguilar (Counsel for Respondent).

*Amici* are six members of the United States Senate representing over 300,000 number of federal workers across their respective jurisdictions. This case has profound consequences to the separation of powers between Congress and the executive branch, as well as *Amici's* federal worker constituents. *Amici* wish to assert Congress' interest in protecting its constitutional power, its statutory framework, and their constituents.

Respectfully submitted,

Kevin L. Owen, Esq.
Christopher H. Bonk, Esq.
Andrew J. Perlmutter, Esq.
William C. Schubert, Esq.

Gilbert Employment Law, P.C.
8403 Colesville Rd., Suite 1000
Silver Spring, MD 20910
(301) 608-0880
kowen-efile@gelawyer.com
cbonk-efile@gelawyer.com
aperlmutter-efile@gelawyer.com
wschubert-efile@gelawyer.com

*Counsel for Amici*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 26-1575

**Short Case Caption:** Jackler v. DOJ

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes ___131___ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 04/13/2026

Signature: _Kevin L. Owen_

Name: Kevin L. Owen

# United States Court of Appeals for the Federal Circuit

MEGAN JACKLER and BRANDON JAROCH

*Petitioners,*

— v. —

DEPARTMENT OF JUSTICE and DIRECTOR OF THE OFFICE OF PERSONNEL MANAGEMENT

*Respondents.*

*Petition for Review from the Merit Systems Protection Board in No. CF-0752-26-0069-I-1*

**BRIEF OF AMICI CURIAE SENATORS CHRIS VAN HOLLEN, ANGELA ALSOBROOKS, TIM KAINE, ANDY KIM, GARY PETERS, MARK WARNER IN SUPPORT OF PETITION FOR INITIAL HEARING EN BANC**

KEVIN L. OWEN
CHRISTOPHER H. BONK
ANDREW J. PERLMUTTER
WILLIAM CARTER SCHUBERT
GILBERT EMPLOYMENT LAW, P.C.
8403 Colesville Rd, Ste 1000
Silver Spring, MD 20910
(301) 608-0880
kowen-efile@gelawyer.com
cbonk-efile@gelawyer.com
aperlmutter-efile@gelawyer.com
wschubert-efile@gelawyer.com

*Counsel for Petitioner*

APRIL 13, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 26-1575

**Short Case Caption** Jackler v. DOJ

**Filing Party/Entity** Senators Chris Van Hollen, Angela Alsobrooks, Tim Kaine, Andy Kim, Gary Peters, Mark Warner

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/13/2026

Signature: *Kevin L. Owen*

Name: Kevin L. Owen

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Senator Chris Van Hollen | | |
| Senator Angela Alsobrooks | | |
| Senator Tim Kaine | | |
| Senator Andy Kim | | |
| Senator Gary Peters | | |
| Senator Mark Warner | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☑      Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| Gilbert Employment Law, P.C. | Andrew J. Perlmutter | |
| Kevin L. Owen | William Carter Schubert | |
| Christopher H. Bonk | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)    ☐   No    ☑   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
| | | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................2

STATEMENT OF AUTHORSHIP AND FUNDING ..............................5

STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY
TO FILE ..........................................................................................6

INTRODUCTION ...........................................................................7

DISCUSSION .................................................................................8

  I.   The President's Removal Authority and Consequences
for Checks and Balances and the Balance of Power. ...........................8

     a.   Congress' power to Legislate in Immigration Law
and for the Federal Civil Service. .......................................................9

     b.   Congress expressed its Article I interest in setting the
parameters for Immigration Judges. .................................................13

  II.    The Board's expansive interpretation of Article II
could consume broad sections of the federal workforce. .....................16

