No. 26-1575

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## MEGAN JACKLER and BRANDON JAROCH,

*Petitioners*,

v.

## DEPARTMENT OF JUSTICE and DIRECTOR OF THE OFFICE
## OF PERSONNEL MANAGEMENT,

*Respondents*.

On Appeal from Order of the
United States of America Merit Systems Protection Board
Docket No. CF-0752-26-0069-I-1

## BRIEF OF *AMICI CURIAE* LABOR ORGANIZATIONS REPRESENTING FEDERAL EMPLOYEES IN SUPPORT OF PETITIONERS' MOTION FOR INITIAL CONSIDERATION EN BANC

Harold Craig Becker
Democracy Defenders Fund
600 Pennsylvania Ave., SE No. 15180
Washington, D.C. 20003
202-594-9958

Counsel for *Amici Curiae*

## CERTIFICATE OF INTEREST

Counsel for Amici certify as follows:

1.  The full name of every party represented by us is:

    American Federation of Government Employees (AFGE), American Federation of State, County & Municipal Employees (AFSCME), International Federation of Professional and Technical Engineers ("IFPTE"), National Federation of Federal Employees ("NFFE"), International Association of Machinists and Aerospace Workers ("IAM"), American Federation of Labor and Congress of Industrial Organizations (AFL-CIO)

2.  The name of the real party in interest represented by us is: Same as above.

3.  All parent corporations and publicly held companies that own 10% or more of stock in the parties represented by us are: No person or entity owns stock in the above.

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are: None.

5.  The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal: None.

6.  The names and information of any organizational victims in a criminal case under Fed. R. App. P. 26.1(b) and the names and information of any bankruptcy case debtors and trustees under Fed. R. App. P. 26.1(c):  N/A.

Dated: April 8, 2026

Respectfully submitted,

*/s/ Harold Craig Becker*
Harold Craig Becker
Democracy Defenders Fund
600 Pennsylvania Ave. SE 15180
Washington, D.C. 20003

i

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST .............................................................................. i

TABLE OF AUTHORITIES ................................................................................ iii

INTEREST OF THE AMICI CURIAE ...................................................................1

THIS CASE "REQUIRES AN ANSWER TO ONE OR MORE PRECEDENT-SETTING QUESTIONS OF EXCEPTIONAL IMPORTANCE" ...........................3

   I.   This Case Requires an Answer to One or More Questions of Exceptional Importance ................................................................................................3

   II.  This Case Requires an Answer to One or More Precedent Setting Questions 7

CONCLUSION ....................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Buckley v. Valeo*, 424 U.S. 1 (1976) ........................................................................10

*Comans v. Dep't of Homeland Security*,
  No. DC-0752-25-1783-I-1 (MSPB March 11, 2026) ..............................................8

*United States v. Arthrex, Inc.*, 594 U.S. 1 (2021) ....................................................10

*Free Enterprise Fund v. Public Company Accounting Oversight Board*,
  561 U.S. 477 (2010) .......................................................................... 9, 10, 11

*Morrison v. Olson*, 487 U.S. 654 (1988) ..................................................... 3, 8, 9, 11

*United States v. Perkins*, 116 U.S. 483 (1886) .........................................................9

**Statutes**

5 U.S.C. § 3395(a) ....................................................................................................11

5 U.S.C. § 3395(a)(1)(A) ...........................................................................................6

5 U.S.C. § 3592(a)(2) .................................................................................................6

5 U.S.C. § 7511(a)(1) .................................................................................................8

5 U.S.C. § 7541(1) .....................................................................................................8

8 U.S.C. § 1101(b)(4) ...............................................................................................10

**Regulations**

8 C.F.R. §§ 1003.1(h)(1)(i) ......................................................................................10

8 C.F.R. §§ 1003.10(c) .............................................................................................10

**Rules**

Fed. R. Civ. P. 29(a)(4)E) ...........................................................................................1

Amici labor unions, together representing well over one million federal employees, submit this brief in support of Petitioners' Petition for Initial Hearing En Banc because the radical, unprecedented and sweeping assertion of unilateral presidential power endorsed by the Merit Systems Protection Board threatens the statutory rights of all the approximately 2.5 million federal employees Congress sought to protect in the Civil Service Reform Act (CSRA). As required by Fed. Cir. Rule 40 this case "requires an answer to one or more precedent-setting questions of exceptional importance."[1]

## INTEREST OF THE AMICI CURIAE

Amicus American Federation of Government Employees (AFGE) is the largest federal employee union, representing approximately 800,000 federal civilian employees.

