No. 26-1575

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

———————————

### MEGAN JACKLER AND BRANDON JAROCH,
*Petitioners,*

**v.**

### DEPARTMENT OF JUSTICE AND DIRECTOR OF THE
### OFFICE OF PERSONNEL MANAGEMENT,
*Respondents.*

———————————

Petition for Review from the Merit Systems Protection Board
MSPB Docket No. CF-0752-26-0069-I-1

———————————

## CORRECTED BRIEF *AMICUS CURIAE* OF JUSTICE CONNECTION IN
## SUPPORT OF PETITION FOR INITIAL HEARING *EN BANC*

———————————

Kerrie D. Riggs, D.C. Bar No. 995784
Jeremy D. Wright, D.C. Bar No. 483297
Kator, Parks, Weiser & Wright, P.L.L.C.
1150 Connecticut Ave., NW, Suite 705
Washington, DC 20036
202-898-4800
kriggs@katorparks.com
jwright@katorparks.com

April 13, 2026                    *Counsel for Amicus Curiae Justice Connection*

## Disclosure Statement

Justice Connection is a project that is fiscally sponsored by the Government Accountability Project, a tax-exempt nonprofit organization. There is no publicly held corporation that owns 10% or more of its stock.

## Statement Regarding Brief for *Amicus Curiae*

The brief of *Amicus Curiae* Justice Connection was authored by *Amicus Curiae*'s counsel. The brief was not authored in part or in full by a party or party's counsel. No party to this case or party's counsel contributed money that was intended to fund preparing or submitting this brief. No person — other than *Amicus Curiae* or its counsel — contributed money that was intended to fund preparing or submitting this brief.

i

**Table of Contents**

Disclosure Statement................................................................................... i

Statement Regarding Brief for *Amicus Curiae* ......................................... i

Table of Contents ....................................................................................... ii

Table of Authorities.................................................................................. iii

Statement of Identity and Interest of *Amicus Curiae*................................1

Argument.....................................................................................................2

   1.   The Court Will Be Faced with Over 100 Appeals Raising the Same Constitutional Issue That is Presented in This Case...................................3

   2.   The Constitutional Question at Issue Presents an Exceptionally Important Question and Requires Uniformity in Adjudication...............................4

   3.   The Court Should Provide Uniformity in Adjudication Covering the Constitutional Question at Issue...........................................................6

Conclusion ..................................................................................................7

Certificate of Compliance ..........................................................................8

Certificate of Interest .................................................................................8

Certificate of Service ..................................................................................9

## Table of Authorities

## Cases and Administrative Decisions

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...............................................2

*Lovshin v. Dep't of the Navy*, 767 F.2d 826 (Fed. Cir. 1985)....................................6

*Palmeri v. Merit Sys. Prot. Bd.*, 164 F.4th 878 (Fed. Cir. 2026)..............................6

*Sinn v. Dep't of Justice,* No. DC-315H-25-1961-I-1, 2026 MSPB LEXIS 1467
   (M.S.P.B. Mar. 12, 2026).........................................................................................3

*United States v. Fausto*, 484 U.S. 439 (1988).............................................................6

*V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)...........................4

## Statutes

5 U.S.C. § 7701 ........................................................................................... *passim*

5 U.S.C. § 7703 ...........................................................................................................7

## Other Authorities

Senate Report at 4, 1978 U.S. Code Cong. & Ad. News...........................................6

## Rules

Fed. R. App. P. 32......................................................................................................8

Fed. R. App. P. 32(a)(5) .............................................................................................8

Fed. R. App. P. 32(a)(6) .............................................................................................8

**Statement of Identity and Interest of *Amicus Curiae***

Justice Connection provides direct support to the Department of Justice's apolitical career workforce. As a network of DOJ alumni, the organization connects current and recent employees with pro bono legal representation, mental health counseling, employment assistance, and media support. It also advocates for the integrity of DOJ's mission-critical work and speaks out in defense of the rule of law. Justice Connection is fiscally sponsored by the Government Accountability Project, a nonpartisan nonprofit organization that promotes government accountability by protecting whistleblowers.

