**No. 26-1575**

United States Court of Appeals
for the Federal Circuit

MEGAN JACKLER AND BRANDON JAROCH,

*Petitioners*,

v.

DEPARTMENT OF JUSTICE AND DIRECTOR
OF THE OFFICE OF PERSONNEL
MANAGEMENT,

*Respondents*.

On Petition for Review from the
Merit Systems Protection Board

**BRIEF OF AMICUS CURIAE THE MERIT SYSTEMS
PROTECTION BOARD PROFESSIONAL ASSOCIATION IN
SUPPORT OF PETITION FOR INITIAL HEARING EN BANC**

Trisha Anderson
*Counsel of Record*
Martin Totaro
Benjamin Stern
HECKER FINK LLP
1050 K Street NW | 10th floor
(212) 763-0883
tanderson@heckerfink.com

*Counsel for Amicus Curiae*

# CERTIFICATE OF INTEREST

Counsel for amicus the Merit Systems Protection Board Professional Association certifies the following:

1. The full names of every party represented by me are:

   **The Merit Systems Protection Board Professional Association.**

2. The full names of the real parties in interest represented by me are:

   **Not Applicable.**

3. Parent corporations and publicly held companies that own 10 percent or more of the stock of the parties represented by me.

   **Not Applicable.**

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case are):

   **Not Applicable.**

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47.4(a)(5) and 47.5(b).

   **Not Applicable.**

6. All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases.

   **Not Applicable.**


*/s/ Trisha Anderson*
Trisha Anderson

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ……………………………………………......iii

INTEREST OF AMICUS CURIAE ......................................................................1

SUMMARY OF ARGUMENT ..........................................................................2

ARGUMENT ....................................................................................................3

    I.    En Banc Review Is Necessary To Swiftly Resolve This Dispute and Protect the Federal Merit System. ....................................................3

    II.    The Board's Decision Departs from Longstanding Supreme Court Precedents. ..............................................................................5

    III.    The Board's Decision Threatens To Disrupt the CSRA's Longstanding System of Review and the Ability of MSPB Administrative Judges To Fairly Adjudicate Disputes ..............................................................6

CONCLUSION ................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*Azarkhish v. Off. of Pers. Mgmt.*,
915 F.2d 675 (Fed. Cir. 1990) ...................................................................8

*Collins v. Yellen*,
594 U.S. 220 (2021) ...................................................................................6

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010) ...................................................................................6

*Kennedy v. Braidwood Management, Inc.*,
606 U.S. 748 (2025) ................................................................................5, 9

*McIntosh v. Dep't of Def.*,
53 F.4th 630 (Fed. Cir. 2022) ...................................................................8

*Morrison v. Olson*,
487 U.S. 654 (1988) ...................................................................................5

*Seila Law, L.L.C. v. Consumer Financial Protection Bureau*,
591 U.S. 197 (2020) ................................................................................5, 6

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021) ....................................................................................5, 6

*United States v. Perkins*,
116 U.S. 483 (1886) ...................................................................................5

**STATUTES AND REGULATIONS**

5 U.S.C. § 7513(a) ............................................................................... 1, 5, 7

5 U.S.C. § 7701(e)(1) .....................................................................................1

5 U.S.C. § 7703 ..............................................................................................8

8 U.S.C. § 1101(b)(4) ....................................................................................8

28 U.S.C. § 1295(a)(9) ...............................................................................1, 8

Pendleton Civil Service Reform Act, ch. 27, 22 Stat. 403 (1883)............................6

5 C.F.R. § 1201.41(b) .................................................................................8

8 C.F.R. § 1003.10(b) .................................................................................8

8 C.F.R. § 1003.10(d) .................................................................................8

**RULES**

Fed. Cir. R. P. 40(c)(2)................................................................................3

Fed. R. App. P. 29(a)(4)(E)..........................................................................1

**OTHER AUTHORITIES**

135 Cong. Rec. 5012 (Mar. 3, 1989) ...........................................................7

135 Cong. Rec. 5012 (Mar. 21, 1989) .........................................................7

## INTEREST OF AMICUS CURIAE

Amicus Curiae is the Merit Systems Protection Board Professional Association (the "Association").[1] The Association is the union of administrative judges of the Merit Systems Protection Board ("MSPB"). The union is an affiliate of the International Federation of Professional and Technical Engineers, and it represents MSPB administrative judges and attorney-advisors who assist in drafting decisions for the MSPB Board Members.

