No. 26-1575

IN THE

# United States Court of Appeals for the Federal Circuit

MEGAN JACKLER AND BRANDON JAROCH,

*Petitioners*,

v.

DEPARTMENT OF JUSTICE AND DIRECTOR OF THE OFFICE OF PERSONNEL MANAGEMENT,

*Respondent.*

On Petition for Review from the Merit Systems Protection Board
MSPB Docket No. CF-0752-26-0069-I-1

**CORRECTED UNOPPOSED MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF BY WHISTLEBLOWER AID IN SUPPORT OF PETITIONERS' MOTION FOR INITIAL HEARING *EN BANC***

April 17, 2026

Andrew P. Bakaj
DC Bar # 978658
Whistleblower Aid
Compass Rose Legal Group, PLLC
1250 Connecticut Ave., N.W.
Suite 700
Washington, D.C. 20036
(202) 570-4896
Andrew.Bakaj@WhistleblowerAid.org
APB@CompassRosePLLC.com

*Counsel for Amicus Curiae*

6

# **TABLE OF CONTENTS**

TABLE OF CONTENTS                                                          1

TABLE OF AUTHORITIES                                                      2

CERTIFICATE OF INTEREST                                                   3

INTEREST OF THE *AMICUS CURIAE*                                           5

CORRECTED *AMICUS CURIAE* BRIEF BY WHISTLEBLOWER AID IN
SUPPORT OF PETITIONERS' MOTION FOR INITIAL HEARING *EN BANC*  6

INTRODUCTION                                                             6

I. HISTORICAL OVERVIEW: FROM THE CONTINENTAL CONGRESS
TO TODAY                                                                 9

II. MSPB'S DECISION WILL END PROTECTIONS FOR
WHISTLEBLOWERS TERMINATED FROM FEDERAL SERVICE
UNDER ARTICLE II                                                        15

III. MSPB'S DECISION IN PETITIONERS' CASE VIOLATES
FEDERAL LAW AND CONGRESSIONAL INTENT FOR AN INDEPENDENT
BODY TO PROTECT FEDERAL WHISTLEBLOWERS                                   17

CONCLUSION                                                               19

CERTIFICATE OF COMPLIANCE                                                20

CERTIFICATE OF SERVICE                                                   21

# TABLE OF AUTHORITIES

**Cases:**

*Arnett v. Kennedy*, 416 U.S. 134, 148 (1974)                                         12

*United States* v. *Fausto*, 484 U.S. 439 (1988)                                        14

**Statutes, Rules and Authorities:**

Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111        *passim*

Pendleton Act of 1883, ch. 27, 22 Stat. 403 (amended 1978)                *passim*

Lloyd-La Follette Act, Pub. L. No. 62-336, 37 Stat. 555 (1912)                  12

The Inspector General Act of 1978, Pub. L. No. 95-452, 92 Stat. 1101
(codified as amended at 5 U.S.C. app. § 113)                                            13

Whistleblower Protection Act of 1989, Pub. L. No. 101-12, 103 Stat. 16
(amended 2022)                                                                          *passim*

5 U.S.C. § 7701                                                                               8

5 U.S.C. § 2302 (b)(8)                                                                      16

5 U.S.C. § 1221 (e)(1)                                                                      16

5 U.S.C. § 1201                                                                             18

5 U.S.C. § 1202 (d)                                                                         18

5 C.F.R § 1200                                                                              17

## CERTIFICATE OF INTEREST

Counsel for *Amicus Curiae* certify as follows:

1. The full name of every party represented by us is:

   **Whistleblower Aid.**

2. The name of the real party in interest represented by us is:

   **Same as above.**

3. All parent corporations and publicly held companies that own 10% or more of stock in the parties represented by us are:

   **No person or entity owns stock in the above.**

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

   **None.**

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal:

   **None.**

6. The names and information of any organizational victims in a criminal case under Fed. R. App. P. 26.1(b) and the names and information of any bankruptcy case debtors and trustees under Fed. R. App. P. 26.1(c):

