**No. 26-1575**

**In the United States Court of Appeals**
**For the Federal Circuit**

Megan Jackler and Brandon Jaroch,

Petitioners,

v.

Department of Justice and Director of the Office of Personnel Management,

Respondents.

On Petition for Review from the
Merit Systems Protection Board

***Amicus Curiae* Brief for EEO Leaders**
**In Support of Petitioners and**
**In Support of Reversal**

Heidi R. Burakiewicz
Burakiewicz & DePriest, :LLC
1120 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20036
(202) 856-7500
hburakiewicz@bdlawdc.com

*Counsel for Amicus Curiae*

June 5, 2026

## CERTIFICATE OF INTEREST

Counsel for *Amicus Curiae*, EEO Leaders, certifies the following in accordance with Federal Circuit Rule 47.4.

1. Represented Entities (Fed. Cir. R. 47.4(a)(1)

   **Charlotte A. Burrows**
   **Pam Coukos**
   **Chai Feldblum**
   **Karla Gilbride**
   **Stuart Ishimaru**
   **P. David Lopez**
   **Peggy R. Mastroianni**
   **Carol R. Miaskoff**
   **Jocelyn Samuels**
   **Carolyn L. Wheeler**
   **Jenny R. Yang**

2. Real Party in Interest (Fed. Cir. R. 47.4(a)(2)

   **Not Applicable**

3. Parent Corporations and Stockholders (Fed. Cir. R. 47.4(a)(3)

   **Not Applicable.**

4. Legal Representatives (Fed. Cir. R. 47.4(a)(4)

   **Not Applicable.**

5. Related Cases (Fed. Cir. R. 47.4(a)(5)

   **Not Applicable.**

6. Organizational Victims and Bankruptcy Cases (Fed. R. App. P. 36.1(b) and 26.1(c); Fed. Cir. R. 47.4(a)(6)

   **Not Applicable.**

Dated: June 5, 2026

/s/Heidi R. Burakiewicz
Heidi R. Burakiewicz

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................................ i

TABLE OF CONTENTS ................................................................................ ii

TABLE OF AUTHORITIES ........................................................................... iii

STATEMENT OF IDENTITY AND INTEREST OF AMICUS CURIAE ............ 1

ARGUMENT ................................................................................................ 2

I. Congress sought to eradicate wide-spread discrimination in the federal government by extending employment protections to federal employees under several statutes, including Title VII. ................ 2

II. The procedures governing federal employees' claims under the CSRA and the discrimination statutes are complex and challenging. ........................................................................................................ 7

III. This Court should reject the government's assertion that Article II abrogates Civil Service Reform Act protections because this defense will make discrimination claims under Title VII vulnerable as well. ..... 15

CONCLUSION ............................................................................................ 18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

