No. 26-1575

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

MEGAN JACKLER and BRANDON JAROCH,
Petitioners,

v.

DEPARTMENT OF JUSTICE and DIRECTOR OF THE OFFICE OF PERSONNEL MANAGEMENT,
Respondents.

ON PETITION FOR REVIEW OF A DECISION OF
THE MERIT SYSTEMS PROTECTION BOARD
Docket No. CF-0752-26-0069-I-1

# BRIEF OF THE NATIONAL TREASURY EMPLOYEES UNION AS AMICUS CURIAE IN SUPPORT OF THE PETITIONERS URGING REVERSAL

PARAS N. SHAH
General Counsel

ALLISON C. GILES
Associate General Counsel

LINDSAY DUNN
Assistant Counsel

NATIONAL TREASURY EMPLOYEES UNION
800 K Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 572-5500

June 8, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** No. 26-1575

**Short Case Caption** Jackler v. DOJ

**Filing Party/Entity** Amicus Curiae National Treasury Employees Union

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/08/2026

Signature: /s/ Lindsay Dunn

Name: Lindsay Dunn

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| National Treasury Employees Union | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST .......... i

TABLE OF AUTHORITIES .......... iii

INTEREST OF THE AMICUS CURIAE .......... 1

SUMMARY OF ARGUMENT .......... 2

ARGUMENT .......... 4

I. The Board's Decision Disregards Supreme Court Precedent Upholding Congress's Restrictions on Removal. .......... 4

II. The Board's Decision Threatens to End CSRA Removal Protections for Vast Numbers of Federal Workers. .......... 8

III. The Board's Decision Threatens Procedural Fairness Concerning Personnel Actions. .......... 12

CONCLUSION .......... 15

CERTIFICATE OF COMPLIANCE .......... 16

## TABLE OF AUTHORITIES

### Cases

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) ........ 11

*Collins v. Yellen*,
594 U.S. 220 (2021) ........ 6

*Comans v. Exec. Off. of the President*,
No. 1:25-cv-01237-MSN-WEF, 2026 LX 296429
(E.D. Va. Apr. 15, 2026) ........ 9

*Comey v. U.S. Dep't of Just.*,
No. 25-CV-7625 (JMF), 2026 LX 232505
(S.D.N.Y. Apr. 28, 2026) ........ 9, 10, 12

*Dellinger v. Bessent*,
No. 25-5028 (D.C. Cir. Feb. 15, 2025) ........ 14

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010) ........ 6

*Grundmann v. Trump*,
No. 25-5165 (D.C. Cir. Feb. 4, 2026) ........ 13

*Harris v. Bessent*,
160 F.4th 1235 (D.C. Cir. 2025),
*petition for cert. filed*, No. 25-1110 (U.S. Mar. 17, 2026) ........ 13

*Morrison v. Olson*,
487 U.S. 654 (1988) ........ 5, 6

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
591 U.S. 197 (2020) ........ 5, 6

*Sinn v. Dep't of Just.*,
No. DC-315H-25-1961-I-1, 2026 MSPB LEXIS 1467
(M.S.P.B. Mar. 12, 2026) (Initial Decision) .......... 9

*Stone v. FDIC*,
179 F.3d 1368 (Fed. Cir. 1999) .......... 11

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021) .......... 7, 8

*United States v. Perkins*,
116 U.S. 483 (1886) .......... 2, 4, 5

*United States v. Wickersham*,
201 U.S. 390 (1906) .......... 12

**U.S. Constitution**

U.S. Const. art. II .......... 1–3, 5, 8–12, 14

**Statutes**

5 U.S.C. § 7513 .......... 2, 5

8 U.S.C. § 1101(b)(4) .......... 4, 8

8 U.S.C. § 1103(g) .......... 7, 8

Civil Service Act of 1883, ch. 27, 22 Stat. 403 (1883) .......... 12

**Regulations**

8 C.F.R. § 1003.1 .......... 7, 8

8 C.F.R. § 1003.1(c) .......... 7

8 C.F.R. § 1003.1(g)(2) .......... 7

8 C.F.R. § 1003.1(h)(1)(i) .......... 7

**Other Authorities**

Catherine L. Fisk, *Democracy and a Nonpartisan Civil Service,* 67 Ariz. L. Rev. 629 (2025) .......... 12

