No. 26-1575

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## MEGAN JACKLER and BRANDON JAROCH,

*Petitioners*,

v.

## DEPARTMENT OF JUSTICE and DIRECTOR OF THE OFFICE
## OF PERSONNEL MANAGEMENT,

*Respondents*.

On Appeal from Order of the
United States of America Merit Systems Protection Board
Docket No. CF-0752-26-0069-I-1

## BRIEF OF *AMICI CURIAE* LABOR ORGANIZATIONS IN SUPPORT OF PETITIONERS AND REVERSAL

Harold Craig Becker
Democracy Defenders Fund
600 Pennsylvania Ave., SE No. 15180
Washington, D.C. 20003
202-594-9958

Counsel for *Amici Curiae*

## CERTIFICATE OF INTEREST

Counsel for Amici certify as follows:

1. The full name of every party represented by us is:

   American Federation of Government Employees (AFGE), American Federation of State, County & Municipal Employees (AFSCME), International Federation of Professional and Technical Engineers ("IFPTE"), National Federation of Federal Employees ("NFFE"), International Association of Machinists and Aerospace Workers ("IAM"), American Federation of Labor and Congress of Industrial Organizations (AFL-CIO)

2. The name of the real party in interest represented by us is: Same as above.

3. All parent corporations and publicly held companies that own 10% or more of stock in the parties represented by us are: No person or entity owns stock in the above.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are: None.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal: None.

6. The names and information of any organizational victims in a criminal case under Fed. R. App. P. 26.1(b) and the names and information of any bankruptcy case debtors and trustees under Fed. R. App. P. 26.1(c):  N/A.

Dated: June 16, 2026

Respectfully submitted,

*/s/ Harold Craig Becker*
Harold Craig Becker
Democracy Defenders Fund
600 Pennsylvania Ave. SE 15180
Washington, D.C. 20003

i

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................................. i

TABLE OF AUTHORITIES ............................................................................... iii

INTEREST OF THE AMICI CURIAE ...............................................................1

ARGUMENT ......................................................................................................2

    I.    The Assertion of Executive Power at Issue Threatens the Entire Statutory Civil Service System from Bottom to Top ........................................................3

        A.    The Administration Asserts the Authority to Fire Any Employee, Whatever Their Rank or Duties Without Cause or Any Process Merely by Citing Article II ........................................................................................4

        B.    The Administration Asserts the Prerogative to Fire All High-Ranking Employees Without Cause of Process Despite Congress Granting the Executive Less Drastic Means to Ensure the President Can Control Their Actions............7

        C.    The Administration Asserts that Not Only the President but Every Agency Head Has the Prerogative to Fire Any Employee Without Cause or Process...10

    II.    The MSPB Is Wrong ...............................................................................12

        A.    The Plain Text of the Constitution Contradicts the Administration's Position ........................................................................................................12

        B.    140 Years of Supreme Court Precedent Contradicts the Administration's Position ........................................................................................................14

        C.    *Morrison* Contradicts the Administration's Position ...............................17

        D.    The Long-Standing Existence of a Statutorily Mandated Civil Service System Contradicts the Administration's Position...........................................20

CONCLUSION ...................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Arnett v. Kennedy*, 416 U.S. 134 (1974)...............................................................20

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012)......................................................9

*Free Enterprise Fund v. Public Company Accounting Oversight Board,*
   561 U.S. 477 (2010)............................................................... 10, 16, 21, 22

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935) ...................................5

*Meads v. VA*, 36 MSPR 574 (1988)......................................................................20

*Mitchell v. USPS*, 7 MSPR 141 (1981)...................................................................20

*Morrison v. Olson*, 487 U.S. 654 (1988) ....................................................... passim

*Myers v. United States*, 272 U.S. 52 (1926) ......................................... 13, 15, 16, 17

*NLRB v. Noel Canning*, 573 U.S. 513 (2014).........................................................22

*Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020)..17

*United States v. Arthrex, Inc.*, 594 U.S. 1 (2021) ....................................................19

*United States v. Perkins*, 116 U.S. 483 (1886) ..................................... 14, 15, 16, 17

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952)....................... 13, 14

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 4....................................................................................14

U.S. Const. art. II .......................................................................................... passim

U. S. Const. art. II, § 2, cl. 2 .................................................................................13

U.S. Const. art. II, § 3 ............................................................................................12

