**No. 26-1575**

_____

**In The**

**United States Court of Appeals**

**for the Federal Circuit**

_____

**MEGAN JACKLER AND BRANDON JAROCH,**

*Petitioners,*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**

*Respondent.*

_____

**On Petition for Review from the
Merit Systems Protection Board**

_____

**BRIEF AMICUS CURIAE OF
SOCIAL JUSTICE COLLABORATIVE
IN SUPPORT OF PETITIONERS
SEEKING REVERSAL**

_____

Alan B. Morrison
George Washington University Law School
2000 H Street NW
Washington D.C. 20052
202 994 7120
abmorrison@law.gwu.edu

July 10, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 26-1575

**Short Case Caption** Jackler v DOJ

**Filing Party/Entity** Social Justice Collaborative

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/12/2026

Signature: /s/ Alan B. Morrison

Name: Alan B. Morrison

i

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Social Justice Collaborative | None | None |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐      Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable              ☐    Additional pages attached

| None | | |
|---|---|---|
| | | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐  Yes (file separate notice; see below)   ☐  No   ☑  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☐    None/Not Applicable              ☐    Additional pages attached

| None | | |
|---|---|---|
| | | |

# TABLE OF CONTENTS

Certificate of Interest …………………………………………………………..…...i

Table of Contents..…………………………………………………………………..iv

Table of Authorities ………………………………………………………………….v

Interest of the Amicus…………………………………………………………………..1

Summary of Argument………………………………………………………….2

Argument

    The Decision Below Should Be Reversed Because the Civil Service Reform Act
        Is Constitutional .……………………………………………………………….3

Conclusion …………………………………………………………………….9

Certificate of Compliance ...………………………………………………………….10

# TABLE OF AUTHORITIES

**Cases**

*Caperton v. A.T. Massey Coal Co. Inc.*, 556 U.S. 868 (2009) …………………...5

*Gibson v. Berryhill,* 411 U.S. 564 (1973) …………………………………………...4

*In re Murchison,* 349 U.S. 133 (1955) ………………….……………………..5

*Marcello v. Bonds*, 349 U.S. 302 (1955) ………………………………………….2

*Matthews v. Eldridge,* 424 U.S. 319 (1976) ………………………………………2

*Morrison v. Olson,* 487 U.S. 654 (1988)……………………………………2, 6-7

*Nixon v. Adm'r of the General Services Admin.,* 433 U.S. 425 (1977) ...………..2,6

*United States v. Arthrex, Inc.,* 594 U.S.1 (2021) …………………………………5

*Wiener v. United States*, 357 U.S. 349 (1958) ……………………………………3

**Statutes**

8 U.S.C. § 1229a …………………………………………………………3-4

Civil Service Reform Act, Pub. L. No. 95-454 …………………………………2

# INTEREST OF THE AMICUS[1]

Amicus Social Justice Collaborative ("SJC") is a nonprofit 501(c)(3) public-interest legal organization dedicated to ensuring that low-income immigrants, asylum seekers, unaccompanied children, and displaced families have access to high-quality legal representation regardless of their ability to pay. SJC specializes in full-scope representation of asylum seekers, particularly individuals and families from Central America and Mexico fleeing violence, corruption, and persecution. Because SJC represents asylum seekers and other noncitizens in immigration court proceedings, including individuals with cases pending before Immigration Judges (IJs), it has a strong interest in the fair, orderly, unbiased, and efficient administration of the immigration court system.

An example from SJC's docket illustrates the importance of having IJs who are protected from arbitrary removals. SJC currently represents a woman and her five-year-old daughter in her proceeding to obtain asylum after fleeing severe physical and sexual violence in Guatemala. The merits hearing was held before an IJ on a Friday. At the conclusion of the hearing, the IJ stated on the record that it was his intention to grant asylum. He carefully reviewed the legal elements of asylum and explained how the evidence satisfied each requirement in the case. The

---

[1] This brief is filed as authorized by this Court's order of June 17, 2026. No party's counsel authored the brief in whole or in part; no party or a party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person — other than the amicus curiae, its members, or its counsel — contributed money that was intended to fund preparing or submitting the brief.

Department of Homeland Security requested a written decision. In response, the IJ scheduled a hearing approximately three months later and stated that he would prepare a written decision to be issued then.

