No. 26-1575

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

**MEGAN JACKLER AND BRANDON JAROCH,**
*Petitioners,*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent,*

**UNITED STATES DEPARTMENT OF JUSTICE,**
*Intervenor.*

Petition for Review from the Merit Systems Protection Board
MSPB Docket No. CF-0752-26-0069-I-1

**BRIEF *AMICUS CURIAE* OF JUSTICE CONNECTION**

Kerrie D. Riggs, D.C. Bar No. 995784
Jeremy D. Wright, D.C. Bar No. 483297
Kator, Parks, Weiser & Wright, P.L.L.C.
1150 Connecticut Ave., NW, Suite 705
Washington, DC 20036
202-898-4800
kriggs@katorparks.com
jwright@katorparks.com

July 28, 2026                 *Counsel for Amicus Curiae Justice Connection*

## Certificate of Interest

Counsel for Justice Connection certifies the following:

1. The full name of every party or *amicus* represented by me is:
   **Justice Connection.**

2. The names of the real parties in interest represented by me are: **None.**

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or *amicus curiae* represented by me are: **None. There is no such corporation as described in paragraph 3.**

4. The names of all law firms and the partners or associates that have not entered an appearance in the appeal, or are expected to appear for the entity in this court: **None.**

5. Other than the originating case number(s), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal: **None. There is no such case as described in paragraph 5.**

6. All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases: **None.**

 /s/ Kerrie D. Riggs
Kerrie D. Riggs
Kator, Parks, Weiser & Wright, P.L.L.C.

i

**Statement of Identity and Interest of *Amicus Curiae***

Justice Connection provides direct support to the Department of Justice's apolitical career workforce. As a network of DOJ alumni, the organization connects current and recent employees with pro bono legal representation, mental health counseling, employment assistance, and media support. It also advocates for the integrity of DOJ's mission-critical work and speaks out in defense of the rule of law.

**Disclosure Statement**

Justice Connection is a 501(c)(3) tax-exempt nonprofit organization. There is no publicly held corporation that owns 10% or more of its stock.

**Statement Regarding Brief for *Amicus Curiae***

The brief of *Amicus Curiae* Justice Connection was authored by *Amicus Curiae*'s counsel. The brief was not authored in part or in full by a party or party's counsel. No party to this case or party's counsel contributed money that was intended to fund preparing or submitting this brief. No person — other than *Amicus Curiae* or its counsel — contributed money that was intended to fund preparing or submitting this brief.

**Table of Contents**

Certificate of Interest ................................................................................ i

Statement of Identity and Interest of *Amicus Curiae*............................... ii

Disclosure Statement................................................................................ ii

Statement Regarding Brief for *Amicus Curiae* ....................................... ii

Table of Contents ..................................................................................... iii

Table of Authorities................................................................................. iv

Argument.................................................................................................1

1.  The Statutory Protections of All Federal Civil Servants Is At Issue in This Case...................................................................................................2

2.  Examples of Article II Terminations Demonstrate the Need to Enforce the Statutory Protections of an Independent Civil Service. .......................................3

3.  The Court Should Reverse the Board's Decision and Protect a Professional, Independent Civil Service. ..............................................................7

Conclusion ..............................................................................................10

Certificate of Compliance ........................................................................11

Certificate of Service ...............................................................................11

**Table of Authorities**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...............................................2

*Lovshin v. Dep't of the Navy*, 767 F.2d 826 (Fed. Cir. 1985)................................8, 9

*Palmeri v. Merit Sys. Prot. Bd.*, 164 F.4th 878 (Fed. Cir. 2026)..............................8

*Sinn v. Dep't of Justice,* No. DC-315H-25-1961-I-1, 2026 MSPB LEXIS 1467
    (M.S.P.B. Mar. 12, 2026)..........................................................................................3

*Stone v. FDIC*, 179 F.3d 1368 (Fed. Cir. 1999) ........................................................11

*United States v. Fausto*, 484 U.S. 439 (1988)..........................................................8

**Statutes**

Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7701, *et seq.*..................... 2, 4, 8-11

Hatch Act, Pub. L. No. 76-252, 53 Stat. 1147 (1939)................................................9