CONCLUSION ...............................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. United States,*
   567 U.S. 387 (2012) ........................................................ 16
*Cleveland Board of Education v. Loudermill,*
   470 U.S. 532 (1985) ........................................................ 11
*Connecticut Nat'l Bank v. Germain,*
   503 U.S. 249 (1992) ........................................................ 14
*Craig v. Celeste,*
   646 F. Supp. 47 (S.D. Ohio 1986) ................................... 16
*Do v. Dept. of Housing and Urban Development,*
   913 F. 3d 1089 (Fed. Cir. 2019) ..................................... 12
*Elgin v. Dep't of the Treasury,*
   567 U.S. 1 (2012) ............................................................ 10
*Fed. Deposit Ins. Corp. v. Mallen,*
   486 U.S. 230 (1988) ........................................................ 12
*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*
   561 U.S. 477 (2010) ................................................. 11, 15
*Grosdidier v. Chairman, Broad. Bd. of Governors,*
   560 F.3d 495 (D.C. Cir. 2009) ........................................ 13
*King v. Briggs,*
   83 F.3d 1384 (Fed. Cir. 1996) ........................................ 15
*Morrison v. Olson,*
   487 U.S. 654 (1988) ........................................................ 11
*Myers v. U.S.,*
   272 U.S. 52 (1926) .......................................................... 11
*Nat'l Ass'n of Immigr. Judges v. Owen,*
   139 F.4th 293 (4th Cir. 2025) ........................................ 12

*Pham v. American Federation of Government Employees, Local 916,*
   799 F.2d 634 (10th Cir. 1986) ............................................. 13

*Polaris Innovations Ltd. V. Kingston Tech. Co.,*
   792 Fed. Appx. 820 (Fed. Cir. 2020) .................................... 15

*Seila Law, LLC v. Consumer Finance Protection Bureau,*
   519 U.S. 197 (2020) ...................................................... 11, 15

*United States v. Fausto,*
   484 U.S. 439 (1988) ............................................................ 10

*United States v. Perkins,*
   116 U.S. 483 (1886) ................................................... 7, 11, 18

*Youngstown Sheet & Tube Co. v. Sawyer,*
   343 U.S. 579 (1952) ........................................................ 9, 10

**Statutes and Regulations**

5 U.S.C. § 1101-1105 ............................................................. 12

5 U.S.C. § 1201-1222 ............................................................. 12

5 U.S.C. § 2101(1) .................................................................. 13

5 U.S.C. § 2301(b)(8)(a) ......................................................... 12

5 U.S.C. § 7511 ............................................................. 8, 13, 14

5 U.S.C. § 7513 ............................................................. 8, 15, 18

8 C.F.R. § 1003.10 .................................................................. 14

8 U.S.C. § 1229a ................................................................. 9, 14

**Rules**

Fed. Cir. R. 40(i) ..................................................................... 6

Fed. R. App. P. 29(a) ........................................................... 5, 6

**Constitutional Provisions**

U.S. Const. Art. I, § 8., cl. 4, 18 .............................................. 9

U.S. Const. Art. II, §1, cl. 1 ......................................................... 9

## STATEMENT OF AUTHORSHIP AND FUNDING

No counsel for a party authored this brief in whole or part, no party or counsel for a party contributed money to fund preparing or submitting this brief, and no person contributed money intended to fund preparing or submitting this brief. *See* Fed. R. App. P. 29(a)(4)(E).

## STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE

*Amici* are six members of the United States Senate representing their respective states: Senator Chris Van Hollen (Maryland), Senator Angela Alsobrooks (Maryland), Senator Tim Kaine (Virginia), Senator Andy Kim (New Jersey), Senator Gary Peters (Michigan), and Senator Mark Warner (Virginia). Counsel for *Amici* obtained consent to file this from Nathaniel Zelinsky (Counsel for Petitioner) and Daniel Aguilar (Counsel for Respondent). *See* Fed. R. App. P. 29(a); Fed. Cir. R. 40(i).

*Amici* have an interest in this matter because the Board's decision below raises serious consequences for the separation of powers between Congress and the executive branch. Furthermore, *Amici* collectively represent over 300,000 federal workers, many of whom may be impacted by the Board's decision. *Amici* respectfully request that this Court grant the petition for initial hearing *en banc*.

## INTRODUCTION

An *en banc* initial hearing is warranted. The Merit Systems

Protection Board's decision poses serious consequences for the

constitutional systems of separation of powers and checks and balances,

and it will affect thousands of federal workers, many of whom are

constituents of *amici*.

The Board's decision, if left standing, would subvert the

Constitutional authority of the Congress to enact any legislation

governing inferior officers in the executive branch. This defies over 140

years of Supreme Court precedent and gives the President unchecked

authority to take any action regarding inferior officers, constrained only

by the few express limitations stated in the Constitution.