Amicus American Federation of State, County & Municipal Employees (AFSCME) is the largest union of public employees in the United States, with

---

[1] In accordance with Federal Rule of Appellate Procedure 29, all parties have consented to the filing of this amicus brief and Amici have moved to file. *See* Fed. R. App. P. 29(a)(2). No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person contributed money that was intended to fund preparing or submitting the brief. *See* Fed. R. App. P. 29(a)(4)(E).

1

around 1.4 million members, including federal civilian employees across the federal government.

Amicus International Federation of Professional and Technical Engineers ("IFPTE") represents employees within the federal government, including administrative judges as well as engineers, scientists, technical specialists, and others.

Amicus National Federation of Federal Employees ("NFFE") represents federal employees across a broad range of agencies including the Department of Veteran Affairs, Department of Defense, U.S. Forest Service, National Park Service, and others.

Amicus International Association of Machinists and Aerospace Workers ("IAM") represents federal workers largely in the Department of Defense, the Bureau of Printing and Engraving and the Department of the State, as well as others.

Amicus American Federation of Labor and Congress of Industrial Organizations (AFL-CIO) is a federation of 63 national and international labor unions that represent nearly 15 million working people, including substantial numbers of federal employees

Together amici represent federal employees in every state of the union and virtually every job classification in the federal civil service.

2

**THIS CASE "REQUIRES AN ANSWER TO ONE OR MORE PRECEDENT-SETTING QUESTIONS OF EXCEPTIONAL IMPORTANCE"**

### I.     This Case Requires an Answer to One or More Questions of Exceptional Importance

The assertion of executive power in these cases and in other parallel cases involving amici's members threatens the foundations of the civil service system. While the instant cases involve Immigration Judges summarily terminated by the Attorney General, who the MSPB erroneously held are inferior officers exercising greater executive authority than that at issue in *Morrison v. Olson*, 487 U.S. 654 (1988), the administration's assertion of Article II authority to summarily terminate employees sweeps far more broadly in each of the following respects.

First, the administration asserts Article II authority to fire protected employees without cause or any process even if they are *not* officers of the United States, but are ordinary employees. In a parallel case before the MSPB, the administration asserts,

> The agency is unaware of any Supreme Court opinions addressing the question of whether congress can restrict the President's removal power of an employee who is not a Constitutional, whether Principal or inferior officer. . . .
> . . . .
> . . . . As neither one the the[] recognized exceptions [to the President's unrestricted removal power] applies to mere employees, rather than Constitutional officers, Appellant' CSRA challenge must be dismissed.

3

Agency Narrative Response and Motion to Dismiss for Lack of Jurisdiction at 8 n. 3, 9, *Comans v. Dep't of Homeland Security*, No. DC-0752-25-1783-I-1 (MSPB).

The amici and the undersigned counsel represent employees who worked as Assistant United States Attorneys, Chief Financial Officers, Supervisory Public Affairs Specialists, Program Analysts, and in other classifications, all of whom were fired *via* a naked assertion of Article II authority without cause or any process. The undersigned counsel is also aware of employees in positions such as Grants Management Analyst and Information Technology Specialist and Management and Program Analyst who were fired in the same manner. Those employees hold grades as low as GS-9.

The administration's position is that there are two types of adverse personnel actions – agency actions for cause, which may be subject to the requirements and protections of the CSRA, and assertions of Article II authority, which may not constitutionally be constrained by Congress, *regardless* of the duties of the employee at issue. In a parallel case before the MSPB, the administration asserted:

> Although Congress has granted *agencies* authority to remove employees pursuant to Chapter 75, that statutory authority is separate and distinct from the President's inherent removal authority under Article II. Long before the passage of the Civil Service Reform Act (CSRA), "the President's absolute power of removal of federal employees was established in principle."

Agency Closing Brief and Motion to Dismiss at 4, *Comans*.

4

> The CSRA is a Congressional grant of authority to Executive agencies to remove employees, and Congress may set the terms that agencies must follow in exercising that statutory authority. But the President's Article II authority to direct the removal of an employee is a different matter, and the President's authority should be unrestricted.