**Argument**

In its decision in this case, the Merit Systems Protection Board ruled that it lacked jurisdiction to consider appeals of removal actions of Petitioners Megan Jackler and Brandon Jaroch. The Board ruled that Article II abrogates the procedural and substantive removal protections of the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7701, *et seq.*, for certain federal civil service workers.

The Board's decision in this case marked a fundamental change in the law that covers over 2 million current federal civil service workers. For the first time, the Board ruled that the President has unfettered discretion to terminate the employment of thousands of career civil service workers.

The Board's decision canceled the statutory protections in place since 1978, and federal civil service principles that have been in place for about 150 years.

The Court's decision on this appeal will impact not only the employment of the two petitioners. A decision on the constitutionality of the CSRA (and its protections of a professional civil service) may be determinative on the pending MSPB appeals of over 100 other civil servants removed without due process in the past 14 months. As discussed below, the Department of Justice has terminated over 150 civil service employees in violation of statutory law under its presumption that the Civil Service Reform Act is unconstitutional as to those employees.

The Court's decision may also control the employment rights of thousands of other federal civil service workers going forward.

If the Court does not grant an initial hearing *en banc* in this matter, there will likely be over 100 additional appeals to the Court from the MSPB raising the very same constitutional question. Rather than sending over 100 separate cases before multiple panels (and possibly before other Courts of Appeals and District Courts), the Court should use its discretion to properly manage this matter and provide for an initial hearing *en banc*.

The Court should grant an initial hearing *en banc* to provide a clear determination on the exceptional constitutional question presented.

1. **The Court Will Be Faced with Over 100 Appeals Raising the Same Constitutional Issue That is Presented in This Case.**

There are currently over 100 MSPB appeals that are pending involving terminations that were handled in the same manner as the terminations of Petitioners Jackler and Jaroch. The MSPB has entered orders dismissing without prejudice many of these cases pending a resolution of the appeals of Petitioners Jackler and Jaroch. *See, e.g., Sinn v. Dep't of Justice,* No. DC-315H-25-1961-I-1, 2026 MSPB LEXIS 1467 (M.S.P.B. Mar. 12, 2026) (Initial Decision).

Based on information that Justice Connection has collected, since January 2025 there have been at least 158 termination actions of DOJ career civil service

workers in which Article II of the U.S. Constitution was cited as the basis for the termination. These removal actions have occurred without a merit-based justification or the procedural due process required by the CSRA. These removal actions have been continuing from January 2025 up to March 2026, with no indication that such terminations will cease in the near future. Further, the information obtained by Justice Connection shows that these removal actions have impacted civil servants from various components and subagencies within DOJ, including, but not limited to, attorneys from Main Justice and U.S. Attorneys Offices, FBI employees, Immigration Judges, and employees of the U.S. Marshals Service.

Information from the MSPB shows that since January 2025, there have been about 130 cases filed that involve employment actions taken under Article II. In addition to the DOJ components listed above, MSPB appeals of Article II terminations have been filed by civil servants from the Department of Homeland Security and the Department of Health and Human Services. In each one of these cases, the MSPB and then this Court on appeal will be faced with the same constitutional question raised in this matter.

**2. The Constitutional Question at Issue Presents an Exceptionally Important Question and Requires Uniformity in Adjudication.**

This case involves "issues of exceptional importance." *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1322 (Fed. Cir. 2025) (assigning case for initial hearing

*en banc*). The Board's ruling on the President's powers over the employment of civil service workers breaks from decades of precedent. Now, for the first time in over 100 years, the President has been granted authority to bypass statutory civil service protections for thousands of workers.