Millions of federal workers rely on the MSPB to fairly and neutrally adjudicate claims involving civil service protections. The MSPB is an adjudicatory agency tasked by Congress with safeguarding the federal merit system. When a federal employee files an appeal in an adverse employment action case with the MSPB, the case is assigned to an administrative judge. Administrative judges issue initial decisions at the conclusion of proceedings, which are subject to review by the MSPB Board and this Court. 5 U.S.C. § 7701(e)(1); 28 U.S.C. § 1295(a)(9). Like many other career federal employees, administrative judges have statutory civil service protections preventing them from being fired without cause. *See* 5 U.S.C. § 7513(a). The MSPB administrative judges have a particular interest in this case

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person—other than the amicus curiae and its counsel—contributed money that was intended to fund preparing or submitting this brief. *See* Fed. R. App. P. 29(a)(4)(E). This brief is filed with the authority and consent of all parties.

because the application of the Board's reasoning to them would substantially affect their ability to perform their statutory mission without fear of reprisal.

**SUMMARY OF ARGUMENT**

This case is of exceptional importance to the millions of workers subject to civil service protections and the Americans who depend on them to carry out their jobs fairly and free of improper partisan influence. This Court should hear the case now to remove the shadow of uncertainty that the Board's decision has cast on a broad swath of the federal civil service and that threatens the ability of these federal civil servants to perform their varied responsibilities objectively, neutrally, and without fear or favor.

The Board's decision is incorrect. It departs from well-established Supreme Court precedents upholding statutory removal protections for inferior officers who engage in adjudications, particularly where the initial decision by the adjudicator is subject to further review and revision. If allowed to stand, moreover, the Board's reasoning could extend far beyond the immigration judges in this case. The Board's decision calls into question the validity of the civil service protections of federal employees across the federal government who perform functions similar to immigration judges, including the MSPB's own administrative judges.

If MSPB administrative judges are stripped of their civil service protections, the reverberations of the Board's reasoning would be felt broadly across the civil

service. The civil service protections of the millions of federal employees subject to the MSPB's jurisdiction will be at risk because those workers' claims will be heard by administrative judges under political pressure due to the threat of removal without cause—including because of their decisions in individual cases.

## ARGUMENT

### I. En Banc Review Is Necessary To Swiftly Resolve This Dispute and Protect the Federal Merit System.

The Board's decision presents "precedent-setting questions of exceptional importance" warranting expedited en banc consideration at this juncture. Fed. Cir. Rule 40(c)(2). The Board's reasoning sweeps broadly. Under the Board's view, the removal protections afforded by the Civil Service Reform Act ("CSRA") are unconstitutional and therefore inapplicable to any inferior officer exercising more than "limited duties," which the Board defined broadly to extend even to adjudicators whose decisions are "subject to review" by the "Attorney General." Add.14-15. The Board also adopted the view that the CSRA's removal protections cannot apply to an adjudicator issuing a decision reviewable within the Executive Branch if the topic of the adjudication involves "a significant area of our nation's domestic and foreign policy." *Id*. at 15.

If upheld, the Board's reasoning would likely extend to many thousands of government employees, undermining the core values of independence, fairness, and expertise that the CSRA was designed to protect. As Petitioners explain, it is difficult

to imagine under the Board's approach which inferior officers could have constitutionally valid civil service protections, given that countless federal employees perform duties comparably modest to those of immigration judges. Pet. 16-18. The Board's broad interpretation of when an inferior officer must be subject to at-will removal would lead to a narrow interpretation of the CSRA's removal protections, because the MSPB would have no power to provide relief to inferior officers removed at will from their positions.