   **Not Applicable.**

Respectfully submitted,

/s/ Andrew P. Bakaj, Esq._____

April 17, 2026

Andrew P. Bakaj
DC Bar # 978658
Whistleblower Aid
Compass Rose Legal Group, PLLC
1250 Connecticut Ave., N.W.
Suite 700
Washington, D.C. 20036
(202) 570-4896
Andrew.Bakaj@WhistleblowerAid.org
APB@CompassRosePLLC.com

*Counsel for Amicus Curiae*

## INTEREST OF THE *AMICUS CURIAE*

Whistleblower Aid is a 501(c)(3) legal organization providing *pro bono* legal, advocacy, and communications support to government and private sector whistleblowers acting in the public interest.

No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person – other than the *amicus curiae* – contributed money that was intended to fund preparing or submitting this brief.[1]

This brief is filed with the authority and consent of all parties.

---

[1] *See* Fed. R. App. P. 29(a)(4)(E).

**CORRECTED *AMICUS CURIAE* BRIEF BY WHISTLEBLOWER AID IN SUPPORT OF PETITIONERS' MOTION FOR INITIAL HEARING *EN BANC***

## Introduction

Since President Trump's return to office, the protections against corruption, waste, fraud, and abuse in the federal government have been rapidly dismantled.[2] In fact, the guardrails that were created over a span of decades – if not over the two centuries since our nation was founded – to prevent or deter federal officials from outright violating the law are effectively non-existent.

Starting on their first day in office, the Administration rolled out a series of sweeping changes that directly or indirectly dismantled the core systems designed to ensure competent, effective, and accountable government. Guardrails designed to promote transparency and accountability have been either undone or weaponized by this Administration against its perceived enemies, often whistleblowers. The watchdogs created by Congress and tasked with conducting oversight or investigating misconduct have been sidelined, targeted, or removed in their entirety.[3] Whistleblowers, who are now more important than ever, are being

---

[2] Lucia Suarez Sang et al., *Trump fires multiple federal inspectors general in oversight purge*, CBS NEWS (Jan. 27. 2025), https://www.cbsnews.com/news/trump-federal-inspectors-general-fired/.

[3] Jack Queen, *US watchdog agency chief removed after appeals court approves firing by Trump*, REUTERS (Mar. 5, 2025), https://www.reuters.com/legal/us-appeals-court-allows-trump-fire-head-independent-watchdog-agency-2025-03-06/; Tom Jackson, *Federal judge rules Trump's firing of merit board chair was illegal*, WASH. POST. (Mar. 4, 2025),

targeted by the Administration, not only through weakening the institutional protections for disclosing wrongdoing, but also by direct personal attacks, including threats, intimidation, and presidential decree.[4]

As a result, this Administration has created a culture of fear within the federal workforce, perhaps *the likes of which have never been seen*.

The Merit Systems Protection Board ("MSPB") is a critical component to ensuring government accountability, transparency, and integrity. Created in 1978 under the Civil Service Reform Act ("CSRA"), the MSPB replaced the former Civil Service Commission, taking over its employee appeals functions to ensure independent review and protection of the federal merit system.[5] A critical element for ensuring government integrity, MSPB is the primary adjudicator for most federal employees who face retaliation for whistleblowing, ensuring agencies cannot punish employees for disclosing wrongdoing, such as violations of law, gross mismanagement, or threats to public safety.[6] Moreover, establishing it as an

---

https://www.washingtonpost.com/dc-md-va/2025/03/04/trump-firing-cathy-harris-mspb-illegal/; Melissa Quinn, *Judge finds Trump's firing of member of National Labor Relations Board was illegal,* CBS NEWS (Mar. 6, 2025), https://www.cbsnews.com/news/trump-nlrb-national-labor-relations-board-judge/.