### CASES

*Bolling v. Sharpe*, 347 U.S. 497 (1954) .......... 3, 6, 16

*Brown v. GSA*, 425 U.S. 820 (1976) .......... 6, 16

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012) .......... 8

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 538 (2010) .......... 14

*Gnotta v. United States*, 415 F.2d 1271, 1276 (8th Cir. 1969) .......... 4

*Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748 (2025) .......... 13

*Kloeckner v. Solis*, 568 U.S. 41 (2012) .......... 11, 12

*Morrison v. Olson*, 487 U.S. 654 (1988) .......... 13

*Perry v. MSPB*, 582 U.S. 420 (2017) .......... 10, 12

*Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020) .......... 13

*United States v. Fausto*, 484 U.S. 439 (1988) .......... 8

### CONSTITUTIONAL PROVISIONS

U.S. Const. art. II .......... 2, 7, 13,14,15,16

U.S. Const. amend. V .......... 16-17

### STATUTES

5 U.S.C. § 2302(b)(1)(A)-(E) .......... 7-8

5 U.S.C. § 2302(b)(8) .......... 9

5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), (D) .......... 9

5 U.S.C. § 4303 .......... 9

5 U.S.C. § 7201(b) .......... 3

5 U.S.C. §7512 .......... 8, 10

5 U.S.C. § 7512(1)-(5) .......... 8

5 U.S.C. § 7513(a) .......... 8

5 U.S.C. § 7513(b) ........ 2, 9
5 U.S.C. § 7701 ........ 9
5 U.S.C. § 7702 ........ 11
5 U.S.C. § 7702(A)(1)(B)(i)-(v) ........ 10
5 U.S.C. § 7702(a)(1) ........ 12
5 U.S.C. § 7702(b) ........ 12
5 U.S.C. §§ 7702(e) ........ 12
5 U.S.C. § 7703(a)-(b) ........ 9
5 U.S.C. § 7703(a)(1), (b)(2) ........ 12
5 U.S.C. § 7703(b)(1)(B) ........ 9
29 U.S.C. § 206(d) ........ 10
29 U.S.C. § 631 ........ 10
29 U.S.C. § 633a ........ 7, 10
29 U.S.C. § 633a(a)-(b) ........ 1
29 U.S.C. § 791 ........ 7, 10
29 U.S.C. § 791 (a)-(b) ........ 1
42 U.S.C. § 1981 ........ 6
42 U.S.C. § 2000e(b) ........ 3
42 U.S.C. § 2000e-16 ........ 5, 6, 8, 10
42 U.S.C. § 2000e-16(a)-(b) ........ 1

**REGULATIONS**

5 C.F.R. § 1201.154(a) ........ 12
29 C.F.R. Part 1614 ........ 7
29 C.F.R. § 1614.105 ........ 10
29 C.F.R. § 1614.106 ........ 10

29 C.F.R. § 1614.109 ........ 10

29 C.F.R. § 1614.110 ........ 10

29 C.F.R § 1614.302 ........ 11

29 C.F.R. § 1614.302(a)(2) ........ 10, 11

29 C.F.R. § 1614.302(b) ........ 12

29 C.F.R §1614.302(d) ........ 12

29 C.F.R. § 1614.305 ........ 13

29 C.F.R §§ 1614.306-309 ........ 13

29 C.F.R § 1614.310 ........ 12, 13

29 C.F.R. § 1614.401(a) ........ 10

29 C.F.R. § 1614.407 ........ 10

**RULES**

Federal Rule of Appellate Procedure 29(a)(4)(E) ........ 1

**EXECUTIVE ORDERS**

Executive Order 8802, 6 Fed. Reg. 3109 (June 25, 1941) ........ 3

Executive Order 9981, 13 Fed. Reg. 4313 (July 26, 1948) ........ 3

Executive Order No. 11246, 30 Fed. Reg. 12,319 (Sept. 28, 1965) ........ 4

Executive Order No. 11478, 34 Fed. Reg. 12,985 (Aug. 12, 1969) ........ 4

Executive Order 14171. 85 Fed. Reg. 67631, 67632 (Oct. 21, 2020) ........ 14

**OTHER AUTHORITIES**

*Legislative History of the Equal Employment Opportunity Act of 1972,* available at https://catalog.hathitrust.org/Record/102574607. ........ 5-6

Gov't Motion to Dismiss, *Nemer v. Blanche*, No.-25-cv-04170 (D.D.C. 4/6/26), ECF 15 ........ 15-16

Reorganization Plan No. 1 of 1978, Pub. L. No. 95-454, § 907, 1978 USCCAN (92 Stat.) 1111, 1227 ........ 6

## STATEMENT OF IDENTITY AND INTEREST OF AMICUS CURIAE[1]

*Amicus Curiae* EEO Leaders[2] are former high-ranking officials who served at the U.S. Equal Employment Opportunity Commission (EEOC) and the Office of Federal Contract Compliance (OFCCP) within the Department of Labor. EEO Leaders includes former EEOC Chairs, Commissioners, and General and Legal Counsels who served at the EEOC during the years 2003 to 2025. One of the EEOC's significant responsibilities is the enforcement of the non-discrimination mandates Congress enacted to protect federal employees from discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-16(a)-(b); age, 29 U.S.C. § 633a(a)-(b); and disability, 29 U.S.C. § 791 (a)-(b). Enforcement of such

[1] In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), *Amicus Curiae* states: no counsel for a party authored this brief in whole or in part; no person other than *Amicus* and its counsel made any monetary contribution intended to fund preparing or submitting this brief.