Exec. Order No. 101 (July 27, 1897) .......... 12

Exec. Order No. 14,215, 90 Fed. Reg. 10,447 (Feb. 24, 2025) .......... 13

S. Rep. No. 95-969 (1978) .......... 13

## INTEREST OF THE AMICUS CURIAE

The National Treasury Employees Union (NTEU) is a labor organization that represents federal employees in thirty-eight agencies and departments. NTEU has a long tradition of litigating to ensure that federal civil servants receive the protections Congress afforded them under the Civil Service Reform Act of 1978 (CSRA). This includes representing employees in administrative and federal court proceedings and challenging serious personnel actions.

In the underlying decision, the Merit Systems Protection Board (Board) adopted a new framework for Article II firing cases that will effectively invalidate the CSRA for many federal employees. The issue before the Court—whether the CSRA's protections conflict with the President's Article II removal power—will potentially impact the employment rights of vast numbers of federal employees.

NTEU files this brief to emphasize the scope of that impact, which extends far beyond those employees deemed inferior officers. Numerous federal employees currently have cases pending before the Board regarding this issue. Countless more—who, like the Petitioners, carry out their job duties with no performance issues—may also soon face

firing on Article II grounds. If affirmed, the Board's erroneous decision will deny many of them recourse to challenge these firings and strip away their CSRA protections.

Pursuant to Federal Rule of Appellate Procedure 29(a), all parties have consented to the filing of this brief.[1]

## SUMMARY OF ARGUMENT

The Board's holding that Article II of the Constitution abrogates the CSRA's removal protections under 5 U.S.C. § 7513, thus depriving the Board of jurisdiction and employees of their opportunity for due process, should be reversed for three reasons:

*First*, the Board's decision disregards one hundred and forty years of Supreme Court precedent answering the question of separation of powers at issue in this case. Under *United States v. Perkins* and its progeny, Congress has the authority to "limit and restrict" the removal of federal employees and inferior officers "as it deems best for the public interest." 116 U.S. 483, 484–85 (1886). The CSRA's removal protections are a valid exercise of that authority.

---

[1] No counsel for a party authored this brief in whole or in part, and no party or party's counsel or person other than the amicus curiae or its members or its counsel contributed money intended to fund preparing or submitting this brief. *See* Fed. R. App. P. 29(a)(4)(E).

*Second*, the Board's decision effectively invalidates CSRA removal protections for many federal workers, including thousands of NTEU members. The Board's new test will extend to employees in all different sorts of roles, if the employees have more than limited duties or exercise any sort of administrative or policymaking authority. Under the Board's decision, the CSRA's removal protections will, in practice, cease to exist almost any time the government invokes Article II.

*Third*, the Board's decision also effectively ends any reasonable sense of fairness federal employees may hold regarding employment-related personnel and processes. This administration has already stripped federal agencies designed to help protect employees and protect the apolitical civil service—including the Federal Labor Relations Authority (Authority), the Office of Special Counsel (OSC), and the Board itself—of independence and neutrality. The Board's decision makes the situation worse. Under the Board's decision, employees who handle and advise on personnel matters, including the Board's own judges and staff, may also lose CSRA removal protections whenever Article II is invoked. This will subject them to undue political pressure.

# ARGUMENT

## I. The Board's Decision Disregards Supreme Court Precedent Upholding Congress's Restrictions on Removal.

The Board's erroneous decision departs from one hundred and forty years of well-established Supreme Court precedent upholding Congress's authority to legislate restrictions on the removal of federal employees and inferior officers. For this reason alone, the Board's decision must be reversed.