**Statutes**

5 U.S.C. § 2302(a)(2)(B) .......................................................................................21

5 U.S.C. § 3302......................................................................................................21

5 U.S.C. § 3395(a) .................................................................................................10

5 U.S.C. § 3395(a)(1)...............................................................................................8

5 U.S.C. § 3592(a)(2)...............................................................................................9

5 U.S.C. § 7511(b)(2)..............................................................................................21

5 U.S.C. § 7513(a)-(d) .............................................................................................9

Ethics in Government Act of 1978, Pub. L. No. 95-521, 92 Stat. 1824...................17

Pendleton Civil Service Reform Act ch. 22, 22 Stat. 403 (1883)...........................20

**Legislative Materials**

H.R. Conf. Rep. No. 100–452 (1987)......................................................................19

Civil Service Reform Act of 1978, S. Rep. 95-969 (July 10, 1978)........................21

**Other Authorities**

Implementing Schedule Policy/Career in the Excepted Service, Executive Order
(June 3, 2026)............................................................................................21
Sullivan, Eileen, Trump Order Removes Job Protection From Federal Workers,
N.Y. TIMES (June 3, 2026)........................................................................21

Amici labor unions, together representing over one million federal employees, submit this brief in support of Petitioners and reversal because the radical, unprecedented and sweeping assertion of unilateral presidential power endorsed by the Merit Systems Protection Board threatens the statutory rights of all the approximately 2.5 million federal employees Congress sought to protect in the Civil Service Reform Act (CSRA).[1]

## INTEREST OF THE AMICI CURIAE

Amicus American Federation of Government Employees (AFGE), the largest federal employee union, represents approximately 800,000 federal civilian employees.

Amicus American Federation of State, County & Municipal Employees (AFSCME) is the largest trade union of public employees in the United States, with 1.4 million members, including federal civilian employees employed in departments and agencies across the federal government.

Amicus International Federation of Professional and Technical Engineers ("IFPTE") represents employees within the federal government, including administrative judges as well as engineers, scientists, technical specialists, and others.

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person—other than the amici curiae and their counsel—contributed money that was intended to fund preparing or submitting this brief. All parties consent to the filing of this brief.

Amicus National Federation of Federal Employees ("NFFE") represents federal employees across a broad range of departments and agencies including the Department of Veteran Affairs, Department of Defense, U.S. Forest Service, National Park Service, and others.

Amicus International Association of Machinists and Aerospace Workers ("IAM") represents federal workers largely in the Department of Defense, the Bureau of Printing and Engraving and the Department of the State, as well as other departments and agencies.

Amicus National Association of Government Employees ("NAGE") represents federal employees in a wide range of roles in departments and agencies, including, but not limited to, the Departments of Defense, Veterans Affairs, Commerce, and Transportation.

Amicus American Federation of Labor and Congress of Industrial Organizations (AFL-CIO) is a federation of 63 national and international labor unions that represent nearly 15 million working people, including substantial numbers of federal employees

Together amici represent federal employees in every state of the union and virtually every job classification in the federal civil service.

### ARGUMENT

Petitioners have persuasively and definitively explained why the text of the Constitution as well as binding Supreme Court precedent stretching from 1886 to date

require reversal of the MSPB's decision. Amici write separately primarily to inform the Court about the capacious nature of the current administration's assertion of unilateral executive branch authority to fire employees without any cause or process despite clear, express statutory provisions barring such actions. Amici ask this Court to hold that the administration's assertion of Article II authority to circumvent the CSRA is unlawful in relation to the Petitioners and in all the manifestations described *infra* in Section I. At a minimum, the Court should clearly define the limits of its holding in this case so that it is not applied to other categories of federal employees, thereby refuting the suggestion that any other manifestation of this administration's unprecedented and unsupported assertion of authority to violate the long-standing, statutory rights of federal employees is lawful.[2]

I. **The Assertion of Executive Power at Issue Threatens the Entire Statutory Civil Service System from Bottom to Top**

The assertion of executive power in these cases and in other cases involving amici's members threatens the foundations of the civil service system. While the instant

---

[2] In these cases, unlike in the others described *infra* in Section I, the agency limits its argument and the MSPB correspondingly limits its holding. As the MSPB notes, "The agency's argument hinges on the nature of the appellants' positions . . . and does not apply to the broad swath of section 751-protected employees who are not inferior officers." Pet. Appx. at 9. "Nowhere does the agency (or OPM) argue that section 7513's removal protections are invalid on their face for all Federal employees." *Id*. at 10. And the Board specifically limits its holding by stating, "Our holding in this case does not mean that an agency can deprive the Board of jurisdiction over an adverse action merely by invoking Article II authority." *Id*. at 16.

cases involve summary terminations by the Attorney General of Immigration Judges, who the MSPB erroneously held are inferior officers exercising greater, unchecked executive authority than that at issue in *Morrison v. Olson*, 487 U.S. 654 (1988), it is critical for the Court to understand that, in other cases, the administration's assertion of Article II authority to summarily terminate employees in violation of express statutory protections has swept far more broadly in each of the following respects, and therefore a decision in the government's favor here would risk undermining the entire CSRA.