Within days of the hearing, however, the IJ was terminated from his position. The case was reassigned to another IJ who, based on publicly available information, appears to have little or no prior experience practicing immigration law. As a result, a mother who had already endured extreme violence, survived a perilous journey to seek protection, and sat through a full merits hearing where the presiding judge announced his intention to grant asylum now finds herself once again in legal limbo.

The stated goal of the present Administration is to have three million non-citizens a year leave the country. Asylum seekers and others who are defending against efforts to remove them need to have their cases heard before a neutral IJ, or at least IJs who are not afraid of losing their jobs because of making a decision that is favorable to the non-citizen. Amicus is submitting this brief to present the perspective of the individuals who appear before IJs and are seeking fair outcomes in their cases, which will be much less likely if the ruling below is upheld.

## SUMMARY OF ARGUMENT

The appellants are the direct losers of the decision below, but there will be other, far more numerous victims if that ruling is sustained. They are the individuals whose cases are heard before IJs who will no longer be neutral adjudicators. Rather,

because they can be removed at will, they will be little more than extensions of the agency that seeks to keep those individuals from remaining in this country.

In its ruling below, the Merit Systems Protection Board held that the protections of the Civil Service Reform Act, Pub. L. No. 95-454, applicable to appellants were unconstitutional as an improper interference with the power of the Attorney General that the laws be faithfully executed. In doing so, it failed to take into account the interest of individuals whose cases are heard by IJs, which Congress may legitimately consider under decisions such as *Morrison v. Olson,* 487 U.S. 654 (1988), and *Nixon v. Adm'r of the General Services Admin.,* 433 U.S. 425 (1977). In those cases, the Court made clear that statutes that limit the power of the President must be upheld unless they substantially infringe on a significant constitutional power of the President. Properly applying those decisions to this case, the Civil Service Reform Act must be sustained.

**ARGUMENT**

**THE DECISION BELOW SHOULD BE REVERSED
BECAUSE THE CIVIL SERVCE REFORM ACT IS CONSTITUTIONAL.**

Due process is a flexible term, and the Supreme Court has recognized in *Matthews v. Eldridge,* 424 U.S. 319 (1976), that Congress may provide different levels of procedural protection depending on the nature of matter. The Court has upheld the adjudication system for immigration matters in *Marcello v. Bonds*, 349

U.S. 302 (1955), even though IJs receive less protection from removal than do ALJs under the Administrative Procedure Act. But less protection does not mean no protection, which is what the ruling below allows, despite the modest protections that Congress explicitly provided before any adverse action may be taken against an IJ.

Various provisions in 8 U.S.C. § 1229a demonstrate that proceedings before IJs are designed to assure that the rights of non-citizens are protected against arbitrary rulings, which would include those resulting from the potential for at-will removal for the IJ who is hearing their case. *Wiener v. United States*, 357 U.S. 349, 356 (1958) ("Congress did not wish to have hang over the Commission the Damocles' sword of removal by the President for no reason other than that he preferred to have on that Commission men of his own choosing.").

Among these provisions in section 1229a is (b)(1)

The immigration judge shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses. The immigration judge may issue subpoenas for the attendance of witnesses and presentation of evidence.

Subparagraph (b)(2)(B) provides that

An evidentiary hearing on the merits may only be conducted through a telephone conference with the consent of the alien involved after the alien has been advised of the right to proceed in person or through video conference.

Under subsection (b)(4), an alien (A) has the right to be represented by counsel (at his expense) and (B) must be given "a reasonable opportunity to examine the evidence against" him, "to present evidence on [his] own behalf, and to cross-examine witnesses presented by the Government." Subparagraph (c)(1)(A) requires that the "determination of the immigration judge shall be based only on the evidence produced at the hearing" for which "a complete record shall be kept of all testimony and evidence produced at the proceeding." Subparagraph (b)(4)(C).

Congress has been specific regarding the burden of proof. It placed a heavy burden on a non-citizen who is an applicant for admission, paragraph (c)(2), but if the government is seeking removal, the Government "has the burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable. No decision on deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence." Paragraph (c)(3). In making those determinations, Congress also specified in considerable detail the role that credibility may play. Paragraph (b)(4)(C).