Pendleton Act, Pub. L. No. 47–27, 22 Stat. 403 (1883) ............................................9

**Other Authorities**

Carrie Johnson, *FBI agents sue after being fired for kneeling during racial justice
    protest*, NATIONAL PUBLIC RADIO (Dec. 8, 2025):
    https://www.npr.org/2025/12/08/g-s1-100970/fbi-agents-kneel-protest-lawsuit...7

Eric Tucker & Alanna Durkin Richer, *How the Trump administration erased
    centuries of Justice Department experience*, THE ASSOCIATED PRESS (Jan. 16,
    2026): https://apnews.com/article/justice-department-bondi-trump-firings-
    prosecutors-b4134e5db9d9ff7963fc8c4bf7a0a166. ................................................8

Evan Perez, *Justice Department fires immigration lawyer who argued case of
    mistakenly deported man*, CNN (Apr. 15, 2025):
    https://www.cnn.com/2025/04/15/politics/doj-fires-immigration-lawyer-who-
    argued-abrego-garcia-case-source-says...................................................................6

Heather Knight and Hamed Aleaziz, *Trump Fired a U.S. Attorney Who Insisted on
    Following a Court Order*, THE NEW YORK TIMES (Sept. 26, 2025):
    https://www.nytimes.com/2025/09/26/us/trump-fires-us-attorney-california-
    immigration.html. .....................................................................................................5

Jon D. Michaels, *An Enduring, Evolving Separation of Powers*, 115 Colum. L.
    Rev. 515, 546 (2015) ...............................................................................................10

Perry Stein, "*Trump administration removes ATF general counsel*, THE WASHINGTON POST (Feb. 20, 2005): https://www.washingtonpost.com/national-security/2025/02/20/atf-general-counsel-fired-pam-hicks/. ....................................6

Sam Levine, *Interview: A top DoJ official trained Pam Bondi on ethics rules in the department. Then he was fired*, THE GUARDIAN (Jan. 3, 2026): https://www.theguardian.com/us-news/2026/jan/03/pam-bondi-doj-joseph-tirell-fired. ......................................................................................................5

Scott MacFarlane, *Veteran FBI employee files lawsuit claiming he was fired for displaying Pride flag*, CBS NEWS (Nov. 19, 2025): https://www.cbsnews.com/news/fbi-lawsuit-employee-fired-pride-flag/. ..............7

Senate Report, 1978 U.S. Code Cong. & Ad. News.............................................9, 10

**Rules**

Fed. R. App. P. 32(a)(5) ...............................................................................13

Fed. R. App. P. 32(a)(6) ...............................................................................13

Fed. R. App. P. 32(a)(7)(B) ...........................................................................13

## Argument

In its decision in this case, the Merit Systems Protection Board ruled that it lacked jurisdiction to consider appeals of removal actions of Petitioners Megan Jackler and Brandon Jaroch. The Board ruled that Article II abrogates the procedural and substantive removal protections of the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7701, *et seq.*, for certain federal civil service workers.

The Board's decision in this case marked a fundamental change in the law that covers over two million current federal civil service workers. For the first time, the Board ruled that the President has unfettered discretion to terminate the employment of career civil service workers.

The Board's decision canceled the statutory protections in place since 1978, and federal civil service principles that have been in place for about 150 years.

The Court's decision on this appeal will impact not only the employment of the two petitioners. A decision on the constitutionality of the CSRA (and its protections of a professional civil service) may impact the rights of millions of federal civil servants, and could hamper the functioning of the federal government. As discussed below, since January 2025, more than 150 Department of Justice career employees have already been terminated in violation of statutory law under the government's presumption that the CSRA is unconstitutional as to those employees.

1

The Court should decide this case in an expedient manner in order to clarify the exceptional constitutional question presented before more termination actions are taken. Clarification of the legal protections for federal government civil servants is critical for civil servants and high-level government officials to properly manage the federal government's business.

The Court should reverse the decision of the Merit Systems Protection Board in this case, and uphold the statutory rights of federal civil servants.