The President is obligated by the Constitution to take care that

laws are faithfully executed. This includes laws that check the

executive's power like the Civil Service Reform Act of 1978 and the

Pendleton Act of 1883. The constitutional authority of Congress to enact

civil service due process legislation for even inferior officers, and the

federal workforce at large, has been recognized by the Supreme Court

since *United States v. Perkins* in 1886. Congress also has the express

power under Article I, Section 8 of the Constitution to establish a

uniform law on naturalization, a power exercised in the creation of the class of employees called Immigration Judges.

The Board's decision, if affirmed, will have far-reaching consequences across the federal workforce. If an Immigration Judge's duties can be construed to encompass the authority of an inferior officer of the United States, then the same is true for countless other federal positions. And if inferior officers can be exempted from 5 U.S.C. § 7513, then they can be exempted from most any other statute and subject to the President's nearly unchecked discretion.

Because of these consequences, this matter involves questions of exceptional importance, and *Amici* respectfully ask this Court to grant the petition for initial hearing *en banc*.

## DISCUSSION

I. **The President's Removal Authority and Consequences for Checks and Balances and the Balance of Power.**

The Board's decision permits the President to disregard the employee protections carefully set forth in the Civil Service Reform Act (CSRA) and unduly cedes Congressional power to the executive branch. *See* 5 U.S.C. §§ 7511, 7513.

### a. Congress' power to Legislate in Immigration Law and for the Federal Civil Service.

"The President's power, if any, must stem from an act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). "When the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb, for then he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter." *Id.* at 637-38 (Jackson, J., concurring).

The central constitutional provision undergirding the Board's decision is the take care clause: that the President must take care that the laws be faithfully executed. ECF 001, at 18-19 (Board Decision); U.S. Const. Art. II, §1, cl. 1. However, the Board fails to note that this case overlaps with Congress' power "to establish a uniform rule of naturalization" and enact all laws necessary and proper to carry out that power. U.S. Const. Art. I, § 8., cl. 4, 18. Indeed, in its wisdom, Congress determined that a class of employees called "Immigration Judge[s]" responsible for adjudicating inadmissibility and deportations was necessary to further a uniform rule of naturalization. *See* 8 U.S.C. § 1229a. This is an exercise of Congress' power under Article I. That

power must be acknowledged. And the President's power here is "at its lowest ebb." *Youngstown Sheet*, 343 U.S. at 637-38 (Jackson, J., concurring).

Furthermore, Congress has extensively legislated protections over the federal civil service throughout the nation's history including, but not limited to, the Pendleton Act (1883); the Lloyd-Lafollette Act (1912), the Civil Rights Act (1964), CSRA (1978), Whistleblower Protection Act (1989), and Whistleblower Protection Enhancement Act (2012). *See e.g., United States v. Fausto*, 484 U.S. 439, 443-447 (1988) (discussing the history of the CSRA); *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 5 (2012). These statutes all provide checks on the President's authority over the executive branch; it is far from a novel concept for Congress to legislate the boundaries of the executive branch's authority as it relates to the federal workforce.

As the Supreme Court has explicitly held, Congress has unquestioned authority to govern by statute the removals of inferior officers:

> We have no doubt that when Congress, by law, vests the appointment of inferior officers in the heads of Departments it may limit and restrict the power of removal as it deems best for the public

> interest. The constitutional authority in Congress to thus vest the appointment implies authority to limit, restrict, and regulate the removal by such laws as Congress may enact in relation to the officers so appointed.
>
> The head of a Department has no constitutional prerogative of appointment to offices independently of the legislation of Congress, and by such legislation he must be governed, not only in making appointments but in all that is incident thereto.

*U.S. v. Perkins,* 116 U.S. 483, 485 (1886). In 140 years of subsequent decisions, the Supreme Court has repeatedly affirmed *Perkins,* upholding Congress' authority to legislate restrictions on removal of inferior officers and other federal employees. *See, e.g., Seila Law, LLC v. Consumer Finance Protection Bureau,* 519 U.S. 197, 204 (2020); *Free Ent. Fund v. Public Co. Acctg. Oversight Bd.,* 561 U.S. 477, 483 (2010); *Myers v. U.S.,* 272 U.S. 52, 159-161 (1926)*; see also Morrison v. Olson,* 487 U.S. 654, 691-693 (1988).