Agency Narrative Response at 7, *id.* The administration asserts that "[t]he CSRA is silent . . . on the President's inherent power to remove executive employees." *Id.* at 3. Chapter 75 of Title 5 "is inapposite, because that statute governs whether 'an agency may take an action' to remove an employee" and is "unavailing" in respect to "a Presidentially-directed removal action." *Id.* at 6. "There is no law, rule, or regulation that confers jurisdiction on the Board to review removal actions taken pursuant to Article II." *Id.* Strikingly, the administration asserts, "no statute may constrain the President's authority." Agency Motion to Dismiss at 8, *id*. In other words, the administration's radical construction of Article II permits it to fire *any* employee of the federal government no matter how high or low by simply citing Article II and that citation alone, according to the administration, renders the congressional enacted protections contained in the CSRA unconstitutional as applied to that action.

Second, the administration not only asserts Article II authority to fire protected employees without cause or any process no matter how limited or routine their duties, it asserts the same authority over employees in the Senior Executive Service (SES), even though Congress has already accorded the President greater

5

authority to displace and discipline and thus to control SES employees. The amici and the undersigned counsel represent employees who received notices of termination citing Article II who were in the SES. That is significant because the CSRA gives agency heads discretion to reassign members of the SES without cause or any process and to remove them from the SES (but not federal service) for reasons falling short of just cause. Congress specifically authorized the transfer of a career SES employee to another position within the SES for any reason or no reason at all. *See* 5 U.S.C. § 3395(a)(1)(A). Congress also authorized the reassignment of a member of the SES to another civil service position *outside* the SES for "less than fully successful executive performance," provided that the employee receives notice and is provided an "informal hearing before an official designated by the [MSPB]." 5 U.S.C. § 3592(a)(2). Nevertheless, the administration takes the position that those powers are not sufficient for the President to take care that the laws are faithfully executed and that Article II permits the President to remove members of the SES from the federal service entirely without cause or any process.

Finally, the administration asserts this sweeping Article II authority to fire protected employees whether or not the President himself directs the action. Amici and the undersigned counsel represent employees who received termination notices that state:

> This action is being taken pursuant to Article II of the United States Constitution, at the direction of the President. Article II, § 1 states that

6

the executive Power "shall be vested in a President of the United States of America," and this termination is an exercise of that vested power.

Counsel also represent employees, like the Petitioners here, who received notices of termination from the Attorney General that do not indicate the President directed the termination, but nonetheless characterize the termination as an exercise of Article II authority that is not constrained by the for cause or procedural requirements of the CSRA. And exercise of the asserted plenary power is not even limited to the President and the Attorney General. In a parallel case before the MSPB, the administration asserts, "The President's authority also may be exercised by the heads of departments." Motion to Dismiss at 7, *Comans*.

Thus, the radical assertion of Article II authority at issue here is a capacious one that not only can reach any employee in the federal service, but can be asserted not only by the President but also by other management officials by mere reference to Article II. The questions raised by this assertion of presidential power are thus of exceptional importance.

## II.    This Case Requires an Answer to One or More Precedent Setting Questions

The administration acknowledges in a parallel case pending before the MSPB that "[l]ower court opinions have occasionally addressed the topic but, so far as the Agency can discern, no court has analyzed the issue in depth." Narrative Response

at 7 n. 3, *Comans*. Thus, the administration acknowledges that this case will be precedent setting.

In addition, the MSPB's Chief Administrative Judge, in dismissing a parallel case without prejudice pending resolution of the instant appeals, stated, "Whether an agency head is authorized by Article II of the Constitution to remove an individual meeting the definition of an "employee" as defined by chapter 75 of Title 5, either under 5 U.S.C. § 7511(a)(1) or 5 U.S.C. § 7541(1), without restriction is an important question of law." Initial Decision at 3, *Comans* (March 11, 2026).[2]

This Court's resolution of the questions raised by this case is likely to establish critical precedents checking the executive's infringement of employees' statutory rights and invasion of the constitutional authority of Congress in at least three respects.

First, this Court's *en banc* reversal of the MSPB's decision would prevent the improper shrinkage of the scope of *Morrison's* holding that there is "no specific constitutional impediment to congressionally imposed restrictions on the President's removal power" in relation to inferior officers the appointment of whom Congress has vested in the head of a department. 487 U.S. at 689 n. 27. That is exactly what

---

[2] Amici believe similar orders were issued in all parallel actions pending at the MSPB and those action are likely to remain effectively stayed pending resolution of these cases. Thus, the ability of all the broad swath of employees implicated by the administration's assertion of Article II authority to contest their summary terminations has been frozen pending resolution of these cases.

the MSPB erroneously held here: the fact that "these appellants . . . are inferior officers who exercise significant adjudicate and policymaking authorities on behalf of the United States—abrogates otherwise-applicable statutory removal protections." Petitioner's Add. 2.