The ways in which the President and his principal officers have already used this power demonstrates the importance of this matter. Since taking office in January 2025, the President and his principal officers have used this power to terminate at least 158 DOJ employees, including dozens of FBI Special Agents, dozens of attorneys from Main Justice and U.S. Attorneys Offices, and workers with the U.S. Marshals Service. These termination actions came without any procedural due process, without any justification of the merits of the termination decisions, and (under the Board's decision) potentially without any judicial review.

This Court's decision on whether the Board correctly ruled on the constitutionality of the protections under the CSRA will have widespread and dramatic implications for the entire operation of the federal government.

As this Court recently affirmed, "the Civil Service Reform Act ('CSRA'), ushered in a new system 'designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration.'" *Palmeri v. Merit Sys. Prot. Bd.*, 164 F.4th 878, 881 (Fed. Cir. 2026) (quoting *United States v. Fausto*, 484 U.S. 439, 445 (1988)). The Act "specifically

enacted into law" "merit principles," which "Congress viewed … from the advantage to the *public*." *Lovshin v. Dep't of the Navy*, 767 F.2d 826, 831 (Fed. Cir. 1985) (emphasis in original).

The Board's decision in this case substantially alters the careful balance incorporated by the CSRA. The significant change in law ushered in by the Board's decision in this case eradicates protections put in place to "'[a]llow civil servants to be able to be hired and fired more easily, but for the right reasons,'" *Lovshin, supra* (quoting Senate Report at 4, 1978 U.S. Code Cong. & Ad. News at 2726).

The management of the federal civil service is at issue in this case. The case will determine whether the President has the power to immediately terminate the employment of thousands of previously protected civil service workers, without any merit-based reason or judicial review. The public's "right to an efficient and effective Government," *id.*, is at stake here.

As such, this case presents the Court with a constitutional question of exceptional importance compelling initial *en banc* review.

### 3. The Court Should Provide Uniformity in Adjudication Covering the Constitutional Question at Issue.

The number of cases raising the same constitutional question requires uniformity in adjudication. As discussed above, the same constitutional question raised in this case is at issue in over 100 other cases that have been filed before the

MSPB and could soon be before this Court. In addition, some of these MSPB cases may end up before District Courts or other Courts of Appeals (if the cases also involve claims of discrimination and/or whistleblower retaliation). *See* 5 U.S.C. § 7703.

This Court should not distribute the same extraordinary constitutional question presented to various panels of this Court, panels of other Courts of Appeals, and District Courts. Instead, under the Court's standards for assigning cases for initial hearings *en banc*, the Court should grant Petitioner's request.

**Conclusion**

For these reasons, the Court should grant Petitioners' petition and designate this matter for initial *en banc* review.

Respectfully submitted,

___**/s/ Kerrie D. Riggs**___

Kerrie D. Riggs
Jeremy D. Wright
Kator, Parks, Weiser & Wright, P.L.L.C.

April 13, 2026    *Counsel for Amicus Curiae Justice Connection*

**Certificate of Compliance**

Pursuant to Rule 32, the undersigned attorney certifies that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32 because this brief contains 1339 words, excluding the parts of the brief exempted by the Rules.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman in 14 point (and 12 point for footnotes).

/s/ Kerrie D. Riggs
Kerrie D. Riggs

**Certificate of Interest**

Counsel for Justice Connection certifies the following:

1. The full name of every party or *amicus* represented by me is:

Justice Connection

2. The names of the real parties in interest represented by me are:

N/A

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or *amicus curiae* represented by me are:

None. There is no such corporation as described in paragraph 3.

8

4.  The names of all law firms and the partners or associates that have not entered an appearance in the appeal, and or are expected to appear for the entity in this court:

None.

5.  Other than the originating case number(s), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.

None.  There is no such case as described in paragraph 5.

6.  All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases.

N/A

/s/ Kerrie D. Riggs
Kerrie D. Riggs

**Certificate of Service**

I hereby certify that on April 13, 2026, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Federal Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Kerrie D. Riggs
Kerrie D. Riggs

9