This Court should resolve these issues now rather than deciding the case in the ordinary course. The Board's novel interpretation of Article II—which aligns with the position the federal government has taken in other pending cases where the government has submitted nearly identical briefing defending the at-will removal of federal employees—has cast a shadow of uncertainty across the federal workforce. With the Board's decision on the books, many federal employees can no longer rely on statutory removal protections that have existed for generations and that allow them to do their jobs without fear or favor. Deciding this issue now, en banc, will clarify for immigration judges and the thousands of other similarly situated employees who could be encompassed by the Board's reasoning whether the CSRA's fundamental protections continue to apply or, alternatively, whether those employees must perform their jobs while fearing arbitrary or politically motivated dismissal. This bellwether case should be decided as soon as possible.

## II. The Board's Decision Departs from Longstanding Supreme Court Precedents.

The Board's decision conflicts with Supreme Court precedent. In particular, the Board did not give due respect to the Supreme Court's repeated holdings that Congress may impose removal restrictions on inferior officers. *See, e.g.*, *United States v. Arthrex, Inc.*, 594 U.S. 1, 26 (2021); *Morrison v. Olson*, 487 U.S. 654, 691-93 (1988); *United States v. Perkins*, 116 U.S. 483, 484-85 (1886). The Court in *Arthrex*, for example, recently allowed the CSRA's protections against removal to be applied to Administrative Patent Judges as long as their decisions were reviewable by a principal officer. 594 U.S. at 26 (citing 5 U.S.C. § 7513(a)). The Board erred by not following the same approach. *See* Pet. 12-13.

The Board instead relied on *Seila Law, L.L.C. v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020), where the Supreme Court observed that at-will removal applies to "inferior officers with limited duties and no policymaking or administrative authority." *Id.* at 218; *see also Kennedy v. Braidwood Management, Inc.*, 606 U.S. 748, 762-64 (2025) (discussing removability at will as "the default presumption" for inferior officers in the Executive Branch); App.14-16. But *Seila Law* did not establish a new test for when inferior officers must be removable for cause, as the Supreme Court itself has clarified. That opinion "did 'not revisit ... prior decisions allowing certain limitations on the President's removal power,' but [rather] found 'compelling reasons not to extend those precedents to the novel context of an

independent agency led by a single Director,'" who was a principal, not an inferior, officer. *Collins v. Yellen*, 594 U.S. 220, 250-51 (2021) (quoting *Seila Law*, 591 U.S. at 204). And under the Court's precedents, the Board should have ruled that for-cause removal protections validly apply to immigration judges because they "perform adjudicative rather than enforcement or policymaking functions," with their decisions subject to review by principal officers. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 507 n.10 (2010); *Arthrex*, 594 U.S. at 26.

Even if, contrary to the Supreme Court's own understanding, *Seila Law* modified the analysis for when inferior officers must be removable at will, the Board misapplied the test. As Petitioners explain, if the independent counsel in *Morrison* who investigated and tried "crimes by high-ranking Government officials" was validly subject to removal restrictions, *Seila Law*, 591 U.S. at 217-18 (describing *Morrison*), then lower-level career civil servants exercising far more limited duties, with far less policymaking or administrative authority, should be as well. *See* Pet. 14-15.

## III. The Board's Decision Threatens To Disrupt the CSRA's Longstanding System of Review and the Ability of MSPB Administrative Judges To Fairly Adjudicate Disputes.

The Board's decision to minimize the scope of statutory removal protections cannot be reconciled with over a century of history. Beginning with the Pendleton Civil Service Reform Act, ch. 27, 22 Stat. 403 (1883), Congress and the President