[4] Memorandum on Addressing Risks Associated With an Egregious Leaker and Disseminator of Falsehoods, Comp. Pres. Docs. 2025 DCPD No. 202500464 (Apr. 9, 2025), https://www.govinfo.gov/content/pkg/DCPD-202500464/pdf/DCPD-202500464.pdf; Adam Cancryn, et al., *Trump orders investigation of two first-term administration aides who criticized him*, POLITICO (Apr. 9, 2025), https://www.politico.com/news/2025/04/09/donald-trump-retribution-miles-taylor-00007512.

[5] U.S Merit Systems Protection Board, About MSPB, MSPB.GOV (last accessed Apr. 14, 2025), https://www.mspb.gov/about/about.htm.

[6] U.S. Merit Systems Protection Board, Whistleblower Q&A, MSPB.GOV https://www.mspb.gov/appeals/whistleblower (last accessed Apr. 14, 2026).

"independent, quasi-judicial" agency, Congress not only endeavored to create a non-partisan civil service system devoted to fairness and efficiency, but one free from "coercion for partisan political purposes."[7]

The MSPB's decision in this case ruled that it lacked jurisdiction to consider appeals of removal actions of Petitioners Megan Jackler and Brandon Jaroch. The Board ruled that Article II abrogates the procedural and substantive removal protections of the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7701, *et seq.*, threatening a critical component to oversight and accountability of our federal government: a whistleblower's right to appear before the MSPB to challenge retaliation. If allowed to stand, this Administration – or any subsequent administration – can easily short circuit retaliation against whistleblowers by summarily terminating them under Article II, extinguishing their ability to challenge the retaliatory termination in any way, shape, or form, thus denying them due process.

This brief provides not only the historical context and significance of whistleblowing and whistleblower protection, but also MSPB's role as an independent arbiter of a whistleblower's appeal. To that end, MSPB's decision in this case that Article II abrogates the procedural and substantive removal

---

[7] Civil Service Reform Act of 1978, Pub. L. No. 95–454,§ 2301(b)(8)(A);  U.S Merit Systems Protection Board, About MSPB, MSPB.GOV (last accessed Apr. 14, 2025), https://www.mspb.gov/about/about.htm; Merit Systems Protection Board, STRATEGIC PLAN FOR FY 2022-2026, 2 (Mar. 2022), https://perma.cc/C489-6777.

protections of the CSRA (1) violates federal law and Congress's intention to create a neutral and independent MSPB; and (2) ends protections for whistleblowers terminated under Article II.

If allowed to stand, MSPB's decision in this case will have an adverse impact not only on whistleblowers, but transparency and accountability government-wide.

## I.    HISTORICAL OVERVIEW: FROM THE CONTINENTAL CONGRESS TO TODAY

The notion that whistleblowers are essential to good governance and a critical agent of accountability goes back to the nation's founding, a principle enshrined by the Second Continental Congress passing the Whistleblower Protection Act of 1778.[8]

In 1777, Samuel Shaw and Richard Morven, officers of the Continental Navy, filed a formal disclosure accusing their commander, Commodore Esek Hopkins – the first Commander in Chief of the Continental Navy – of abusing his authority and violating the ethical standards of wartime conduct. Specifically, their disclosure alleged that the Commodore "treated prisoners in a very unbecoming,

---

[8] Worthington Chauncey et al., Journals of the Continental Congress 1774–1778, at 732 https://www.loc.gov/resource/llscdam.lljc011/?st=gallery; Cong. Rsch. Srv., *The Whistleblower Protection Act (WPA): A Legal Overview,* at 1 (Dec. 30, 2024), https://www.congress.gov/crs_external_products/R/PDF/R48318/R48318.1.pdf; S. RES NO. 522, 114th Cong. (2016), https://www.congress.gov/bill/114th-congress/senate-resolution/522/text.

barbarous manner,"[9] and described his orders as "wild" and "unsteady."[10] Shaw and Marven alleged torture of British prisoners of war, violating the mandate of Congress that enemy prisoners be treated humanely.[11]