[2] EEO Leaders include: **Charlotte A. Burrows**, EEOC Commissioner 2015-2025; EEOC Chair 2021-2025; **Pam Coukos,** OFCCP Senior Advisor, 2011-2016; **Chai Feldblum**, EEOC Commissioner 2009-2019; **Karla Gilbride**, EEOC General Counsel, 2023-2025; **Stuart Ishimaru**, EEOC Commissioner 2003-2012; EEOC Acting Chair 2009-2010; **P. David Lopez**, EEOC General Counsel 2010-2016; **Peggy R. Mastroianni**, EEOC Legal Counsel 2011-2017; **Carol R. Miaskoff**, EEOC Associate Legal Counsel 2017-2021; EEOC Legal Counsel 2021-2024; **Jocelyn Samuels**, EEOC Commissioner 2020-2025; EEOC Vice Chair 2021-2025; **Carolyn L. Wheeler,** Assistant General Counsel, 1999-2015; **Jenny R. Yang**, OFCCP Director 2021-2023; EEOC Commissioner 2013-2018; EEOC Vice Chair 2014; EEOC Chair 2014-2017.

rights sometimes involves a complex process before the Merit Systems Protection Board (MSPB), under the Civil Service Reform Act, 5 U.S.C. § 7513(b) (CSRA).

The issue in this case is whether Article II of the Constitution renders the statutory removal protections afforded inferior officers by the CSRA unconstitutional. *Amicus* agrees with Petitioners' argument that the government's position and the MSPB's decision endorsing its sweeping interpretation of the Article II removal authority is legally infirm. *Amicus* writes to emphasize that if this Court were to adopt the MSPB's misguided reasoning, that decision would not only eviscerate federal employees' CSRA rights, but would also impermissibly conflict with their fundamental constitutional and statutory rights to be free from invidious discrimination.

*Amicus* files this brief with the consent of the parties.

## ARGUMENT

### I. Congress sought to eradicate wide-spread discrimination in the federal government by extending employment protections to federal employees under several statutes, including Title VII.

Congress extended the protections of Title VII to federal employees in 1972 and enacted the CSRA in 1978 and the two statutes have deeply intertwined procedural and substantive features that render the continued viability of each statutory regime of critical importance to the other. Petitioners have thoroughly explained the purpose and history of the CSRA but a review of the enactment of

Title VII and its expansion to protect federal employees illustrates the shared goals and methods of the two statutes.

As enacted in 1964, Title VII specifically excluded the federal government from its definition of employer, 42 U.S.C. § 2000e(b). However, it included in section 701 a policy pronouncement that all employment practices involving federal employees should be free from discrimination. *Now codified at* 5 U.S.C. § 7201(b). This policy statement reflected the hopes and aspirations embodied in various Executive Orders intended to ban racial discrimination in the federal government, such as Executive Order 8802, 6 Fed. Reg. 3109 (June 25, 1941), which banned racial discrimination in the government and defense industries, and Executive Order 9981, 13 Fed. Reg. 4313 (July 26, 1948), which desegregated the United States Armed Forces.

The sense that the government ought to be a moral leader and set a standard of equal opportunity for private employers to follow was articulated in the Supreme Court's decision in *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954). In *Bolling*, a Black student challenged segregation in D.C. public schools, and the Court held that maintaining racially segregated schools constitutes a deprivation of liberty in violation of the Due Process Clause. *Id.* at 500. The Court noted that the Constitution prohibits the states from maintaining racially segregated schools, "and it would be unthinkable that the same Constitution would impose a lesser duty on the Federal

Government." *Id.* While not directly protecting federal employees in Title VII Congress expressed the view that had developed over the prior three decades that the government should not discriminate against its own employees.

In accordance with the policy articulated in Title VII, the President ordered the U.S. Civil Service Commission (CSC) to issue regulations for processing discrimination complaints by federal employees. Executive Order No. 11246, 30 Fed. Reg. 12,319 (Sept. 28, 1965). The CSC promulgated regulations establishing formal procedures for employees in covered executive agencies to file charges and imposed obligations on agencies to develop affirmative action plans and otherwise to correct discriminatory practices. In 1969, upon issuance of a new Executive Order, the CSC revised its regulations covering investigations of complaints. Executive Order No. 11478, 34 Fed. Reg. 12,985 (Aug. 12, 1969).

Thus, as mentioned above, even before Congress extended Title VII's protections to federal employees, some forms of discrimination were prohibited by the Constitution, by statute, by executive orders, and by regulations, but meaningful remedies were often unavailable because of sovereign immunity. See, *e.g.*, *Gnotta v. United States*, 415 F.2d 1271, 1276 (8th Cir. 1969) (sovereign immunity barred employment discrimination suit against the federal government because a claim challenging denial of promotion by an employee of the Corps of Engineers would necessarily operate against the sovereign or impact the public treasury). The

shortcomings of these other sources of protection drove Congress's decision to amend Title VII.