In *Perkins*, the Supreme Court confirmed that, when Congress, "by law, vests the appointment of inferior officers in the heads of Departments," Congress also has the authority to "limit and restrict" the removal of federal employees and inferior officers "as it deems best for the public interest." 116 U.S. at 484–85. The head of the Department of Justice—the Attorney General—has authority over the immigration judges whose appeal is at issue here. These immigration judges are appointed by the Attorney General. *See* 8 U.S.C. § 1101(b)(4). They are "subject[ed] to such supervision" as the Attorney General "shall prescribe." *Id.* Under *Perkins*, Congress may protect them "as it deems best for the public interest." *See* 116 U.S. at 484–85. Congress deemed

it appropriate to do so by enacting CSRA removal protections. 5 U.S.C. § 7513.

The Supreme Court has reiterated the principles set forth in *Perkins*. It held in *Morrison v. Olson* that where "Congress ha[s] chosen to vest the appointment of 'inferior' executive officials in the head of a department," there is no "specific constitutional impediment to congressionally imposed restrictions on the President's removal powers." 487 U.S. 654, 689 n.27 (1988) (citation omitted). Even the dissent in *Morrison* stated that the President does not have "plenary power to remove inferior officers." *Id.* at 724 n.4 (Scalia, J., dissenting). Yet the Board inexplicably held that because Petitioners, "based on their duties, are inferior officers who exercise significant adjudicative and policymaking authorities on behalf of the United States," Article II removal authority "abrogates otherwise-applicable statutory removal protections." Appx57.

The Board also misread *Seila Law LLC v. Consumer Financial Protection Bureau*, which referred to inferior officers who have "limited duties and no policymaking or administrative authority." 591 U.S. 197, 218 (2020). First of all, this statement in *Seila Law* was dicta, as the

case did not pertain to inferior officers. Second, the Supreme Court has narrowly applied *Seila Law*, explaining that it "did 'not revisit . . . prior decisions allowing certain limitations on the President's removal power,' but [rather] found 'compelling reasons not to extend those precedents to the novel context of an independent agency led by a single Director.'" *Collins v. Yellen*, 594 U.S. 220, 250–51 (2021) (quoting *Seila Law*, 591 U.S. at 204).

If Congress has the authority to create removal protections for an independent counsel with power to "investigate and prosecute particular alleged crimes by high-ranking Government officials," *Seila Law*, 591 U.S. at 217 (discussing *Morrison*), then logic dictates that Congress may also create removal protections for immigration judges and other civil servants who exercise far more limited duties. *See* Pet. Br. at 22, 50. Also, as Supreme Court precedent makes clear, "adjudicat[ion,]" as completed by immigration judges under the Attorney General's instruction and supervision, is not the "policymaking" that inferior officers might do. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 507 n.10 (2010) ("[M]any administrative law judges of course perform adjudicative rather than

enforcement or policymaking functions . . . or possess purely recommendatory powers").

The Board's analysis also cannot be reconciled with *United States v. Arthrex*, *Inc.*, 594 U.S. 1, 26 (2021). The Board acknowledged *Arthrex* by stating, in a footnote, that the Supreme Court "allowed administrative patent judges to retain for-cause removal protections as inferior officers," provided that their decisions are subject to review by a principal officer. Appx70. But this case is not, as the Board claims, distinguishable from *Arthrex* based on the "limited and conditional review of immigration judge decisions." Appx70. To the contrary, and as the Board also admits, the decisions of immigration judges are subject to review by both the Board of Immigration Appeals (BIA) and the Attorney General. 8 C.F.R. §§ 1003.1(h)(1)(i), 1003.1(c). And of the three, only the BIA and the Attorney General are empowered to issue binding, precedential immigration decisions. 8 C.F.R. § 1003.1(g)(2).

The Attorney General also promulgates the regulations governing how immigration judges make their decisions, as well as the regulations governing when and how those decisions are subject to further review by the BIA and the Attorney General. 8 U.S.C. § 1103(g); 8 C.F.R. §

1003.1. Because immigration judges' decisions are subject to review by a principal officer, *Arthrex* squarely applies. *See* 594 U.S. at 27 ("What matters is that the Director have the discretion to review decisions rendered by [the patent judges].").