**A. The Administration Asserts the Authority to Fire Any Employee, Whatever Their Rank or Duties Without Cause or Any Process Merely by Citing Article II**

The administration has asserted Article II authority to fire protected employees without cause or any process even if they are *not* officers of the United States, whether principal or inferior, but are ordinary employees.

In a parallel case before the MSPB involving the appeal of a summary termination *via* an assertion of Article II authority by an employee protected by the CSRA, the administration asserts,

> The agency is unaware of any Supreme Court opinions addressing the question of whether congress can restrict the President's removal power of an employee who is not a Constitutional, whether Principal or inferior officer. . . .
> . . . .

. . . . As neither one of the[] recognized exceptions [to the President's unrestricted removal power[3]] applies to mere employees, rather than Constitutional officers, Appellant's CSRA challenge must be dismissed.

Agency Narrative Response and Motion to Dismiss for Lack of Jurisdiction at 8 n.3, 9, *Comans v. Dep't of Homeland Security*, No. DC-0752-25-1783-I-1 (MSPB).[4]

The administration has also asserted Article II authority to summarily fire statutorily protected employees without regard to their rank or duties. The amici and the undersigned counsel represent employees who worked as Assistant United States Attorneys, Chief Financial Officers, Supervisory Public Affairs Specialists, Program Analysts, and in other classifications, all of whom were protected by the CSRA but nevertheless were fired *via* a naked assertion of Article II authority without any cause or process. The undersigned counsel are also aware of employees in positions such as Grants Management Analyst, Information Technology Specialist, Management and

---

[3] The "exceptions" referred to in the brief are for members of bipartisan independent agencies, *see Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and inferior officers whose decisions are subject to review by a superior officer, *see Morrison* 487 U.S. at 654.

[4] Amici recognize that non-parties cannot access the docket in MSPB cases. Amici's counsel represent that all quotations from documents in those dockets in this brief are accurate. Moreover, Respondents' counsel can access the dockets through agency counsel in the cited case and, to the extent that requires consent of the Appellant-Employee, Mary Comans, the undersigned counsel represents Ms. Comans before the MSPB and hereby consents to such access by Respondents' counsel. If the Court requests, Amici will also file a supplemental appendix containing the cited documents.

Program Analyst, and other nonsupervisory classifications who were fired in the same manner. Those employees hold grades as low as GS-9.

The administration has taken the position that the President has constitutional authority to fire employees in clear violation of the CSRA not based on the rank or duties of the employees, but rather on the grounds the Executive cites for the action. The administration has taken the position that there are two types of adverse personnel actions – (1) actions taken by an agency for cause, which Congress can subject to the requirements of the CSRA, *i.e.*, they may only be taken for cause and after according due process, and (2) actions taken by the President or the head of an agency based on an assertion of Article II authority, which may not constitutionally be constrained by Congress, *regardless* of the rank or duties of the employee at issue. In the parallel case before the MSPB cited *supra*, the administration asserts:

> Although Congress has granted *agencies* authority to remove employees pursuant to Chapter 75, that statutory authority is separate and distinct from the President's inherent removal authority under Article II. Long before the passage of the Civil Service Reform Act (CSRA), "the President's absolute power of removal of federal employees was established in principle."

Agency Closing Brief and Motion to Dismiss at 4, *Comans* (MSPB) (citation omitted).

In another filing in the same case, the administration elaborates:

> The CSRA is a Congressional grant of authority to Executive agencies to remove employees, and Congress may set the terms that agencies must follow in exercising that statutory authority. But the President's Article II authority to direct the removal of an employee is a different matter, and the President's authority should be unrestricted.

6

Agency Narrative Response and Motion to Dismiss for Lack of Jurisdiction at 7, *id.* The administration asserts that "[t]he CSRA is silent . . . on the President's inherent power to remove executive employees." *Id.* at 3. The CSRA "is inapposite, because that statute governs whether 'an agency may take an action' to remove an employee" and is "unavailing" in respect to "a Presidentially-directed removal action." *Id*. at 6. "There is no law, rule, or regulation that confers jurisdiction on the Board to review removal actions taken pursuant to Article II." *Id*. The administration expressly asserts, "no statute may constrain the President's authority" to fire employees. Agency Closing Brief and Motion to Dismiss at 8, *id*.