Three Supreme Court decisions underscore how far from the Due Process norm is the ruling that allows IJs to be removed at will whenever the Attorney General disagrees with their decisions that rule in favor of the non-citizen. In *Gibson v. Berryhill,* 411 U.S. 564 (1973), the Court held that it violated Due Process for a state board of optometry to adjudicate a complaint against several licensed

5

optometrists when the members of the board were economic competitors of those whose licenses were at stake. Similarly, in *Caperton v. A.T. Massey Coal Co. Inc.*, 556 U.S. 868, 872 (2009), the Court held that the Due Process Clause was violated when one of the justices in the 3-2 majority "had received campaign contributions in an extraordinary amount from, and through the efforts of, the board chairman and principal officer of the corporation found liable" for $50 million in damages. Third, one of the authorities relied on in *Caperton*, 556 U.S. at 880, was *In re Murchison,* 349 U.S. 133 (1955), in which the Court set aside a contempt citation issued by the judge whose order the accused allegedly disobeyed. In doing so, the Court observed, that "our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." *Id.* at 136. To be sure, IJ's who are subject to at will removal have no direct stake in the outcome of specific cases that they hear, but they also know that if they reach the "wrong" result more than occasionally, they will be looking for other employment.

Nor does the fact that the Board of Immigration Appeals and the Attorney General have substantial authority to set aside decisions of the IJ suggest that there is no reason why Congress did not want a modicum of protection for IJs against arbitrary removal. Indeed, the ability to correct injustice directly provides a further reason for the Attorney General not to be allowed to do so indirectly by removing

IJs with whose decisions they disagree. Just as the Constitution did not require that the ALJs in *United States v. Arthrex, Inc.,* 594 U.S.1 (2021), have to be removable at will, where a principal officer had the authority to override their specific decisions, so here there is no constitutional basis for requiring that IJs be subject to at will removal−and many reasons to conclude the contrary.

The proper test to assess the constitutionality of the statute at issue here was set forth in *Nixon v. Adm'r of the General Services Admin.,* 433 U.S. 425 (1977), and reaffirmed in *Morrison v. Olson,* 487 U.S. 654 (1988). *Nixon* was not a removal case, but one in which Congress enacted a law taking control of the papers and tapes of the former President related to his time in office, which he claimed broadly infringed on his powers as President. The opinion cited the many reasons why Congress acted to gain possession of them, and the Court rejected a broad claim of presidential power:

> Rather, in determining whether the Act disrupts the proper balance between the coordinate branches, the proper inquiry focuses on the extent to which it prevents the Executive Branch from accomplishing its constitutionally assigned functions. *United States v. Nixon*, 418 U.S. at 711-712. Only where the potential for disruption is present must we then determine whether that impact is justified by an overriding need to promote objectives within the constitutional authority of Congress.

433 U.S. at 443.

Similarly, in *Morrison*, which did involve a removal limitation, the Court turned aside a claim that the lack of presidential control over the Independent Counsel rendered the statute unconstitutional:

> Notwithstanding the fact that the counsel is to some degree "independent" and free from executive supervision to a greater extent than other federal prosecutors, in our view these features of the Act give the Executive Branch sufficient control over the independent counsel to ensure that the President is able to perform his constitutionally assigned duties.

487 U.S. at 696.

Amicus does not ask the Court to rule that due process would be violated if IJs were subject to at will removal. It does ask the Court to recognize that the individuals who appear before IJs have a substantial stake in the relative independence of IJs and that Congress could, and properly did, take that interest into account when it provided IJs significant, if less than complete, protection against arbitrary removals.

**CONCLUSION**

For the forgoing reasons and those set forth in the brief of petitioners, the decision below should be reversed, and the case remanded for further proceedings.

Respectfully Submitted

<u>/s/ Alan B. Morrison</u>
Alan B. Morrison
George Washington University Law School
2000 H Street NW
Washington D. C. 20052
202 994 7120
abmorrison@law.gwu.edu

Counsel for the Amicus Curiae

July 10, 2026

# CERTIFICATE OF COMPLIANCE

I, Alan B. Morrison, counsel for the amicus curiae Social Justice Collaborative, do hereby certify that this brief complies with the type-volume limitation in FRAP 32(a)(7)(B)(i), and contains 1949 words, exclusive of those items excluded by FRAP 32(f) and Fed Cir Rule 32(b)(2).

/s/ Alan B. Morrison

July 10, 2026