1. **The Statutory Protections of All Federal Civil Servants Is At Issue in This Case.**

The government's terminations of the Petitioners were not test cases. Over 100 additional federal career civil servants have also been terminated since January 2025 under the administration's assumed power under Article II, despite the protections of the CSRA. Indeed, there are currently over 100 MSPB appeals that are pending involving terminations that were handled in the same manner as the terminations of Petitioners Jackler and Jaroch. The MSPB has entered orders dismissing without prejudice many of these cases pending a resolution of the appeals of Petitioners in this case. *See, e.g., Sinn v. Dep't of Justice,* No. DC-315H-25-1961-I-1, 2026 MSPB LEXIS 1467 (M.S.P.B. Mar. 12, 2026) (Initial Decision).

Based on information that Justice Connection has collected, since January 2025, there were at least 162 termination actions of DOJ career civil service workers

2

in which Article II of the U.S. Constitution was cited as the basis for the termination. These removal actions have occurred without a merit-based justification or the procedural due process required by the CSRA. These removal actions have been continuing since January 2025, with no indication that such terminations will cease in the near future. Further, information obtained by Justice Connection shows that these removal actions have impacted civil servants from various components and subagencies within DOJ, including, but not limited to, attorneys from Main Justice and U.S. Attorneys Offices, FBI agents and analysts, Immigration Judges, and employees of the U.S. Marshals Service.

Information from the MSPB shows that during the time period from January 2025 to April 2026, there were about 130 cases filed that involve employment actions taken under Article II. In addition to appeals from DOJ employees, MSPB appeals of Article II terminations have been filed by civil servants from the Department of Homeland Security and the Department of Health and Human Services.

2. **Examples of Article II Terminations Demonstrate the Need to Enforce the Statutory Protections of an Independent Civil Service.**

Examples of terminations of civil service employees under Article II since January 2025 demonstrate the harm that will result from the eradication of the principles embraced by the CSRA. These examples (based on news reports and

3

allegations from the terminated employees) demonstrate the real harm that can be imposed on the professional functioning of the federal government if the CSRA's protections are eliminated.

*Joseph Tirrell*: Mr. Tirrell worked in the FBI for 11 years and DOJ for seven years, serving as the Director of Departmental Ethics for the last two. He trained former Attorney General Pam Bondi and other top officials on the department's ethics rules, and had recurring battles with Bondi over her ability to accept gifts. He was fired in July 2025 by Bondi without due process via email while he was on vacation.[1]

*Michele Beckwith*: Ms. Beckwith spent more than 15 years as a federal prosecutor, culminating in her position as Acting U.S. Attorney for the Eastern District of California. She was fired in July 2025 after raising concerns that a planned U.S. Customs and Border Protection raid of a Sacramento Home Depot could violate court orders. She raised these concerns with Greg Bovino, who was the CBP's chief patrol agent in the district at the time. Five and a half hours later, she was fired by the White House.[2]

---

[1] Sam Levine, *Interview: A top DoJ official trained Pam Bondi on ethics rules in the department. Then he was fired*, THE GUARDIAN (Jan. 3, 2026): https://www.theguardian.com/us-news/2026/jan/03/pam-bondi-doj-joseph-tirell-fired.

[2] Heather Knight and Hamed Aleaziz, *Trump Fired a U.S. Attorney Who Insisted on Following a Court Order*, THE NEW YORK TIMES (Sept. 26, 2025): https://www.nytimes.com/2025/09/26/us/trump-fires-us-attorney-california-immigration.html.

4

*Pamela Hicks*: Ms. Hicks, a 23-year veteran of the Department of Justice, was terminated without advance notice in February 2025 by former Attorney General Pam Bondi. Ms. Hicks served as the general counsel for the Bureau of Alcohol, Tobacco, Firearms and Explosives since 2021, and worked as a DOJ lawyer for more than two decades.[3]

*Erez Reuveni*: Mr. Reuveni was fired in April 2025 after being placed on administrative leave by Deputy Attorney General Todd Blanche for truthfully telling a judge that Kilmar Abrego Garcia was deported erroneously. In court, Mr. Reuveni expressed frustration at the government's inability to provide answers and said "[Abrego Garcia] should not have been sent to El Salvador." Reuveni worked as a DOJ lawyer for nearly 15 years before being terminated under Article II.[4]