The Supreme Court further instructs that federal and other public employees' rights to civil service protections from removal grounded in statute and regulations rise to the level of 5th Amendment due process. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 539-41 (1985); *accord, e.g., Fed. Deposit Ins. Corp. v. Mallen,* 486 U.S. 230, 240-

241 (1988)*; Do v. Dept. of Housing and Urban Development,* 913 F. 3d 1089, 1093-94 (Fed. Cir. 2019).

In 1978, Congress enacted the CSRA, which created the MSPB, the Office of Personnel Management (OPM), and the Office of Special Counsel (OSC). *See* 5 U.S.C. §§ 1101-1105, 1201-1222. "The CSRA devised an adjudication system that was to serve as 'a vigorous protector of the merit system'—the crux of this was the 'establishment of a *strong and independent* [MSPB] and Special Counsel.'" *Nat'l Ass'n of Immigr. Judges v. Owen*, 139 F.4th 293, 306 (4th Cir. 2025) (quoting S. Rep. 95-969, at 6-7) (emphasis in case text). "Congress was deeply concerned with preventing regression back to the 'spoils' system of the 19th century, in which employees advanced on the basis of 'political or personal favoritism.'" *Id.* (quoting S. Rep. 95-969, at 2-3). Consequently, in Title 5, Congress set forth the "merit systems principles" which, in part, provide that employees are to be "protected against arbitrary action, personal favoritism, or coercion for partisan political purposes." 5 U.S.C. § 2301(b)(8)(a).

### b. Congress expressed its Article I interest in setting the parameters for Immigration Judges.

The CSRA explicitly defines the civil service as "consist[ing] of all appointive positions in the executive, judicial, and legislative branches of the Government of the United States, except positions in the uniformed services[.]" 5 U.S.C. § 2101(1). Congress also explicitly defined which employees the CSRA does and does not apply to, and therefore which employees have removal protections. 5 U.S.C. § 7511(a), (b). Courts generally recognize that the CSRA and Title 5 stand for the overarching purpose of providing certain protections federal employees. *See e.g., Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009) ("[t]he CSRA protects covered federal employees against a broad range of personnel practices, and it supplies a variety of causes of action and remedies to employees when their rights under the statute are violated."); *Pham v. American Federation of Government Employees, Local 916*, 799 F.2d 634, 636 (10th Cir. 1986) ("[t]he CSRA aspired to 'promote a more efficient civil service while preserving the merit principle in Federal employment.' These merit principles represent a continuing concern for a politically neutral,

merit-based administration of the Civil Service system.") (quoting S. Rep. No. 969, 95th Cong., 2d Sess. 1 (1978)).

In the proceedings below, the agency and the Board both acknowledged that Jackler and Jaroch are employees under 5 U.S.C. § 7511. ECF 001, at 18 ("the agency asserts that the appellants met the definition of "employee" under 5 U.S.C. § 7511 and thus were entitled to appeal certain adverse actions to the Board"). As discussed, Congress established immigration judges as the adjudicators of deportation and admissibility. 8 U.S.C. § 1229a(a)(1). However, Congress did not opt to modify the general CSRA removal protections of Immigration Judges in a separate statute, nor are they defined in the Code of Federal Regulations. *See* 8 C.F.R. § 1003.10.

When Congress sets forth certain parameters for a position created by statute, it does so with intention. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-254 (1992) ("[w]e have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). For example, in the context of Administrative Patent Judges, a member of this Court has articulated that such positions enjoy Title 5 protections,

along with most other USPTO employees, where Congress deliberately carved out separate parameters only for the Director and Commissioner for Patents. *Polaris Innovations Ltd. V. Kingston Tech. Co.*, 792 Fed. Appx. 820, 831 (Fed. Cir. 2020) (Hughes, J., concurring).

Furthermore, "Congress knows how to exempt a civil service position from the protections found in chapters 75 and 77 of title 5 if it so desires." *King v. Briggs*, 83 F.3d 1384, 1388 (Fed. Cir. 1996). Therefore, if Congress intended to give Immigration Judges the status of inferior officers, it would have expressly done so. Or, alternatively, if it was concerned that Immigration Judges would be subject to at-will removal because of their influence and authority over executive policy, it would have crafted some sort of for-cause protection scheme seen elsewhere in the removal case law. *See e.g., Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 514 (2010); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020).