But the Supreme Court held over a century ago that Congress can limit the grounds for removal of inferior officers whose appointment Congress vested in a department head. In *United States v. Perkins*, 116 U.S. 483 (1886), the Court held:

> when congress, by law, vests the appointment of inferior officers in the heads of departments, it may limit and restrict the power of removal as it deems best for the public interest. The constitutional authority in congress to thus vest the appointment implies authority to limit, restrict, and regulate the removal by such laws as congress may enact in relation to the officers so appointed.

*Id.* at 485. Even Justice Scalia acknowledged that the suggestion that "every officer of the United States exercising any part of [the executive] power must serve at the pleasure of the President . . . . has never been the law." *Morrison*, 487 U.S. at 724 n. 4 (Scalia, J., dissenting). That conclusion was reaffirmed in *Free Enterprise Fund v. Public Company Accounting Oversight Board,* 561 U.S. 477 (2010): when Congress vests the appointment power in the heads of departments, "it is ordinarily the department head, rather than the President, who enjoys the power of removal" and "[t]he Court has upheld for-cause limitations on that power." *Id*. at 493.[3]

---

[3] The MSPB did not hold that the Immigration Judges were Officers of the United States whose appointment Congress could only vest in the President, *see*

Second, this Court's *en banc* reversal of the MSPB's decision would prevent the assertion of plenary authority to terminate all employees under Article II from effectively undermining the entire civil service system and opening up a gaping hole in the protections of the CSRA. No President has asserted that sweeping power until now and the Court has not only never suggested Article II gives the President that authority, it expressly disclaimed any such implication of its prior holdings in *Free Enterprise Fund*: "Nothing in our opinion . . . should be read to cast doubt on the use of what is colloquially known as the civil service system." *Id*. at 506. The Court has never suggested that "lesser functionaries subordinate to officers of the United States' must be subject to the same sort of control as those who exercise 'significant authority pursuant to the laws.'" *Id*. (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976)).

Third, this Court's *en banc* reversal of the MSPB's decision would prevent the President from asserting plenary authority to remove members of the SES even though Congress has given the President adequate tools with which to displace and

---

Petitioners Add.15, nor could it have because they are subject to the supervision of the Attorney General and their decisions are subject to plenary review by the Board of Immigration Appeals and the Attorney General. *See* 8 U.S.C. § 1101(b)(4); 8 C.F.R. §§ 1003.1(h)(1)(i) and 1003.10(c). *Compare United States v. Arthrex, Inc.*, 594 U.S. 1, 13 (2021) ("We hold that the unreviewable authority wielded by APJs during inter partes review is incompatible with their appointment by the Secretary to an inferior office.")

10

discipline those high-ranking employees in order to be able to take care that the laws are faithfully executed.

Indeed, the Supreme Court has directly addressed the CSRA's limited protection of SES employees and explained that the protections do not impermissibly constrain the President's control over executive branch employees. In *Free Enterprise Fund*, the Supreme Court distinguished the CSRA's protections of members of the SES from that of the of the Members of the Public Company Accounting Oversight Board at issue in that case on the grounds that "members of the Senior Executive Service may be reassigned . . . ." *Id*. at 506 (citing 5 U.S.C. § 3395(a)). As the Court observed, the limited protection accorded members of the SES do not create the kind of "significant and unusual protections from Presidential oversight" that can render the protections unconstitutional. *Id*. Answering the question posed in *Morrison,* whether the limited "removal restrictions are of such a nature that they impede the President's ability to perform his constitutional duty," 487 U.S. at 691, the Court answered no.

Answering the questions raised by this case would thus establish critical precedents.

## CONCLUSION

For the above-stated reasons, this Court should grant Petitioners' motion for initial hearing *en banc*.

11

Date: April 8, 2026                    Respectfully submitted,

                                       */s/ Harold Craig Becker*
                                       Harold Craig Becker
                                       Democracy Defenders Fund
                                       600 Pennsylvania Ave., SE No. 15180
                                       Washington, D.C. 20003
                                       202-594-9958
                                       craig@democracydefenders.org

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  26-1575

**Short Case Caption:**  Jackler and Jaroch v. D.O.J and Director of OPM

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  2, 512  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 04/07/2026

Signature: /s/ Harold Craig Becker

Name: Harold Crai Becker

Save for Filing