working together have continually reformed the civil service system to provide an appropriate balance between the President's authority and protections for federal employees. For instance, after the Watergate scandal and the expansion of the federal government in the mid-20th century, Congress and the President enacted further reforms with the CSRA in 1978. The CSRA created new statutory civil service protections for most federal employees, replaced the Civil Service Commission with the MSPB to adjudicate disputes about those protections, and created the Office of Special Counsel to investigate and prosecute alleged violations of the new protections. In enacting the CSRA, Congress conferred modest removal protections on MSPB administrative judges, who are removable "for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a). The independence of the MSPB, including its administrative judges, was vital to the statutory scheme. And when Congress and the President modified the scheme in 1989 with the enactment of the Whistleblower Protection Act, legislators and the Executive Branch alike praised the Act as resolving separation of powers concerns related to removal restrictions. *See, e.g.*, 135 Cong. Rec. 5012, 5036-39 (Mar. 21, 1989) (statement of Rep. S. Parris) ("As amended, S. 20 would resolve the administration's constitutional concerns."); Letter from Office of the Attorney General to Sen. Levin, 135 Cong. Rec. 5012, 5033-34 (Mar. 3, 1989) (Attorney General thanking the Act's sponsor for "forg[ing] a mutually acceptable resolution of our serious constitutional concerns" and

7

"pledg[ing]" to help pass the revised law).

The Board's novel view of Article II ignores that history, with implications extending well beyond the immigration judges at issue here. For example, MSPB administrative judges and immigration judges have similar roles and responsibilities. *See* 8 U.S.C. § 1101(b)(4) (characterizing immigration judges as a kind of "administrative judge"). Both preside over adjudicatory proceedings, make factual determinations, and issue initial decisions. 8 C.F.R. § 1003.10(b); 5 C.F.R. § 1201.41(b). And both types of initial decisions are subject to further review. 8 U.S.C. § 1101(b)(4); 8 C.F.R. § 1003.10(b), (d); 5 U.S.C. § 7703; 28 U.S.C. § 1295(a)(9); *McIntosh v. Dep't of Def.*, 53 F.4th 630, 640 (Fed. Cir. 2022) (MSPB "maintains significant review authority over administrative judges' decisions"); *Azarkhish v. Off. of Pers. Mgmt.*, 915 F.2d 675 (Fed. Cir. 1990) ("Congress explicitly granted the full Board authority to reopen any initial decision upon its own motion."). Amicus does not concede that it necessarily follows from a conclusion that immigration judges must be removable at will that MSPB administrative judges are too. But the risk of that result is clear from the Board's decision.

If MSPB administrative judges were to be stripped of their civil service protections based on the Board's reasoning, it would have ripple effects across the federal civil service. Every day, MSPB administrative judges adjudicate cases involving civil service protections applicable to rank-and-file federal employees

8

who are not inferior officers. Removing civil service protections from MSPB administrative judges would weaken all federal employees' civil service protections if their cases are adjudicated by officials subject to the political whims of the President. If the CSRA's civil service protections do not apply to MSPB administrative judges, the Executive Branch may pressure administrative judges to rule for the government in particular cases under the threat of at-will termination or other retaliation. As the Supreme Court has explained, "the authority to remove an officer at will is a powerful tool for control," and "[a]n officer's presumed desire to avoid removal generally creates a here-and-now subservience." *Braidwood*, 606 U.S. at 762 (quotation marks omitted). Without for-cause removal protections, MSPB administrative judges will face pressure to "obey" the removing authority's commands. *Id*. (quotation marks omitted).

Such political pressure on MSPB administrative judges would threaten the neutral and objective application of civil service protections for federal workers more broadly. The administrative judges would face the unfortunate scenario of trying to fairly adjudicate disputes between the federal government and federal employees, knowing that a decision in favor of the federal employee could lead to the administrative judge's dismissal. That is not a scenario that the Congresses and Presidents who enacted civil service protections for the federal employees would condone.

## CONCLUSION

The Court should grant the petition for initial en banc review.

Date: April 14, 2026

Respectfully submitted,

*/s/ Trisha Anderson*
Trisha Anderson
*Counsel of Record*
Martin Totaro
Benjamin Stern
HECKER FINK LLP
1050 K Street NW | 10th floor
(212) 763-0883
tanderson@heckerfink.com

*Counsel for Amicus Curiae*

11

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 26-01575

**Short Case Caption:** Jackler and Jaroch v. D.O.J and Director of OPM

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes __2,121__ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: __04/14/2026__

Signature: /s/ Trisha Anderson

Name: Trisha Anderson