Because they reported misconduct by their superior officer, these men risked severe retaliation – especially considering they were reporting the highest-ranking naval officer during wartime: the Commander in Chief of the Navy. Moreover, both Shaw and Marven were Rhode Islanders, and Commodore Hopkins was a politically connected naval officer. Commodore Hopkins' brother, Stephen Hopkins, had been governor of Rhode Island, served as chief justice of the Rhode Island Supreme Court, was a delegate to the Continental Congress, and had signed the Declaration of Independence.[12] Wielding his influence as "Commander in Chief" of the Navy – as well as his personal and political influence *vis a vis* his brother – Commodore Hopkins retaliated by initiating a criminal libel suit in Rhode Island, where his brother had great influence, leading to their arrest and incarceration while awaiting trial.[13]

---

[9] American-Irish Historical Society, The Journal of the American-Irish Historical Society, 226 (Vol. 21, 1922), https://books.google.com/books?id=EqTM01tq4UkC&pg=PA225&lpg=PA225&dq=#v=onepage&q&f=false.

[10] *Id.*, at 232.

[11] *Id.*, at 732-733; S. RES NO. 522, 114th Cong. (2016), https://www.congress.gov/bill/114th-congress/senate-resolution/522/text.

[12] Christopher Klein, *US Whistleblowers First Got Government Protections in 1777,* HISTORY.COM (last updated Jun. 30, 2025), https://www.history.com/articles/whistleblowers-law-founding-fathers.

[13] *Id.;* American-Irish Historical Society, The Journal of the American-Irish Historical Society, at 233.

On March 26, 1777, Commodore Hopkins was suspended from command, and the case quickly set the stage for the Second Continental Congress to consider protections for those who speak out against wrongdoing – aka whistleblowers. On July 30, 1778, the Second Continental Congress passed a resolution that became known as the "Whistleblower Protection Act of 1778," stating:

> That it is the duty of all persons in the service of the United States, as well as all other inhabitants thereof, to give the earliest information to Congress or other proper authority of any misconduct, frauds or misdemeanors committed by any officers or persons in the service of these states, which may come to their knowledge.[14]

Over a century later in 1883, Congress established the U.S. Civil Service by passing the Pendleton Act.[15] While Congress created the Civil Service system, it was expanded under the care of Theodore Roosevelt – before he even became president.

In 1889, President Benjamin Harrison appointed Roosevelt as a federal Civil Service Commissioner, a position he served in until 1895.[16] As a commissioner, Roosevelt vigorously championed merit-based hiring over political patronage – also known as the "spoils system" – significantly expanding the civil service, also

---

[14] Worthington Chauncey et al., *Journals of the Continental Congress* 1774–1778, at 732 ("Resolved, That it is the duty of all persons in the service of the United States, as well as all other inhabitants thereof, to give the earliest information to Congress or other proper authority of any misconduct, frauds or misdemeanors committed by any officers or persons in the service of these states, which may come to their knowledge.").

[15] Pendleton Act of 1883, ch. 27, 22 Stat. 403 (amended 1978).

[16] Letter from Henry Cabot Lodge to Theordore Roosevelt, Library of Cong. Manuscript Division (July 13, 1889) (on file with Theodore Roosevelt Digital Library), https://www.theodorerooseveltcenter.org/digital-library/o25557/.

11

known as the "classified service."[17] When he became president, Roosevelt further advanced this by increasing the number of "classified service" jobs, eliminating political assessments, and modernizing the system.[18] For this, Roosevelt earned the title "Father of the modern civil service" for his efforts to make federal government jobs based on competence rather than party loyalty or, as he put it, "what you know not who you know."[19]

While Roosevelt increased civil service protections and launched investigations against corrupt officials, federal employees still lacked the right to administratively appeal adverse personnel actions.[20] Congress began to address this gap by passing the Lloyd-La Follette Act of 1912, creating the right for federal workers to blow the whistle to Congress.[21] Despite these changes, the duty to

---

[17] Richard D. White, *Theodore Roosevelt as Civil Service Commissioner: Linking the Influence and Development of a Modern Administrative President,* Administrative Theory and Praxis (Jan. 28, 2016), https://www.tandfonline.com/doi/abs/10.1080/10841806.2000.11643484#:~:text=Abstract,modernized%20the%20civil%20service%20machinery.