When Congress amended Title VII in 1972 by adding 42 U.S.C. § 2000e-16 to cover employees of federal agencies, it identified four principal concerns animating its adoption of this amendment. First, the evidence indicated that all federal agencies showed distributions of employees by race and sex that suggested discrimination. *Legislative History of the Equal Employment Opportunity Act of 1972* at 83 (white men were concentrated in the higher grade levels, women and minorities were in the lower grades with few opportunities for advancement).[3] Second, the major causes of this disparate distribution were CSC tests and qualification standards. *Id.* at 423-24 ("Civil Service selection and promotion techniques and requirements are replete with artificial requirements that place a premium on 'paper' credentials [that can result in perpetuating patterns of discrimination]."). Third, the administrative procedures for enforcement of equal employment opportunity were ineffective because they focused only on deliberate discrimination by individuals rather than on systemic barriers or institutional causes of discrimination, and because the procedures and determinations were in the hands

[3] This legislative history, compiled by the Senate's Subcommittee on Labor, Committee on Labor and Public Welfare, can be found at https://catalog.hathitrust.org/Record/102574607.

of the agencies themselves. *Id.* at 83-84. Fourth, judicial remedies for claims of discrimination were generally nonexistent because of sovereign immunity. *Id.* at 425.

The Supreme Court made some of the same observations in *Brown v. GSA*, 425 U.S. 820, 825-27 (1976) (pre-1972 procedures ineffective because claims were handled within each agency and sovereign immunity barred effective relief). In *Brown*, a federal employee pursued claims of race discrimination against his employer under the CSC procedures, and his agency rendered a final decision that his race played no role in the denial of his promotions. *Id.* at 823. As permitted under the CSC regulations, he filed suit in federal court asserting claims under Title VII and 42 U.S.C. § 1981. The Supreme Court reiterated that "federal employment discrimination clearly violate[s] the Constitution." 425 U.S. at 825, *citing Bolling*, 347 U.S. 497. The Court then reviewed the legislative history of Title VII to buttress its conclusion that Congress intended that Title VII would provide the exclusive remedy for employment discrimination claims by federal employees. *Id.* at 829-831. Thus, the Court held that Brown's section 1981 suit was barred and affirmed dismissal of his Title VII suit on the ground that he had not filed a timely complaint under 42 U.S.C. § 2000e-16. *Id.* at 835.

Although the CSC originally was tasked with enforcement of the federal sector provision, the President shifted that responsibility to the EEOC in 1978.

Reorganization Plan No. 1 of 1978, Pub. L. No. 95-454, § 907, 1978 USCCAN (92 Stat.) 1111, 1227 (codified in various sections of 5 U.SC). The same year, Congress passed the CSRA which abolished the CSC and created the MSPB to carry out its prior adjudicative functions. The EEOC issued comprehensive regulations governing the responsibilities of federal agencies to eradicate discrimination and the procedures for employees to challenge discrimination. The current regulations are codified at 29 C.F.R. Part 1614.

## II. The procedures governing federal employees' claims under the CSRA and the discrimination statutes are complex and challenging.

A review of the regulations governing federal employees' methods of pursuing claims against their agencies demonstrates that the roles of the EEOC and MSPB are often intertwined and highlights the concern that a decision holding that Article II abrogates CSRA protections will have a destructive impact on the enforcement of Title VII.

The majority of current civil service rules stem from the CSRA, which is codified in Title 5. The CSRA covers everything from hiring and firing of federal employees to labor/union rights to whistleblower protections and more, and explicitly prohibits the taking of personnel actions to discriminate against a federal employee on the basis of race, color, religion, sex, national origin, age,

"handicapping conditions," marital status, or political affiliation.[4] 5 U.S.C. § 2302(b)(1)(A)-(E). Similarly, Title VII's federal sector provision explicitly states that "[a]ll personnel actions affecting employees or applicants for employment . . . in executive agencies . . .shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16. The shared goal of the two statutes mandated the adoption of procedures tailored to the expertise of the two agencies.