## II. The Board's Decision Threatens to End CSRA Removal Protections for Vast Numbers of Federal Workers.

The Board's new test for Article II firings effectively invalidates the CSRA protections for vast numbers of federal workers. Even if cases are considered individually "as applied," the test's framework will govern in every firing case in which Article II is invoked. This fatal weakening of CSRA protections is contrary to employees' statutory due process rights.

The Board's new test only allows inferior officers with "limited duties" to retain CSRA protections. Appx70. But the Petitioners in this case plainly have such "limited duties." The Attorney General's control over the process, procedures, and substance of Petitioners' work as immigration judges is, by statute and regulation, absolute. *See* 8 U.S.C. §§ 1101(b)(4), 1103(g); 8 C.F.R. § 1003.1. The Attorney General even promulgates the regulations dictating the terms and execution of that control. *See* 8 U.S.C. §§ 1101(b)(4), 1103(g); 8 C.F.R. § 1003.1. If

immigration judges, with all these limitations, are stripped of their CSRA removal protections because their duties are considered too expansive under the Board's new test, then most, if not all, others deemed inferior officers will no longer have such protections.

The Board's adoption of this framework will also impact ordinary employees. As Petitioners observe, the Government has recently asserted Article II authority to terminate protected employees without cause or any process or otherwise invalidate their basic rights and protections, with no meaningful analysis of the scope of their duties or authority. Pet. Br. at 55; *see also, e.g., Comans v. Exec. Off. of the President*, No. 1:25-cv-01237-MSN-WEF, 2026 LX 296429, at *4–5 (E.D. Va. Apr. 15, 2026); *Comey v. U.S. Dep't of Just.*, No. 25-CV-7625 (JMF), 2026 LX 232505, at *26–28 (S.D.N.Y. Apr. 28, 2026) (comparing *Comans*). In a number of Article II firing appeals before the Board, the government has regurgitated the same arguments. *See* Pet. Br. at 55. And the Board, in turn, dismissed a number of these appeals without prejudice, pending a resolution of this case. *See, e.g.*, *Sinn v. Dep't of Just.*, No. DC-315H-25-1961-I-1, 2026 MSPB LEXIS 1467 (M.S.P.B. Mar. 12, 2026) (Initial Decision); *Comans*, 2026 LX 296429, at *4–5.

This administration has taken the position that a federal employee can be fired at any time under Article II, without CSRA protections. *See, e.g.*, *Comey*, 2026 LX 232505, at *27–28. It does so by treating Article II firings as distinct and thus untouchable. The government asserts that "[a]lthough Congress has granted agencies authority to remove employees pursuant to Chapter 75," that "statutory authority is separate and distinct from the President's inherent removal authority under Article II." *Comey*, 2026 LX 232505, at *27–28. And the firing decision does not even have to come from the President. *See id.* at *10.

The government's expansive interpretation of the President's Article II powers is unprecedented. As *Comey* observed, "[a]s far as the Court can tell, when enacting the CSRA, Congress did not consider 'Article II removals' of career civil servants because they were not a thing." *Id.* at *21–22. That Court could not find "any instance between the 1883 enactment of the Pendleton Civil Service Reform Act and the 1978 enactment of the CSRA in which the Executive Branch invoked standalone 'Article II' authority to remove a career civil servant." *Id.*

The Board's decision is also flatly inconsistent with federal employees' due process rights. Tenured federal employees have a constitutionally based property interest in continuing employment grounded in the CSRA. Their employment cannot be denied or stripped away without honoring due process rights, such as notice and an opportunity to respond. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (civil servants facing termination were entitled to due process); *Stone v. FDIC*, 179 F.3d 1368, 1374 (Fed. Cir. 1999) ("If the government gives a public employee assurances of continued employment or conditions dismissal only for specific reasons, the public employee has a property interest in continued employment."). These rights cannot be disregarded whenever the administration chooses to invoke Article II as a basis for firing.