In other words, the administration's radical construction of Article II, in relation to which the two cases before the Court represent only the tip of the iceberg, would permit the President to fire *any* employee of the federal government, no matter how high or low in rank or duties, by simply citing Article II accepted in full, this construction would render the congressionally enacted protections contained in the CSRA unconstitutional as applied to any adverse employment action.

### B. The Administration Asserts the Prerogative to Fire All High-Ranking Employees Without Cause of Process Despite Congress Granting the Executive Less Drastic Means to Ensure the President Can Control Their Actions

The administration not only asserts that the mere citation of Article II grants it authority to fire statutorily protected employees without cause or any process no matter how limited or routine their duties, it asserts the same authority over high-ranking

7

employees, those in the Senior Executive Service (SES), even though Congress has already accorded the President greater and constitutionally sufficient authority to displace and discipline and thus to control such employees.

Some of the amici and undersigned counsel represent employees who were in the SES, received notices of termination citing Article II, and  were terminated without any cause or process. *See, e.g.*, Complaint ¶¶ 3, 14-23, Docket No. 1, *Comans v. Executive Office of the President*, Case No. 25-1237 (E.D.Va.) (Chief Financial Officer, Federal Emergency Management Agency); Complaint ¶¶ 8, 20-22, 38-47, Docket No. 1, *Gordon v. Executive Office of the President*, Case No. 25-02409 (D.D.C.) (Director, Departmental Ethics Office, Department of Justice).

In recognition of the greater need of the President and agency heads to control the actions of members of the SES, Congress did not grant those employees the full range of substantive and procedural protections accorded to lower-level employees. The CSRA gives agency heads discretion to reassign members of the SES without any cause or process and to remove them from the SES (but not federal service) for reasons falling short of just cause. Congress specifically permitted the transfer of a career SES employee to another position within the SES for any reason or no reason at all. *See* 5 U.S.C. § 3395(a)(1). Congress also authorized the reassignment of a member of the SES to another civil service position *outside* the SES, *i.e.*, to demote the SES employee, for "less than fully successful executive performance," provided that the employee receives

8

notice and is provided an "informal hearing before an official designated by the [MSPB]." 5 U.S.C. § 3592(a)(2). The later provision contrasts with the protection accorded lower-level employees against demotion, which requires "such cause as will promote the efficiency of the service," an opportunity to respond to the alleged cause, and the right to appeal to the MSPB and obtain a full, formal hearing. 5 U.S.C. § 7513(a)-(d).

The Supreme Court has repeatedly emphasized the "painstaking detail" with which Congress defined the rights of federal employees in the CSRA. *See, e.g., Elgin v. Dep't of Treasury*, 567 U.S. 1, 11 (2012). In doing so, Congress limited the rights of SES employees and thereby expanded the President's authority to control their actions precisely to accommodate the President's greater need to control those higher-ranking employees in order to fulfill his duty to "take care that the laws be faithfully executed." *Id.*

Despite this considerable authority possessed by the President and agency heads to take action if they are not satisfied with the performance of a member of the SES, the administration takes the position that that authority is not sufficient and that Article II permits the President to remove members of the SES from the federal service entirely without any cause or process despite the contrary command in the CSRA.

But the Supreme Court has directly addressed the CSRA's limited protection of SES employees and explained that the protections do not impermissibly constrain the

9

President's control over executive branch employees. In *Free Enterprise Fund v. Public Company Accounting Oversight Board,* 561 U.S. 477 (2010), the Supreme Court distinguished the CSRA's protections of members of the SES from that of the Members of the Public Company Accounting Oversight Board at issue in that case on the grounds that "members of the Senior Executive Service may be reassigned . . . ." *Id.* at 506 (citing 5 U.S.C. § 3395(a)). As the Court observed, the limited protection accorded members of the SES do not create the kind of "significant and unusual protections from Presidential oversight" that would render the protections unconstitutional. *Id.* Answering the question posed in *Morrison,* whether the limited "removal restrictions [granted SES employees] are of such a nature that they impede the President's ability to perform his constitutional duty," 487 U.S. at 691, the Court strongly suggested the answer is no. Yet the administration continues to defend summary termination of SES employees.