*David Maltinsky*: Mr. Maltinsky, a FBI special agent trainee and 16-year Bureau veteran, was fired by FBI Director Kash Patel in October 2025 for displaying a pride flag at his workstation during a prior assignment at the Los Angeles Field Office. Mr. Maltinsky, a gay man, was given the flag by the FBI to recognize his

---

[3] Perry Stein, "*Trump administration removes ATF general counsel*, THE WASHINGTON POST (Feb. 20, 2005): https://www.washingtonpost.com/national-security/2025/02/20/atf-general-counsel-fired-pam-hicks/.

[4] Evan Perez, *Justice Department fires immigration lawyer who argued case of mistakenly deported man*, CNN (Apr. 15, 2025): https://www.cnn.com/2025/04/15/politics/doj-fires-immigration-lawyer-who-argued-abrego-garcia-case-source-says.

work supporting LGBTQ+ colleagues. He was fired just weeks before finishing special agent training at Quantico.[5]

*FBI Protest Responders*: Twelve FBI agents with nearly 200 years of combined experience were fired by FBI Director Kash Patel in September 2025 for kneeling during a racial justice protest in 2020 in the wake of George Floyd's killing. The agents were on crowd control duties, despite never having had training in it, and took a knee to de-escalate a situation in Washington, D.C. Despite a DOJ inspector general's report in 2024 that found no misconduct, Patel demoted several of the agents before firing them all under Article II in September 2025.[6]

*Michael Ben'Ary*: Mr. Ben'Ary led the national security unit in the U.S. Attorney's Office for the Eastern District of Virginia when he was fired in October 2025, after spending nearly 20 years as a DOJ prosecutor. He was fired just hours after Julie Kelly, a right-wing commentator, said Mr. Ben'Ary previously served as a senior counsel to former Deputy Attorney General Lisa Monaco and resisted the prosecution of FBI Director James Comey, even though Mr. Ben'Ary was not involved in the case. Prior to his termination, Mr. Ben'Ary was the lead prosecutor

---

[5] Scott MacFarlane, *Veteran FBI employee files lawsuit claiming he was fired for displaying Pride flag*, CBS NEWS (Nov. 19, 2025): https://www.cbsnews.com/news/fbi-lawsuit-employee-fired-pride-flag/.

[6] Carrie Johnson, *FBI agents sue after being fired for kneeling during racial justice protest*, NATIONAL PUBLIC RADIO (Dec. 8, 2025): https://www.npr.org/2025/12/08/g-s1-100970/fbi-agents-kneel-protest-lawsuit.

in the Abbey Gate case against an accused terrorist alleged to have been involved in the 2021 suicide bombing in Afghanistan that killed 13 U.S. service members.[7]

These are but a few examples of DOJ professionals being subjected to termination without due process or any requirement to uphold a merit-based system. As these examples demonstrate, the eradication of the CSRA's protections had led and will continue to lead to the politization and de-professionalization of the career civil service.

### 3. The Court Should Reverse the Board's Decision and Protect a Professional, Independent Civil Service.

As this Court recently affirmed, "the Civil Service Reform Act ('CSRA'), ushered in a new system 'designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration.'" *Palmeri v. Merit Sys. Prot. Bd.*, 164 F.4th 878, 881 (Fed. Cir. 2026) (quoting *United States v. Fausto*, 484 U.S. 439, 445 (1988)). The Act "specifically enacted into law" "merit principles," which "Congress viewed … from the advantage to the *public*." *Lovshin v. Dep't of the Navy*, 767 F.2d 826, 831 (Fed. Cir. 1985) (emphasis in original).

---

[7] Eric Tucker & Alanna Durkin Richer, *How the Trump administration erased centuries of Justice Department experience*, THE ASSOCIATED PRESS (Jan. 16, 2026): https://apnews.com/article/justice-department-bondi-trump-firings-prosecutors-b4134e5db9d9ff7963fc8c4bf7a0a166.