This case presents two employees situated within a longstanding framework established by Congress under Title 5, and an executive branch assertion to pluck those employees out of that framework under the authority of Article II. The Board held here that Article II does not

permit Congress to enact removal protections for inferior officers exercising significant policymaking authority in 5 U.S.C. § 7513, permitting the terminations of Jackler and Jaroch without due process. ECF 001, at 22. That wholly ignores Congressional authority under the constitution and the protections of the CSRA.

"[T]he conflict between the 'merit system' and the 'spoils system' is far from over." *Craig v. Celeste*, 646 F. Supp. 47, 48 (S.D. Ohio 1986). An initial hearing *en banc* is warranted for this constitutional impasse.

## II. The Board's expansive interpretation of Article II could consume broad sections of the federal workforce.

The Board's holding rested on the assertion that "the appellants as immigration judges wielded vast administrative authority in an area of significant consequence, and the decisions entrusted to their discretion can 'involve policy choices that bear on this Nation's international relations.'" ECF 001, at 22 (quoting *Arizona v. United States*, 567 U.S. 387, 395 (2012)). The Board pointed to the fact that Immigration Judges "exercised their 'independent judgment and discretion'… including conducting hearings and exercising [] adjudicative authorities" and "many circumstances exist where an

immigration judge's decision will remain the final decision of the United States." ECF 001, at 21.

There are currently over 2 million federal employees.[1] *Amici* represent approximately 330,599 workers across 4 states.[2] Many of these Federal Employees could likely fall within the ambit of an inferior officer under the Board's construction of inferior officers, thus rendering them at-will employees. These may include a wide and diverse group of Title 5 covered Federal employees well beyond Immigration Judges. For example, a Social Security Administration claims representative approving an application for disability, an IRS employee reviewing and approving a tax return, a National Parks ranger issuing camping permits, a Customs and Border Protection Officer admitting someone into the United States, or a Department of Agriculture food safety inspector giving a satisfactory rating to a food processing plant. All of

---

[1] *Workforce Size & Composition*, OFFICE OF PERSONNEL MANAGEMENT, https://data.opm.gov/explore-data/analytics/workforce-size-and-composition (last visited Apr. 13, 2026).
[2] *Location*, OFFICE OF PERSONNEL MANAGEMENT, https://data.opm.gov/explore-data/analytics/location (last visited Apr. 13, 2026).

these employees exercise discretion and judgment, review evidence, and make determinations that could be a final decision of the United States.

Further, the Board's decision contains no limiting principle that would prevent its reasoning from applying beyond 5 U.S.C. § 7513 or the CSRA. Instead, the Board's reasoning could fundamentally void all Congressional statutes affecting federal employees, including but not limited to minimum wage statutes, Lloyd-Lafollette Act protections to vindicate Congressional oversight authority, Hatch Act and Pendleton Act protections that ensure the civil service does not return to the spoils system. All such protections would become solely a function of discretionary executive largesse—a position that the Administration now ventures again. *See, e.g.,* 91 Fed.Reg. 5580, 5594-5595, 5599, 5600 fn.180, 5602 (Feb. 6, 2026).

This is not a novel position but rather a position repeatedly rejected by courts going as far back as *Perkins* and must now be rejected again. The ramifications here are monumental. This decision could lead to a judicially authorized reshaping of separation of powers and system of checks and balances, and the exclusion of a substantial portion of the executive branch from the oversight of Congress.

# CONCLUSION

Due to the questions of exceptional importance at issue, this Court should grant the petition for initial hearing *en banc*.

Respectfully submitted,

Kevin L. Owen, Esq.
Christopher H. Bonk, Esq.
Andrew J. Perlmutter, Esq.
William C. Schubert, Esq.
Gilbert Employment Law, P.C.
8403 Colesville Rd., Suite 1000
Silver Spring, MD 20910
(301) 608-0880
kowen-efile@gelawyer.com
cbonk-efile@gelawyer.com
aperlmutter-efile@gelawyer.com
wschubert-efile@gelawyer.com

*Counsel for Amici*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 26-1575

**Short Case Caption:** Jackler v. DOJ

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes __2499__ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 04/13/2026

Signature: *Kevin L. Owen*

Name: Kevin L. Owen

Save for Filing