[18] Library of Congress, *Federal Civil Service Employment Law: A Beginner's Guide*, GUIDES.LOC.GOV, (last accessed Apr. 14, 2026), https://guides.loc.gov/federal-civil-service-employment-law#:~:text=President%20Theodore%20Roosevelt%20concentrated%20on,government%20service%20to%2066%20percent.%E2%80%9D

[19] Theodore Roosevelt Ass'n, *Theodore Roosevelt: A Life of Public Service*, THEODOREROOSEVELT.ORG (last accessed Apr. 14, 2026), https://www.theodoreroosevelt.org/content.aspx?page_id=22&club_id=991271&module_id=337415#:~:text=Civil%20Service%20Commissioner:%20(May%201889,in%20office%20I%20mean%20business.%22.

[20] Theodore Roosevelt, *An Object Lesson in Civil Service Reform*, THE ATLANTIC (Feb. 1891), https://www.theatlantic.com/magazine/archive/1891/02/an-object-lesson-in-civil-service-reform/519717/; *Arnett v. Kennedy,* 416 U.S. 134, 150 (1974) ("while job tenure [in the federal civil service] was accorded protection, there were no administrative appeal rights for action taken in violation of this rule, and the courts declined to judicially enforce it.").

[21] *See, e.g.*, Lloyd-La Follette Act, Pub. L. No. 62-336, 37 Stat. 555 (1912).

resolve all administrative cases fell to the Civil Service Commission.[22] By functioning as both an oversight body and management system for the Executive Branch, the Civil Service Commission left federal workers and whistleblowers vulnerable to political machinations, which ultimately undermined the commission's credibility.[23]

Similar to Commodore Hopkins as Commander in Chief of the Navy, Richard Nixon as President of the United States engaged in misconduct while in office. Watergate, a political scandal where President Nixon actively participated in a criminal cover-up, led him to resign the presidency, with Congress subsequently instituting significant oversight and accountability reforms.[24] In an effort to mitigate against future abuses of presidential authority, Congress expanded oversight over the Executive Branch, which included creating protections for federal workers. These reforms included passing both the Inspector General and Civil Service Reform Acts in 1978.[25]

In 1978, the U.S. Senate Committee on Governmental Affairs issued its report on the Civil Service Reform Act.[26] The report noted that the Civil Service

---

[22] S. REP. NO. 95-969, 95th Cong,. at 2-4 (1978).

[23] *Id.,* at 2-5.

[24] Nixon Foundation, Watergate Explained, NIXONFOUNDATION.ORG (last accessed Apr. 14, 2025), https://www.nixonfoundation.org/watergate-explained/.

[25] Inspector General Act of 1978, Pub. L. No. 95-452, 92 Stat. 1101 (codified as amended at 5 U.S.C. app. § 113); Civil Service Reform Act of 1978, Pub. L. No. 95-454, §§ 3(1) - (10), 92 Stat. 1111, 1118–44.

[26] S. REP. NO. 95-969, 95th Cong (1978).

13

Commission required reform because the system – as it stood – was open to political abuse, thus impacting its credibility. The Committee wrote:

> [... ] The [Civil Service Commission] must now simultaneously serve as a management agent for a President elected through a partisan political process as well as the protection of the merit system from partisan abuse. The Commission serves, too, as the provider of services to agency management in implementing personnel programs, while maintaining sufficient neutrality to adjudicate disputes between agency managers and their employees. As a result, the Commission's performance of its conflicting functions has suffered. "Expected to be all things to all parties—Presidential counsellor, merit "watchdog," employee protector, and agency advisory—the Commission has become progressively less credible in all of its roles."[27]

To remedy this, Congress passed the CSRA, striving to "replace an outdated patchwork of statutes and rules" that governed civil service employees by creating a body to review employee challenges of employer actions.[28] In doing so, it created the MSPB as an independent, quasi-judicial agency to protect federal merit systems against prohibited personnel practices and partisan political abuses.[29] Subsequently in 1989, Congress passed the Whistleblower Protection Act, strengthening the MSPB's authority as an independent agency protecting federal employees who disclose information they reasonably believe demonstrates a violation of law, rule,