The CSRA "'established a comprehensive system for reviewing personnel actions taken against federal employees.'" *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012) (quoting *United States v. Fausto*, 484 U.S. 439, 455 (1988)). Under the CSRA, employees have the right to appeal the agency's personnel decision directly to the MSPB only for the most serious personnel actions, including removal from federal service. These serious personnel actions are enumerated in 5 U.S.C. §7512.[5]

In particular, employees may be removed for performance-based reasons under Chapter 43 of Title 5 or to "promote the efficiency of the service," 5 U.S.C. § 7513(a) under Chapter 75 of Title 5. Both of these chapters outline the steps that an

---

[4] Congress amended the ADEA in 1974 to extend its protections to federal employees. 29 U.S.C. § 633a. The Rehabilitation Act had extended protections to federal employees since its enactment in 1973. 29 U.S.C. § 791.

[5] Those adverse actions include: (1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or less. 5 U.S.C. § 7512(1)-(5).

agency must take to effect a removal. For example, before an agency may initiate a removal under Chapter 75, the employee is entitled to:

> (1) at least 30 days' advance written notice, unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, stating the specific reasons for the proposed action;
>
> (2) a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;
>
> (3) be represented by an attorney or other representative; and
>
> (4) a written decision and the specific reasons therefor at the earliest practicable date.

5 U.S.C. § 7513(b). *See also* 5 U.S.C. § 4303 for the procedures for performance-based removals.

Only after following these steps may the agency legally remove the employee from federal service. The employee may then appeal the agency's decision to the MSPB. 5 U.S.C. § 7701. If the Board does not issue a finding in favor of the removed employee, the employee may obtain judicial review of the Board's decision in this Court, 5 U.S.C. § 7703(a)-(b), except in cases asserting certain violations of

the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8) or 2302(b)(9)(A)(i), (B), (C), or (D), which may be filed in any Court of Appeals. 5 U.S.C. § 7703(b)(1)(B).

Federal employees' protections under federal civil rights laws can be invoked and adjudicated for any personnel action, not just those adverse actions enumerated in 5 U.S.C. § 7512. A federal employee who wishes to pursue a claim of wrongful discrimination under civil rights laws must file a complaint with the equal employment opportunity office of the employee's agency, 29 C.F.R. §§ 1614.105, 1614.106, with the option to then request a hearing before an administrative judge of the EEOC, 29 C.F.R. § 1614.109, who will issue a decision and order appropriate remedies and relief if discrimination is found. *Id.* The employee may file an appeal to the EEOC's Office of Federal Operations or file a lawsuit in federal district court. 29 C.F.R. §§ 1614.401(a), 1614.110, 1614.407.

When a federal employee suffers an adverse action that is appealable to the MSPB and attributes the agency's decision, "in whole or in part, to bias based on race, gender, age, or disability, in violation of federal antidiscrimination laws," *Perry v. MSPB*, 582 U.S. 420, 422 (2017), the employee has a "mixed case."[6] The

[6] Section 7702 identifies the laws that can form the basis of a mixed case complaint: section 717 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-16); section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 206(d)); section 501 of the Rehabilitation Act of 1973 (29 U.S.C. § 791); sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. §§ 631, 633a); and any rule, regulation, or policy directive prescribed under any provision of these laws. 5 U.S.C.

intersection of the CSRA and the civil rights laws is most obvious in these mixed cases. 5 U.S.C. § 7702; 29 C.F.R § 1614.302. See also *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012) ("When an employee complains of a personnel action serious enough to appeal to the MSPB and alleges that the action was based on discrimination, she is said (by pertinent regulation) to have brought a "mixed case."). For the federal employee with a mixed case, "[t]he CSRA and regulations of the MSPB and [EEOC] set out special procedures … different from those used when the employee either challenges a serious personnel action under the CSRA alone or attacks a less serious action as discriminatory." *Kloeckner*, 568 U.S. at 44–45. See 5 U.S.C. § 7702; 29 C.F.R § 1614.302.

The employee with a mixed case can challenge the adverse action either by filing with the MSPB, from which appeal rights generally flow to the Federal Circuit, or by beginning with their agency, from which appeal rights generally flow to an appropriate district court. Which way to proceed is entirely the employee's decision, but they may only choose one avenue, not both. 29 C.F.R § 1614.302(a)(2).