Under these circumstances, if the Board's decision stands, the CSRA's removal protections will be rendered meaningless for any number of federal employees at any time. This will change civil service in this country, as we know it. Indeed, "ever since John Adams replaced George Washington," our system's "incoming administrations have generally not replaced most government workers, even when the

presidency switched parties." *Comey*, 2026 LX 232505, at *21–22 n.10 (quoting Catherine L. Fisk, *Democracy and a Nonpartisan Civil Service*, 67 Ariz. L. Rev. 629, 631 (2025)). Going back to the Pendleton Act of 1883, Congress made clear that federal employment should be based on competency and merit. *See* Civil Service Act of 1883, ch. 27, 22 Stat. 403 (1883). Presidents were of the same view. In 1897, President William McKinley issued Executive Order 101 mandating that no removal be made "except for just cause and upon written charges filed with the head of the department or other appointing officer, and of which the accused shall have full notice and an opportunity to make defense." *United States v. Wickersham*, 201 U.S. 390, 398 (1906) (quoting the Executive Order of July 27, 1897).

The Board's reasoning upends these long-established principles. It will enable many federal employees to be terminated and replaced at any time, absent scrutiny or neutral agency review, if the government merely invokes Article II.

## III. The Board's Decision Threatens Procedural Fairness Concerning Personnel Actions.

In enacting the CSRA, Congress sought to prevent regression back to the "spoils" system of the 19th century, in which employees advanced

on the basis of "political or personal favoritism." S. Rep. No. 95-969, at 2–7 (1978). The CSRA created an adjudication system to "discourage subversions of merit principles" and "protect the merit system," with, at its crux, "a strong and independent [MSPB] and Special Counsel." *Id.* The Board's decision, however, undercuts those agencies' strength and independence because their own employees will not be protected from political pressure. The effectiveness of the adjudication system Congress created depends upon its employees' ability to perform their jobs fairly. The MSPB's decision infringes upon their ability to do so.

This administration has already stripped federal offices of independence and neutrality. *See* Exec. Order No. 14,215, 90 Fed. Reg. 10,447 (Feb. 24, 2025) (announcing "Presidential supervision and control of the entire executive branch."). Those offices include the Authority, the OSC, and the Board itself. Consistent with his view regarding unfettered control over independent agencies, the President has summarily fired a Board member, the Authority Chair, and the Special Counsel.[2]

---

[2] *See, e.g.*, *Harris v. Bessent*, 160 F.4th 1235 (D.C. Cir. 2025), *petition for cert. filed*, No. 25-1110 (U.S. Mar. 17, 2026); *Grundmann v. Trump*, No. 25-5165 (D.C. Cir. Feb. 4, 2026) (remanding with instructions to dismiss

The Board's decision jeopardizes these offices' integrity even further. Under the Board's decision, employees who handle and advise upon employee personnel matters may also lose CSRA removal protections and be subject to undue political pressure whenever the government invokes Article II. Such employees include the Board's own administrative judges and employees. The downstream casualties will be the millions of federal workers whose rights depend on the Board and its employees doing their jobs fairly and apolitically.

---

challenge to removal); *Dellinger v. Bessent*, No. 25-5028 (D.C. Cir. Feb. 15, 2025) (dismissing appeal of temporary restraining order for lack of jurisdiction).

## CONCLUSION

For the foregoing reasons and those stated in Petitioners' brief, NTEU urges the Court to set aside the Board's decision.

Respectfully submitted,

PARAS N. SHAH
General Counsel

ALLISON C. GILES
Associate General Counsel

/s/ Lindsay Dunn
LINDSAY DUNN
Assistant Counsel

NATIONAL TREASURY EMPLOYEES UNION
800 K Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 572-5500
paras.shah@nteu.org
allie.giles@nteu.org
lindsay.dunn@nteu.org

June 8, 2026

Counsel for NTEU

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a). The brief contains 2,582 words, excluding the parts of the brief exempted by the Rules. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface in 14-point Century font using Microsoft Word for Office 365.

/s/ Lindsay Dunn
LINDSAY DUNN
NATIONAL TREASURY EMPLOYEES UNION
800 K Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 572-5500
lindsay.dunn@nteu.org

June 8, 2026 Counsel for NTEU