## C. The Administration Asserts that Not Only the President but Every Agency Head Has the Prerogative to Fire Any Employee Without Cause or Process

The administration has asserted the sweeping Article II authority to fire statutorily protected employees described in Subsection A and B, *supra*, whether or not the President himself directs that the adverse action be taken. The administration takes the position that every agency head can invoke Article II to summarily discharge employees in clear violation of the CSRA.

Some of the amici and undersigned counsel represent employees who received termination notices that state:

> This action is being taken pursuant to Article II of the United States Constitution, *at the direction of the President*. Article II, § 1 states that the executive Power "shall be vested in a President of the United States of America," and this termination is an exercise of that vested power.

*See* Complaint ¶ 5, *Comans v. Executive Office of the President* (emphasis added). But some of the amici and undersigned counsel also represent employees who received notices of termination from the Attorney General that do not indicate the President directed the termination but nonetheless characterize the termination as an exercise of Article II authority that is not constrained by the for-cause or procedural requirements of the CSRA. *See* Complaint §§ 24-25, 34-35, 39-40, *Gordon*. And the administration's assertion of plenary power to terminate statutorily protected employees is not even limited to the President and Attorney General. In the parallel case before the MSPB cited *supra*, the administration asserts, "The President's authority also may be exercised by the heads of departments." Agency Closing Brief and Motion to Dismiss at 7, *Comans* (MSPB).

Thus, the radical assertion of unilateral Article II authority to disregard congressionally mandated protection of employees that is at issue here is a capacious one that not only threatens to reach *any* employee in the federal service, no matter how high or low, and no matter that the President and agency heads already have sufficient authority to control the employees' actions, but also threatens to be be asserted not only

11

by the President but also by other administration officials by mere reference to Article II.[5]

## II.    The MSPB Is Wrong

Even leaving aside the damage it threatens to leave in its wake in the context of the breadth of this administration's assertion of executive authority to fire employees in clear violation of the CSRA in other cases, the MSPB's decision below is wrong for four, independent reasons.

### A. The Plain Text of the Constitution Contradicts the Administration's Position

The assertion of unilateral executive authority over executive branch employment under Article II at issue here is contradicted by the plain text of the Constitution's Appointments Clause. Contrary to the "unitary executive theory" underlying the administration's position and the suggestion that the President must have the ability to summarily hire and fire federal employees in order the "take care that the laws be faithfully executed," U.S. Const. art. II, § 3, the Appointments Clause *on its face* does not give the President unilateral authority over executive branch employment.

---

[5] In light of the breadth of the administration's assertion of Article II authority, its insistence before the MSPB that it was making only an "as-applied constitutional challenge" to the CSRA, Pet. Appx. at 7 n. 5, as opposed to a facial challenge, was highly misleading. Amici do not concede that the MSPB has jurisdiction to decide the constitutional question at issue for the reasons explained by the Petitioners below and accepted by the Administrative Judge.

The Appointments Clause, Article II, Section 2, Clause 2, provides that the President:

> shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: *but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.*

U. S. Const. art. II, § 2, cl. 2 (emphasis added). The clause thus expressly limits the President's power over federal employment, even the employment of inferior officers, as it provides that Congress can remove the power of appointment of such officers from the President and vest it in the courts or the heads of departments. The Constitution does not create a "unitary executive" in the area of employment and most definitely does not give the President unilateral authority to hire and fire in order to allow the President to "take care that the laws be faithfully executed." As the Supreme Court recognize in *Myers v. United States*, 272 U.S. 52, 127 (1926), "Here then is an express provision introduced in words of exception for the exercise by Congress of legislative power in the matter of appointments *and removals* in the case of inferior executive officers." (emphasis added).

The framers did not place authority over federal employment solely in the executive branch, rather, they vested authority to distribute the power to appoint inferior officers in Congress. In his oft-cited concurrence in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637-38 (1952) (Jackson, J., concurring), Justice Jackson wrote,

13

"When the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb, for then he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter.". Here, the President is taking actions "incompatible with the expressed . . . will of Congress," and thus his power "is at its lowest ebb," and the Constitution vests significant powers in Congress "over the matter" of employment[6] thus subtracting from the President's power. The plain text of the Constitution contradicts the administration's assertion of plenary presidential power over federal employment.