The Board's decision in this case eradicates protections put in place to "'[a]llow civil servants to be able to be hired and fired more easily, but for the right reasons,'" *Lovshin, supra* (quoting S. Rep. at 4, 1978 U.S. Code Cong. & Ad. News at 2726).

Congress began developing merit-based civil service laws in 1883 to counter the spoils system that pervaded each early presidential administration. Under the spoils system, "[p]olitical leaders installed cronies—sometimes manifestly unqualified ones—in a range of positions, with the ever-present prospect of turnover undermining expertise, morale, and the quality of government service." *Id.* at 1573 (citing Ari Hoogenboom, *The Pendleton Act and the Civil Service*, 64 Am. Hist. Rev. 301, 301–02 (1959)). In response to the spoils system, Congress passed laws to professionalize the civil service, including the Pendleton Act, the Hatch Act, and the CSRA. The Pendleton Act established that federal workers should be hired based on their merit and qualifications, rather than political affiliation or cronyism. Pendleton Act, Pub. L. No. 47–27, 22 Stat. 403 (1883). The Hatch Act restricted federal employees' political activities to ensure they would remain nonpartisan while executing official duties. Hatch Act, Pub. L. No. 76-252, 53 Stat. 1147 (1939) (codified as amended at 5 U.S.C. §§ 1501–08, 7321–26).

And the CSRA embraced prior civil service protections, while expanding procedural protections and review mechanisms. Civil Service Reform Act, Pub. L.

8

No. 95–454, 92 Stat. 1111 (1978). Among other things, the CSRA created an independent MSPB to mitigate the political conflicts of interest that existed under the prior system for adjudicating civil servants' claims. Previously, the Civil Service Commission served as the primary administrator of all civil service laws, which required it to "simultaneously serve as a management agent for a President elected through a partisan political process as well as the protection of the merit system from partisan abuse." S. Rep. No. 95-969, at 5 (1978) (finding that the Commission struggled with "role conflicts inherent in the responsibilities and authorities assigned" to it). Each of these laws was intended to insulate Executive Branch administration from politics and to allow the government to function in a manner that benefits all Americans.

These laws advance separation of powers interests by ensuring nonpartisan actors committed to the fair administration and enforcement of the laws can counteract impulses driven by political agendas, rather than faithful execution of the laws passed by Congress. *See* Jon D. Michaels, *An Enduring, Evolving Separation of Powers*, 115 Colum. L. Rev. 515, 546 (2015).

The CSRA establishes the "Merit System Principles," which dictate that "[a]ll employees and applicants for employment" in the civil service "should receive fair and equitable treatment in all aspects of personnel management without regard to political affiliation," and "[e]mployees should be protected against arbitrary action,

personal favoritism, or coercion for partisan political purposes." 5 U.S.C. § 2301(b)(2), (b)(8)(A).

This Court has long affirmed the CSRA and its due process protections that support a professional civil service. *See, e.g., Stone v. FDIC*, 179 F.3d 1368, 1374 (Fed. Cir. 1999) ("If the government gives a public employee assurances of continued employment or conditions dismissal only for specific reasons, the public employee has a property interest in continued employment.").

Eradication of the protections provided under the CSRA will have a grave impact on the functioning of the federal government, and the credibility of the federal workforce with the American people. With respect to the Department of Justice, it will also further undermine the department's credibility with the courts.

**Conclusion**

For these reasons, the Court should reverse the decision of the Merit Systems Protection Board and preserve the longstanding and vital protections Congress created through the Civil Service Reform Act.

Respectfully submitted,

\_\_\_\_**/s/ Kerrie D. Riggs**_____

Kerrie D. Riggs
Jeremy D. Wright
Kator, Parks, Weiser & Wright, P.L.L.C.

July 28, 2026                    *Counsel for Amicus Curiae Justice Connection*

**Certificate of Compliance**

Pursuant to Rule 32, the undersigned attorney certifies that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32 because this brief contains 2339 words, excluding the parts of the brief exempted by the Rules.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman in 14 point (and 12 point for footnotes).

/s/ Kerrie D. Riggs
Kerrie D. Riggs

**Certificate of Service**

I hereby certify that on July 28, 2026, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Federal Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Kerrie D. Riggs
Kerrie D. Riggs

11