---

[27] *Id.,* at 5, (referencing The President's Reorganization Project, Personnel Management Project Volume 1 Final Staff Report, 233 (1977)).
[28] *Id.,* at 3; *United States* v. *Fausto,* 484 U.S. 439, 444–45 (1988); Civil Service Reform Act of 1978, Pub. L. No. 95-454, §§ 201-05.
[29] *Fausto* at 444 - 45; *Id.* at Civil Service Reform Act of 1978, Pub. L. No. 95-454, §§ 201-05.

or regulation, gross mismanagement, abuse of authority, or substantial safety dangers.[30]

In the instant case, permitting MSPB's ruling to stand not only means that the very purpose for which Congress created the agency is undone, but that this or any future president may successfully retaliate against whistleblowers by obviating protections enshrined in law by summarily firing them under Article II. Returning unbridled political influence over the merit system will take us back to the age of "wild" or "unsteady" orders of Commodore Hopkins now coming from an arbitrary, capricious, and vindictive president.

## II.    MSPB'S DECISION WILL END PROTECTIONS FOR WHISTLEBLOWERS TERMINATED FROM FEDERAL SERVICE UNDER ARTICLE II

In this case, MSPB's decision that Article II abrogates the procedural and substantive removal protections of the CSRA sweeps whistleblower's feet out from under them by removing critical due process rights. What is at stake is a whistleblower's right to appear before the MSPB to challenge retaliation in its harshest form: removal from federal service. If allowed to stand, this Administration – and any subsequent administration for that matter – can fast-track retaliation against whistleblowers by summarily terminating them under Article II

---

[30] Whistleblower Protection Act of 1989, Pub. L. No. 101-12 § 3(a), 103 Stat. 16, 19.

without any scrutiny whatsoever. By bowing to the president on such matters, the MSPB destroys its independence and neutrality, injects politics and favoritism in place of due process, and introduces new mechanisms for retaliation. As such, this will most certainly clear a path for reprisal, emboldening politically motivated animus thereby violating the historical intent behind merit systems protections.[31]

In passing the Whistleblower Protection Act of 1989, Congress expanded protections against "Prohibited Personnel Practices," which includes removal actions taken in retaliation for lawful whistleblowing.[32] By enhancing MSPB's authority, the Whistleblower Protection Act of 1989 ensured federal employees terminated for whistleblowing have both a mechanism and a venue to immediately challenge their removal by going directly to the Board in what is known as an Individual Right of Action.[33]

If the Board's decision in this case is allowed to stand, it not only undoes the civil service reforms that first began under the Pendleton Act of 1883, but also the post-Watergate reforms established to prevent and deter abuses of authority, up to and including presidential misconduct. The ramifications of destroying the system that has been created over decades not only harms federal whistleblowers, but the nation more broadly by disabling a critical avenue for transparency. In a new era of

---

[31] *See* S. REP. NO. 2640, 95th Cong., at 7 (1978); Civil Service Reform Act of 1978, Pub. L. No. 95–454, § 2301((b)(8)(A).
[32] 5 U.S.C. § 2302(b)(8).
[33] 5 U.S.C. § 1221(e)(1).

16

secrecy, opacity, unbridled retribution, and non-existent accountability, prospective whistleblowers – persons of conscience – will be even more likely to succumb to intimidation and further deterred from coming forward. With fewer whistleblowers coming forward, Inspectors General, Congress – even the Courts – will be operating in the dark with far less access to critical evidence of fraud, waste, and abuse to hold our government to account. As a result, there will be less transparency to the American public, within whom the nation's sovereignty resides.[34]

## III.  MSPB'S DECISION IN PETITIONERS' CASE VIOLATES FEDERAL LAW AND CONGRESSIONAL INTENT FOR AN INDEPENDENT BODY TO PROTECT FEDERAL WHISTLEBLOWERS

In 1978, Congress authorized the MSPB to be a quasi-judicial body to protect federal merit systems and employees against management abuses and prohibited personnel practices.[35] The Board's composition reflects this intent, as not more than two of its three members may be adherents of the same political

---

[34] Andrew G.I Kilberg, *We the People: The Original Meaning of Popular Sovereignty*, 100 Va. L. Rev. 1061 (2014), https://virginialawreview.org/wp-content/uploads/2020/12/Kilberg_Book.pdf.