If the employee chooses the EEO route, they first file a discrimination complaint with the agency's EEO office, "much as an employee challenging a

---

§ 7702(A)(1)(B)(i)-(v). The EEOC's regulations clarify that a mixed case appeal can be filed because of discrimination "on the basis of race; color; religion; sex; national origin; disability; age; genetic information; or pregnancy, childbirth, or related medical conditions." 29 C.F.R. § 1614.302(a)(2).

personnel practice not appealable to the MSPB could do." *Kloeckner*, 568 U.S. at 45. Unlike in non-mixed cases, however, in a mixed case the employee does not have the opportunity for a hearing before an EEOC administrative judge but only receives a final agency decision. 29 C.F.R §1614.302(d). If that decision is unfavorable to the employee, or if the EEO office does not rule within a certain period of time, the employee again has two choices: they may appeal the mixed case to the MSPB or they may "bypass further administrative review by suing the agency in district court." *Perry*, 582 U.S. at 424 (citing *Kloeckner*, 568 U.S. at 45).

The employee's other option at the outset is to appeal the adverse action directly to the MSPB and not go through the agency EEO process. 5 C.F.R. § 1201.154(a); 29 C.F.R. § 1614.302(b); *Kloeckner*, 568 U.S. at 45. The MSPB has jurisdiction to decide both the merits of the civil service complaint and whether there was discrimination, 5 U.S.C. § 7702(a)(1), following the MSPB's typical process of assignment of the case to an administrative judge for a hearing, with the opportunity for review and final determination by the Board. After the MSPB's decision becomes final, or after a specified amount of time has passed without a decision, the employee may either seek further administrative review of the discrimination claim before the EEOC, 5 U.S.C. § 7702(b), or bring the case in the appropriate federal district court. 5 U.S.C. §§ 7702(e), 7703(a)(1), (b)(2); 29 C.F.R. § 1614.310; *Perry*, 582 U.S. at 425; *Kloeckner*, 568 U.S. at 45.

If the employee chooses to appeal to the MSPB after pursuing the EEO process at their agency, the MSPB follows the same process outlined above, but the appeals process from the MSPB's final decision differs slightly. The employee again has two options, but the administrative route is a petition directly to the EEOC, which may review the MSPB's decision on the discrimination issues. 29 C.F.R. § 1614.305. This option sets up a potential conflict between the MSPB and the EEOC that can be resolved with a "Special Panel," a rarely used mechanism. 29 C.F.R §§ 1614.306-309. More often, the employee chooses to file in federal district court, which can hear both the discrimination and adverse action claims. 29 C.F.R § 1614.310.

In this case, of course, the Petitioners pursued their claims through the MSPB, and the administrative judge found the Petitioners were fired in violation of the CSRA. The Board's decision that it lacked jurisdiction based on the assertion that Article II abrogated the Petitioners' CSRA rights and deprived them of those remedies is novel and, if upheld on appeal, will have a disruptive impact on all federal employees who will be uncertain of how to proceed when the existing procedures are already complicated.

That uncertainty is exacerbated by the fact that it is unclear who is considered an "inferior officer" and the standards for that determination are evolving as courts apply the principles articulated in *Seila Law LLC v. Consumer Fin. Prot. Bureau*,

591 U.S. 197 (2020), and *Morrison v. Olson*, 487 U.S. 654 (1988). The test appears to be whether an individual has a superior other than the President, "and how much power the officer exercises free from control by a superior." *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 761 (2025). But "[c]ourts and scholars have struggled for more than a century to "distinguish inferior officers from employees." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 538 (2010) (Breyer, J. dissenting). The test is vague and malleable and if the Court upholds the MSPB's decision that inferior officers have no CSRA removal protections many employees will be uncertain whether that new rule applies to them. Further, it is not at all clear what other categories of employees the government will assert have lost rights due to its interpretation of Article II. The government is currently reclassifying large numbers of federal employees who are engaged in policy-influencing positions and stripping them of CSRA protections and making them "at will" employees in accordance with Executive Order 14171. 85 Fed. Reg. 67631, 67632 (Oct. 21, 2020).

The rights and procedures codified in the CSRA and Title VII are rooted in the Constitution and have a long and distinguished history that should not be trammeled by a novel, unprecedented, and legally untenable reading of the expansive nature of Article II.

### III. This Court should reject the government's assertion that Article II abrogates Civil Service Reform Act protections because this defense will make discrimination claims under Title VII vulnerable as well.

If the Court were to agree with the MSPB's analysis that Article II abrogates the rights of a large category of federal employees to challenge adverse personnel actions in an MSPB proceeding, it will be difficult to draw the line to explain why that reasoning does not conflict with the application of Title VII and other anti-discrimination protections to these same federal employees. Those protections are essential to make real the foundational protections against discrimination enshrined in the Constitution.