### B. 140 Years of Supreme Court Precedent Contradicts the Administration's Position

As Petitioners persuasively demonstrate, an unbroken line of Supreme Court precedent stretching back to 1886 makes clear that Congress can limit the President's power to summarily fire inferior officers and ordinary federal employees.[7]

The Supreme Court held over a century ago that Congress can limit the grounds for removal of inferior officers whose appointment Congress vested in a department head. In *United States v. Perkins*, 116 U.S. 483 (1886), the Court held:

> when congress, by law, vests the appointment of inferior officers in the heads of departments, it may limit and restrict the power of

---

[6] Of course, the Constitution also vests authority in Congress to regulate immigration. *See* U.S. Const. art. I, § 8, cl. 4.

[7] Lest there be any doubt that that is the administration's position, it asserted in the *Comans* MSPB case discussed *supra* that "Congress by statute, could not constrain the President's authority to remove an inferior officer." Agency Closing Brief at 8, *id*.

14

removal as it deems best for the public interest. The constitutional authority in congress to thus vest the appointment implies authority to limit, restrict, and regulate the removal by such laws as congress may enact in relation to the officers so appointed.

*Id.* at 485. *Perkins* had not been overruled and it thus controls here.[8]

In fact, not only has *Perkins* not been overruled, it has been repeatedly reaffirmed by the Supreme Court in subsequent decades. A century ago, in 1926, in *Myers*, 272 U.S. at 126-27, the Court recognized,

> [T]he power of appointment and removal is clearly provided for by the Constitution, and the legislative power of Congress in respect to both is excluded save by the specific exception as to inferior offices in the clause that follows. This is 'but the Congress may by law vest the appointment of such inferior officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.' These words, it has been held by this court, give to Congress the power to limit and regulate removal of such inferior officers by heads of departments when it exercises its constitutional power to lodge the power of appointment with them.
> *United States v. Perkins*, 116 U. S. 483, 485 [(1886)].

The Court explained further, "Congress has authority to provide for [specified executive branch officers] and prescribe their compensation, terms and duties. It may leave with the President the right to appoint them with consent of the Senate or direct another to appoint. In the latter event *United States v. Perkins*, 116 U. S. 483, makes it clear that the right to remove may be restricted." *Myers*, 272 U.S. at 192.

---

[8] The Board cites *Perkins* without discussing its holding and, in fact, suggests that Perkins supports propositions it most certainly does not. *See* Pet. Appx. at 11, Pet. Appx. at 13, Pet. Appx. at 14-15, Pet. Appx. at 16.

A century later in *Morrison*, the Court rejected the suggestion "that the language of Article II vesting the executive power of the United States in the President requires that every officer of the United States exercising any part of that power must serve at the pleasure of the President and be removable by him at will," explaining that that suggestion is "contrary to our holding in *United States v. Perkins*." *Morrison*, 487 U.S. at 689 n.29. The Court elaborated,

> this Court has never held that the Constitution prevents Congress from imposing limitations on the President's power to remove *all* executive officials simply because they wield 'executive' power. *Myers* itself expressly distinguished cases in which Congress had chosen to vest the appointment of 'inferior' executive officials in the head of a department. See 272 U.S., at 161–163, 164. In such a situation, we saw no specific constitutional impediment to congressionally imposed restrictions on the President's removal powers. See also *United States v. Perkins,* 116 U.S. 483, 485.

*Id.* at 689 n.27.[9]

Two decades later, in *Free Enterprise Fund,* 561 U.S. at 483, the Court again explained:

> Since 1789, the Constitution has been understood to empower the President to keep these officers accountable—by removing them from office, if necessary. See generally *Myers v. United States,* 272 U.S. 52 (1926). This Court has determined, however, that this authority is not without limit. . . . [I]n *United States v. Perkins,* 116 U.S. 483 . . . , the Court sustained . . . restrictions on the power of principal executive officers—themselves responsible to the President—to remove their own inferiors.

---

[9] Even in dissent, Justice Scalia made clear that "*Perkins* is in no way inconsistent with my views." 487 U.S. at 724 n.4 (Scalia, J., dissenting).

16

The Court made clear that when Congress vests the appointment power in the heads of departments, "it is ordinarily the department head, rather than the President, who enjoys the power of removal" and "[t]he Court has upheld for-cause limitations on that power." *Id*. at 493.

Most recently in *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 217 (2020), the Court stated once more, "We have recognized a second exception [to the President's removal power] for *inferior* officers in two cases, [including] *United States* v. *Perkins*."

An unbroken line of Supreme Court precedent extending from 1887 to date has thus held that when Congress vests the appointment of inferior officers in agency heads, rather than in the President, it can also limit the grounds for removal of those officers by the agency head and the President.