[35] Whistleblower Protection Act of 1989, Pub. L. No. 101-12 § 3(a), 103 Stat. 16, 19; 5 C.F.R. 1200.1 (2026); https://www.mspb.gov/msp/FAQ.

party.[36] Moreover, its independence is enshrined in law, as the president may only remove members "for inefficiency, neglect of duty, or malfeasance in office."[37]

MSPB's isolation from executive and political pressure is precisely what ensures its independence and neutrality. This is consistent with the law and furthers Congress's intent that the MSPB ". . . . should be insulated from the kind of political pressures that have led to violations of merit principles in the past . . ." and that it was designed to "exercise statutory responsibilities independent of any Presidential directives."[38]

The CSRA created the MSPB to assume the adjudicative functions of the former Civil Service Commission and provide agencies and employees with independent review and due process in appeals.[39]

The MSPB's ruling in the instant case not only flies in the face of what Congress intended for it to be, it also undermines its own authority by ignoring the plain language of the law Congress so carefully crafted. Put differently: this decision undermines its own purpose, created through the nation's experience over two centuries. Deferring to the president to remove federal employees under Article II not only undercuts the Board's independence and neutrality, but reverts

---

[36] 5 U.S.C. § 1201.

[37] 5 U.S.C. § 1202(d).

[38] *See* S. REP. NO. 2640, 95th Cong., at 7 (1978).

[39] Merit Systems Protection Board, 2023 Annual Report, 2 (May 1, 2024), https://www.mspb.gov/about/annual_reports/MSPB_FY_2023_Annual_Report.pdf.

the agency to what it was designed to replace: a commission that permits political influence over civil service employees.

As our nation embarks upon its 250th celebration of independence, it must be lost on no one that the revolutionary spirit that established the nation included the role of whistleblowers, whose contribution our founding fathers both memorialized and protected during the Second Continental Congress.

We respectfully submit that this Honorable Court continue in that spirit.

## CONCLUSION

For the above-stated reasons, this Court should grant Petitioners' motion for initial hearing *en banc*.

Respectfully submitted,

April 17, 2026

/s/ Andrew P. Bakaj, Esq._____
Andrew P. Bakaj
DC Bar # 978658
Whistleblower Aid
Compass Rose Legal Group, PLLC
1250 Connecticut Ave., N.W.
Suite 700
Washington, D.C. 20036
(202) 570-4896
Andrew.Bakaj@WhistleblowerAid.org
APB@CompassRosePLLC.com

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32, the undersigned attorney certifies that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32 because this brief contains 2,329 words, excluding the parts of the brief exempted by the Rules.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman in 14 point (and 12 point for footnotes).

Respectfully submitted,

/s/ Andrew P. Bakaj, Esq._____

April 17, 2026

Andrew P. Bakaj
DC Bar # 978658
Whistleblower Aid
Compass Rose Legal Group, PLLC
1250 Connecticut Ave., N.W.
Suite 700
Washington, D.C. 20036
(202) 570-4896
Andrew.Bakaj@WhistleblowerAid.org
APB@CompassRosePLLC.com

*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2026, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Federal Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted,

April 17, 2026

/s/ Andrew P. Bakaj, Esq._____
Andrew P. Bakaj
DC Bar # 978658
Whistleblower Aid
Compass Rose Legal Group, PLLC
1250 Connecticut Ave., N.W.
Suite 700
Washington, D.C. 20036
(202) 570-4896
Andrew.Bakaj@WhistleblowerAid.org
APB@CompassRosePLLC.com

*Counsel for Amicus Curiae*

21