This is not a hypothetical concern. The government is advancing its abrogation argument in a variety of cases involving immigration judges who have filed claims in federal district courts under Title VII or the ADEA alleging their terminations were motivated by discrimination. *See*, *e.g.*, *Nemer v. Blanche*, No. 25-cv-04170 (D.D.C); *Maltinsky v. Patel,* No. 1:25-cv-04031 (D.D.C.); *Billings v. Blanche*, No. 1:26-cv-04086 (S.D.N.Y.); *Pappas v. Blanche*, No. 1:26-cv-12194 (D. Mass.); *Espinoza v. Blanche*, No. 1:26-cv-05157 (N.D. Ill.); *Lilien v. Blanche*, No. 4:26-cv-03965 (N.D. Cal.); *McNary v. Blanche*, No. 2:26-cv-04761 (C.D. Cal.); and *Chamberlin v. Blanche*, No. 3:26-cv-4390 (N.D. Cal.). All were immigration judges except Maltinsky, who was an FBI employee, and all were summarily fired without explanation.

In *Nemer v. Blanche*, the government has urged dismissal on the ground that Article II abrogates protections under Title VII, making the same argument regarding the status of such employees vis a vis the President's Article II authority as it is making in this case. *See* Gov't Motion to Dismiss, No. 25-cv-04170 (D.D.C 4/6/26) ECF 15, p. 17-24 (dismissal a proper exercise of Article II authority).

There are strong reasons to reject the government's brazen assertion that Article II robs federal employees in certain jobs of the ability to bring claims under the CSRA, as the Petitioners' brief makes clear. Moreover, because the government views its argument regarding the status of such employees as applicable to all statutes passed by Congress, if the Court accepts the government's argument in this case, its decision will impermissibly conflict with the carefully constructed statutory framework under Title VII and other discrimination statutes through which federal employees vindicate their Fifth Amendment right to be free from discrimination. U.S. Const. amend. V; *Bolling*, 347 U.S. at 694-95 (racial discrimination and unequal treatment constitute a denial of due process of law or a deprivation of liberty in violation of the Due Process Clause).

If this pernicious doctrine were extended to extinguish federal employees' Title VII rights, those employees would have no option but to bring direct constitutional challenges to adverse employment actions. That would create even more chaos and uncertainty since the Supreme Court held in *Brown* that Title VII is

the exclusive remedy for federal employees' claims of discrimination and that rule would surely have to give way if Title VII no longer provided a remedy. But even if federal employees could litigate their claims under the Constitution, sovereign immunity would still deprive them of any monetary relief. Since Congress waived the government's immunity when it created the rights and remedies codified in the CSRA and Title VII, that grant of a right to hold the government accountable for illegal or discriminatory actions should not be undermined by the argument of the executive branch that empowering employees to hold their government employer accountable undermines the authority of the President. The CSRA guarantees of a right to notice and a hearing to dispute the proffered cause for a termination, and Title VII's guarantee of a discrimination free workplace, are guarantees that flow from the Fifth Amendment's guarantees of due process and equal protection. Those rights cannot be obliterated by an unprecedented and overweening assertion of executive authority to ignore rights embedded in the Constitution.

## CONCLUSION

*Amicus* respectfully urges the Court to reverse the decision of the Merit Systems Protection Board.

Respectfully submitted,

/s/ HeidiR. Burakiewicz

Heidi R. Burakiewicz
Burakiewicz & DePriest, :LLC
1120 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20036
(202) 856-7500
hburakiewicz@bdlawdc.com

*Counsel for Amicus Curiae*

June 5, 2026

## CERTIFICATE OF COMPLIANCE

I certify that this petition complies with the type-volume limitation set forth in Fed. R. App. P. 32(b)(1). Excluding the items exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2), this *amicus* brief contains 4, 027 words.

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed R. App. P. 32(a)(6). This brief has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman, a proportionally spaced font.

/s/ Heidi R. Burakiewicz
Heidi R. Burakiewicz

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing with the United States Court of Appeals for the Federal Circuit through the CM/ECF system on June 5, 2026. I further certify that copies of the foregoing will be served by email on the Merit Systems Protection Board, which consented to email service, at the addresses below:

katherine.smith@mspb.gov
stephen.fung@mspb.gov

/s/ Heidi R. Burakiewicz
Heidi R. Burakiewicz