## C. *Morrison* Contradicts the Administration's Position

In 1988, the Supreme Court held in *Morrison* that Congress had the constitutional authority to impose a just-cause limitation on the Attorney General's power to fire an independent counsel appointed under the Ethics in Government Act of 1978. In so doing, the Court firmly rejected the radical assertion of Presidential power advanced by this administration as described in Section I *supra*: "The assumption was short-lived that the *Myers* case recognized the President's inherent constitutional power to remove officials no matter what the relation of the executive to the discharge of their duties and

17

no matter what restrictions Congress may have imposed regarding the nature of their tenure." *Morrison*, 487 U.S. at 690 (cleaned up).[10] Rather, the Court explained, "the real question is whether the removal restrictions are of such a nature that they impede the President's ability to perform his constitutional duty." *Id*. at 691.

The *Morrison* Court proceeded to hold that so long as the decisions of inferior officers are subject to review by a superior officer, Congress can afford the former protection against discharge except for just cause without infringing Article II. The Court concluded, "Considering . . . the 'good cause' removal provision in isolation from the other parts of the Act at issue in this case, we cannot say that the imposition of a 'good cause' standard for removal by itself unduly trammels on executive authority." *Id*. The Court explained:

> Nor do we think that the 'good cause' removal provision at issue here impermissibly burdens the President's power to control or supervise the independent counsel, as an executive official, in the execution of his or her duties under the Act. This is not a case in which the power to remove an executive official has been completely stripped from the President, thus providing no means for the President to ensure the 'faithful execution' of the laws. Rather, because the independent counsel may be terminated for 'good cause,' the Executive, through the Attorney General, retains ample authority to assure that the counsel is competently performing his or her statutory responsibilities in a manner that comports with the provisions of the Act. Although we need not decide in this case exactly what is encompassed

---

[10] Even Justice Scalia, an ardent advocate of executive authority over federal employment, acknowledged in his dissent in *Morrison* that the suggestion that "every officer of the United States exercising any part of [the executive] power must serve at the pleasure of the President . . . . has never been the law." *Morrison*, 487 U.S. at 724 n. 4 (Scalia, J., dissenting).

18

within the term 'good cause' under the Act, the legislative history of the removal provision also makes clear that the Attorney General may remove an independent counsel for "misconduct." See H.R. Conf. Rep. No. 100–452, p. 37 (1987). . . . We do not think that this limitation as it presently stands sufficiently deprives the President of control over the independent counsel to interfere impermissibly with his constitutional obligation to ensure the faithful execution of the laws.

*Id*. at 692-93 (footnote omitted).[11] In other words, regardless of the rank or duties of the inferior officer or employee at issue, Congress' imposition of a "good cause" requirement for termination does not unconstitutionally impair the executive's authority so long as the officer's or employee's decisions are subject to review by a superior officer. The President, directly or through an agency head removable by him at will, can order the inferior officer or employee to take lawful actions and the refusal to carry them out or failure to competently carry them out would provide good cause for disciplinary action.[12]

---

[11] Justice Scalia, in dissent, agreed: the President must have "plenary power to remove principal officers . . . , but it does not require that he have plenary power to remove inferior officers. Since the latter are . . . subordinate to, *i.e.,* subject to the supervision of, principal officers who (being removable at will) have the President's complete confidence, it is enough—at least if they have been appointed by the President or by a principal officer—that they be removable *for cause,* which would include, of course, the failure to accept supervision." *Id*. at 724 n.4 (Scalia, J., dissenting).

[12] As Petitioners demonstrate, Pet. Br. at 32-34, 43-46, the holding in *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021), is based on the same principle. In that case, the members of the Patent Trial and Appeal Board were protected from removal by the CSRA, *id.* at 25-26, and their decisions were not fully reviewable by the Director of the Patent Office, who is appointed by the President with the advice and consent of the Senate, *id.* at 8-9, 17. The Court held that that insulation from both removal and review was unconstitutional, but rather than invalidate the former, it invalidated the latter. *Id.* at 26. Thus, the Court held that providing for review by an officer of the United States, rendered the statutory protection of the inferior

19

The CSRA provides no more protection than that *see, e.g.*, *Meads v. VA*, 36 MSPR 574, 584 (1988) (upholding discharge for failure to follow orders); *Mitchell v. USPS*, 7 MSPR 141, 142 (1981) (same), and thus *Morrison* contradicts both the administration's position and the holding of the MSPB here.[13] And it should go without saying that if Congress can limit the process and grounds for removal of inferior officers, which as Petitioners and amici show it can, then it may unquestionably do the same in relation to ordinary employees.

### D. The Long-Standing Existence of a Statutorily Mandated Civil Service System Contradicts the Administration's Position

Since the adoption of the Pendleton Civil Service Reform Act ch. 22, 22 Stat. 403 (1883) , the "keystone in the present arch of Civil Service legislation," *Arnett v. Kennedy*, 416 U.S. 134, 149 (1974), federal employment has been governed by a civil service system that limits the President's unilateral authority over the vast majority of federal employees. As the Senate Report on what became the CSRA explains:

---

officers constitutional. Thus, even conceding that the MSPB's conclusions are correct, which they are not, the remedy would be to invalidate any restrictions on review of Immigration Judge's decisions, not to invalidate the Judge's protection by the CSRA.

[13] The MPSB erroneously held that the fact that "these appellants . . . are inferior officers who exercise significant adjudicative and policymaking authorities on behalf of the United States—abrogates otherwise-applicable statutory removal protections." Petitioners' Add. 2. And to the extent the MSPB suggested that the Immigration Judges' decisions are not subject to review by a superior officer, Petitioner's demonstrate that is wrong. Pet. Br. at 51-54.

> The civil service system is the product on an earlier reform, which, in protest against the 19th century spoils system, promised a work force in which employees were selected and advanced on the basis of competence rather than political or personal favoritism. Protection of the merit principle in federal employment has been accomplished through the enactment of numerous laws, rules, and regulations [adopted since that time].

Civil Service Reform Act of 1978, S. Rep. 95-969 at 2-3 (July 10, 1978).

Both the executive and the legislative branch agreed to the original adoption of that system and to multiple revisions of the system over the past almost 150 years.[14] The system constrains executive power over federal employees in some respects and acknowledges the need for plenary presidential authority in others. As the Supreme Court noted in *Free Enterprise Fund,* 561 U.S. at 506, "[s]enior or policymaking positions in government may be excepted from the competitive service to ensure Presidential control, see 5 U.S.C. §§2302(a)(2)(B), 3302, 7511(b)(2)."[15] And the Supreme Court has never questioned the constitutionality of the substantive or procedural constraints on executive authority over employment that are at the heart of the civil service system. As recently as

---

[14] Moreover, the vast majority of states and other political subdivisions operate under parallel systems of public employment.

[15] Only last week, the President invoked the authority ceded to him by Congress to exclude a wide variety of positions from the protections of the CSRA. *See* Implementing Schedule Policy/Career in the Excepted Service, Executive Order (June 3, 2026), https://www.whitehouse.gov/presidential-actions/2026/06/implementing-schedule-policy-career-in-the-excepted-service/. Initial reports suggest that the Order removes approximately 8,000 employees from the protections of the CSRA. *See* Eileen Sullivan, Trump Order Removes Job Protection From Federal Workers, N.Y. TIMES (June 3, 2026), https://www.nytimes.com/2026/06/03/us/politics/trump-executive-order-job-protections.html.

21

2010 the Court made clear in *Free Enterprise Fund,* "Nothing in our opinion . . . should be read to cast doubt on the use of what is colloquially known as the civil service system." 561 U.S. at 506. Nor has any prior President questioned the constitutionality of the civil service system in the manner that the current President does now.

This long-standing means of regulating federal employment, accepted by both the executive and legislative branches, is entitled to considerable weight in assessing the current administration's novel challenge to its constitutionality. The "interpretive questions before" this Court "concern the allocation of power between two elected branches of Government" and therefore the Court must "*put significant weight upon historical practice.*" *NLRB v. Noel Canning*, 573 U.S. 513, 524 (2014) (emphasis in original).

The long-standing, inter-branch acceptance of the limitations on executive authority inherent in the civil service system contradict the administration's position.

## CONCLUSION

For the above-stated reasons, this Court should reverse the decision of the MSPB.

Date: June 16, 2026                          Respectfully submitted,

                                             */s/ Harold Craig Becker*
                                             Harold Craig Becker
                                             Democracy Defenders Fund
                                             600 Pennsylvania Ave., SE No. 15180
                                             Washington, D.C. 20003
                                             202-594-9958
                                             craig@democracydefenders.org

22

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing with the United States Court of Appeals for the Federal Circuit through the CM/ECF system on June 16, 2026. I further certify that copies of the foregoing will be served by email on the Merit Systems Protection Board, which consented to email service, at the addressed below:

Katherine.smith@mspb.gov

Stephen.fun@mspb.gov

/s/ Harold Craig Becker
Harold Craig Becker

23