***No. 26-1575***

IN THE

# United States Court of Appeals

FOR THE FEDERAL CIRCUIT

MEGAN JACKLER, BRANDON JAROCH,

*Petitioners,*

*v.*

MERIT SYSTEMS PROTECTION BOARD,

*Respondent,*

DEPARTMENT OF JUSTICE,

*Intervenor.*

*On Petition for Review*
*from the Merit Systems Protection Board*

## BRIEF FOR *AMICUS CURIAE* THE MERIT SYSTEMS PROTECTION BOARD PROFESSIONAL ASSOCIATION IN SUPPORT OF PETITIONERS AND REVERSING THE MERIT SYSTEMS PROTECTION BOARD'S DECISION

Trisha Anderson
HECKER FINK LLP
*Attorneys for* Amicus Curiae
*Merit Systems Protection Board Professional Association*
1050 K Street NW, 10th Floor
Washington, D.C. 20001
212-763-0883

PHP (212) 719-0990
appeals@phpny.com

## CERTIFICATE OF INTEREST

Counsel for amicus the Merit Systems Protection Board Professional Association certifies the following:

1. The full names of every party represented by me are:

   **The Merit Systems Protection Board Professional Association.**

2. The full names of the real parties in interest represented by me are:

   **Not Applicable.**

3. Parent corporations and publicly held companies that own 10 percent or more of the stock of the parties represented by me.

   **Not Applicable.**

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case are):

   **Not Applicable.**

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47.4(a)(5) and 47.5(b).

   **Not Applicable.**

*/s/ Trisha Anderson*
Trisha Anderson

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... iii

INTEREST OF AMICUS CURIAE ..... 1

SUMMARY OF ARGUMENT ..... 2

ARGUMENT ..... 3

I. The Board's Extraordinary Decision Conflicts with Longstanding Supreme Court Precedents Affirming the Constitutionality of Civil Service Protections ..... 4

II. The Board's Unsettling of Civil Service Protections Disregards over a Century of Practice by Congress and the Executive Branch ..... 5

III. The Board's Decision Threatens To Disrupt the CSRA's System of Review and the Ability of MSPB Administrative Judges To Fairly Adjudicate Disputes ..... 10

a. Affirming the Board's decision would risk stripping MSPB administrative judges of their civil service protections ..... 10

b. If MSPB administrative judges are stripped of their civil service protections, it would undermine civil service protections for all federal employees ..... 11

CONCLUSION ..... 16

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Azarkhish v. Off. of Pers. Mgmt.*,
915 F.2d 675 (Fed. Cir. 1990) ....................11

*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006)....................13

*Collins v. Yellen*,
594 U.S. 220 (2021)....................5

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010)....................5

*Haebe v. Dep't of Just.*,
288 F.3d 1288 (Fed. Cir. 2002) ....................15

*In re Murchison*,
349 U.S. 133 (1955)....................14

*Kennedy v. Braidwood Mgmt., Inc.*,
606 U.S. 748 (2025)....................13

*Kimm v. Dep't of Treasury*,
61 F.3d 888 (Fed. Cir. 1995) ....................15

*Leatherbury v. Dep't of the Army*,
524 F.3d 1293 (Fed. Cir. 2008) ....................15

*McIntosh v. Dep't of Def.*,
53 F.4th 630 (Fed. Cir. 2022) ....................11

*Morrison v. Olson*,
487 U.S. 654 (1988)....................4, 5

*NLRB v. Noel Canning*,
573 U.S. 513 (2014)....................9

*Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*,
391 U.S. 563 (1968).....13

*The Pocket Veto Case*,
279 U.S. 655 (1929).....9

*Seila Law, L.L.C. v. Consumer Financial Protection Bureau*,
591 U.S. 197 (2020).....4, 5

*The Baltimore Sun Co. v. Ehrlich*,
437 F.3d 410 (4th Cir. 2006).....13

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021).....4, 5

*United States v. Perkins*,
116 U.S. 483 (1886).....4, 5

*Williams v. Pennsylvania*,
579 U.S. 1 (2016).....14

**Statutes**

5 U.S.C. § 7513(a).....1, 4, 7

5 U.S.C. § 7701(e)(1).....1

5 U.S.C. § 7703.....11

8 U.S.C. § 1101(b)(4).....11

28 U.S.C. § 1295(a)(9).....1, 11

Pendleton Civil Service Reform Act, Ch. 27, 22 Stat. 403 (1883).....6

**Rules**

Fed. R. App. P. 29(a)(4)(E).....1

**Regulations**

5 C.F.R. §§ 1201.11–1201.113.....11

5 C.F.R. § 1201.41(b).....11, 12

8 C.F.R. § 1003.10(b) ........................................ 11

8 C.F.R. § 1003.10(c) ........................................ 11

8 C.F.R. § 1003.10(d) ........................................ 11

**Other Authorities**

124 Cong. Rec. 27505 (Aug. 24, 1978) ........................................ 7, 15

135 Cong. Rec. 5012 (Mar. 21, 1989) (statement of Rep. Parris) ........................................ 8

Drew Friedman,
*After Slaughter Decision, MSPB No Longer Calling Itself 'Independent,'* FED. NEWS NETWORK (July 21, 2026), https://federalnewsnetwork.com/management/2026/07/after-slaughter-decision-mspb-no-longer-calling-itself-independent ........................................ 14

George H.W. Bush, Remarks on Signing the Whistleblower Protection Act of 1989 (Apr. 10, 1989), *reprinted in* The American Presidency Project (Gerhard Peters & John T. Woolley eds.) ........................................ 9

Jimmy Carter, Federal Civil Service Reform Message to the Congress (Mar. 2, 1978), *reprinted in* The American Presidency Project (Gerhard Peters & John T. Woolley eds.) ........................................ 8

Jonah E. Bromwich, et al.,
*White House Secretly Swayed Board Meant to Stop Civil Service Politicization*, N.Y. TIMES (June 28, 2026) https://www.nytimes.com/2026/06/28/us/politics/trump-firings-workersmerit-systems-protection-board.html ........................................ 14

Letter from Office of the Attorney General to Sen. Levin, 135 Cong. Rec. 5012, 5033-34 (Mar. 3, 1989) ........................................ 8

Office of Mgmt. & Budget, President's Reorganization Project: Personnel Management Project, Final Staff Report (1977) ........................................ 8

S. Rep. No. 95-969 (1978) ........................................ 8

U.S. Civil Service Comm'n, Eighteenth Report of the United States Civil Service Commission 1, 37 (1902) (quoting Exec. Order No. 119 (May 29, 1899) ....................................................6

*Violations and Abuses of Merit Principles in Federal Employment Part I: Hearings Before the Subcomm. on Manpower & Civ. Serv. of the H. Comm. on Post Off. & Civ. Serv.*, 94th Cong. 11 (1975) (statement of Robert E. Hampton, Chairman, U.S. Civil Service Commission)........................................................6

## INTEREST OF AMICUS CURIAE

Amicus Curiae is the Merit Systems Protection Board Professional Association (the "Association").[1] The Association is the union of administrative judges and attorney advisors of the Merit Systems Protection Board ("MSPB"). It is also an affiliate of the International Federation of Professional and Technical Engineers.

Millions of federal workers rely on the MSPB to fairly and neutrally adjudicate claims involving civil service protections. The MSPB is an adjudicatory agency tasked by Congress with safeguarding the federal merit system. When a federal employee files an appeal in an adverse employment action case with the MSPB, the case is assigned to an administrative judge. Administrative judges issue initial decisions at the conclusion of proceedings, which are subject to review by the Board and this Court. 5 U.S.C. § 7701(e)(1); 28 U.S.C. § 1295(a)(9). Like many other career federal employees, administrative judges have statutory civil service protections preventing them from being fired without cause. *See* 5 U.S.C. § 7513(a). The MSPB administrative judges have a particular interest in this case because the

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person—other than the amicus curiae and its counsel—contributed money that was intended to fund preparing or submitting this brief. *See* Fed. R. App. P. 29(a)(4)(E). This brief is filed with the authority and consent of all parties.

application of the Board's reasoning to them would substantially affect their ability to perform their statutory mission without fear of reprisal.

## SUMMARY OF ARGUMENT

The Board's decision is incorrect. It departs from well-established Supreme Court precedents upholding statutory removal protections for inferior officers who engage in adjudications, particularly where the initial decision by the adjudicator is subject to further review and revision. It is also contrary to over a century of practice of Congress and the President working together to enact civil service reform laws, including the Civil Service Reform Act ("CSRA"). Throughout this history, Congress and the Executive Branch understood these laws to be valid exercises of legislative power, as well as a reasoned balance between Executive Branch control and the rights of federal employees. This practice and understanding should inform the Court's construction of Article II in the face of the Board's radical assertions about it.

If allowed to stand, moreover, the Board's reasoning could extend far beyond the immigration judges in this case. The Board's decision calls into question the validity of the civil service protections of federal employees across the federal government who perform functions similar to immigration judges, including the MSPB's own administrative judges. If MSPB administrative judges are stripped of their civil service protections, the reverberations of the Board's reasoning would be

felt broadly across the civil service. The civil service protections of the millions of federal employees subject to the MSPB's jurisdiction will be at risk because those workers' claims will be heard by administrative judges under political pressure due to the threat of removal without cause—including because of their decisions in individual cases.

This case is of exceptional importance to the millions of workers subject to civil service protections and the Americans who depend on them to carry out their jobs fairly and free of improper partisan influence. Under the Board's decision, many federal employees can no longer rely on statutory removal protections that have existed for generations. Each day it is allowed to stand, the Board's decision casts a shadow of uncertainty over a broad swath of the federal civil service, threatening the ability of these federal civil servants to perform their varied responsibilities objectively, neutrally, and without fear or favor. This Court should swiftly reverse the MSPB Board's decision and remove that shadow.

## ARGUMENT

As Petitioners ably explain, the Board's novel and incorrect reasoning threatens to upend statutory protections on which the entire civil service relies. Br. 58–61. Amicus submits this brief to highlight three points in support of that view. First, the Board's sweeping decision cannot be reconciled with Supreme Court precedent. Second, the Board's decision undermines over a century of efforts by

Congress and the Executive Branch to establish and preserve a merit-based civil service, a history that must inform this Court's construction of Article II authority. And third, the Board's decision risks impeding the ability of MSPB administrative judges to fairly adjudicate disputes and thereby harms the entire federal workforce.

## I. The Board's Extraordinary Decision Conflicts with Longstanding Supreme Court Precedents Affirming the Constitutionality of Civil Service Protections.

The Board failed to correctly apply the Supreme Court's repeated holdings that Congress may impose removal restrictions on inferior officers. *See, e.g.*, *United States v. Arthrex, Inc.*, 594 U.S. 1, 25–26 (2021); *Morrison v. Olson*, 487 U.S. 654, 691–93 (1988); *United States v. Perkins*, 116 U.S. 483, 484–85 (1886). The Court in *Arthrex*, for example, recently allowed the CSRA's protections against removal to be applied to Administrative Patent Judges as long as their decisions were reviewable by a principal officer. 594 U.S. at 26 (citing 5 U.S.C. § 7513(a)). The Board erred by not following the same approach. *See* Br. 33–35.

The Board instead relied on *Seila Law, L.L.C. v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020), where the Supreme Court observed that Congress's conferral of for-cause removal protections for "inferior officers with limited duties and no policymaking or administrative authority" is constitutionally permissible. *Id.* at 218; Add. 12–14. But *Seila Law* was about the removal of principal, not inferior, officers, and it did not establish a new test for when inferior

officers must be removable for cause, as the Supreme Court itself has clarified. That opinion "did 'not revisit . . . prior decisions allowing certain limitations on the President's removal power,' but [rather] found 'compelling reasons not to extend those precedents to the novel context of an independent agency led by a single Director,'" who was a principal, not an inferior, officer. *Collins v. Yellen*, 594 U.S. 220, 250–51 (2021) (quoting *Seila Law*, 591 U.S. at 204).

Even if, contrary to the Supreme Court's own understanding, *Seila Law* modified the analysis for when inferior officers must be removable at will, the Board misapplied the test. As Petitioners explain, if the independent counsel in *Morrison* who investigated and tried "crimes by high-ranking Government officials" was validly subject to removal restrictions, *Seila Law*, 591 U.S. at 217–18 (describing *Morrison*), then lower-level career civil servants exercising far more limited duties should be as well. *See* Br. 53; *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 507 n.10 (2010); *Arthrex*, 594 U.S. at 26. The Board's contrary conclusion cannot be squared with over a hundred and forty years of Supreme Court precedent—from *Perkins* through *Morrison* and more recent decisions—and should therefore be rejected.

## II. The Board's Unsettling of Civil Service Protections Disregards over a Century of Practice by Congress and the Executive Branch.

For over a century of history, both Congress and the Executive Branch (until now) have recognized both the importance and constitutional validity of civil service

protections. Beginning with the Pendleton Civil Service Reform Act, ch. 27, 22 Stat. 403 (1883), Congress and the President working together have continually reformed the civil service system to create a merit-based system that balances the President's authority with protections for federal employees. The Pendleton Act was enacted in response to decades of the "spoils system" where civil service positions were given as acts of political patronage.

Under the Pendleton Act, the civil service system was managed by the Civil Service Commission. Although its original focus was on the appointment and examination process, its responsibilities expanded to encompass procedural protections for removal after President McKinley signed an executive order establishing that "[n]o removal shall be made from the competitive classified service except for just cause" and that reasons for removal be "given in writing; and the person sought to be removed shall have notice and be furnished a copy of such reasons, and be allowed a reasonable time for personally answering the same in writing." U.S. Civil Service Comm'n, Eighteenth Report of the United States Civil Service Commission 1, 37 (1902) (quoting Exec. Order No. 119 (May 29, 1899)).

As the federal government expanded, the Civil Service Commission became unable to effectively oversee a merit-based civil service system. By the mid-1970s, there were "well over 2 million personnel actions" annually, making it "obviously impossible" for the Commission to effectively review them all. *Violations and*

*Abuses of Merit Principles in Federal Employment Part I: Hearings Before the Subcomm. on Manpower & Civ. Serv. of the H. Comm. on Post Off. & Civ. Serv.*, 94th Cong. 11 (1975) (statement of Robert E. Hampton, Chairman, U.S. Civil Service Commission). After the Watergate scandal, Congress and the President working together enacted further reforms with the CSRA in 1978. The CSRA created new statutory civil service protections for most federal employees, replaced the Civil Service Commission with the MSPB to adjudicate disputes about those protections, and created the Office of Special Counsel to investigate and prosecute alleged violations of the new protections. Among the reforms enacted by the CSRA, Congress conferred modest removal protections on MSPB administrative judges, who are removable "only for such cause as will promote the efficiency of the service," 5 U.S.C. § 7513(a).

The independence of the MSPB, including its administrative judges, was vital to the statutory scheme. Congress intended to ensure that federal employees' civil service claims would be decided by impartial adjudicators. The prior Civil Service Commission had been composed of members who could be "removed . . . at any time for any reason," meaning that it was "not a safe check" on political pressure. *See* 124 Cong. Rec. 27505, 27536 (Aug. 24, 1978). Congress also recognized that the "responsibilities of the [then] current Civil Service Commission for both the management of the civil service system, and adjudication of complaints against the

way the system is implemented, create[d] an irreconcilable conflict." *Id.* The prior system had a "lack of adequate protection" that could only be remedied by "a strong and independent [MSPB]." S. Rep. No. 95-969 (1978) at 6–7. The CSRA's removal protections were part of a system specifically designed to ensure that the "[MSPB] will be independent of the direction and control of the President." *Id.* at 28.

The Executive Branch likewise envisioned the MSPB as an organization "less subject to pressure from the White House, agency heads, and members of Congress." Office of Mgmt. & Budget, President's Reorganization Project: Personnel Management Project, Final Staff Report, at 6 (1977). President Carter underscored the importance of this system guaranteeing "independent and impartial protection to employees" in order to "safeguard the rights of federal employees." Jimmy Carter, Federal Civil Service Reform Message to the Congress (Mar. 2, 1978), *reprinted in* The American Presidency Project (Gerhard Peters & John T. Woolley eds.).

And when Congress and the President modified the scheme in 1989 with the enactment of additional protections for civil service employees in the Whistleblower Protection Act, legislators and the Executive Branch alike praised the Act as a compromise designed to resolve potential separation of powers concerns. *See, e.g.*, 135 Cong. Rec. 5012, 5036–39 (Mar. 21, 1989) (statement of Rep. Parris) ("As amended, S. 20 would resolve the administration's constitutional concerns."); Letter from Office of the Attorney General to Sen. Levin, 135 Cong. Rec. 5012, 5033–34

(Mar. 3, 1989) (Attorney General thanking the Act's sponsor for "forg[ing] a mutually acceptable resolution of our serious constitutional concerns" and "pledg[ing]" to help pass the revised law). President George H.W. Bush described the final bill as the product of "the legislative and executive work[ing] together to eliminate major constitutional flaws." George H.W. Bush, Remarks on Signing the Whistleblower Protection Act of 1989 (Apr. 10, 1989), *reprinted in* The American Presidency Project (Gerhard Peters & John T. Woolley eds.). The President expressly stated that all "constitutional concerns were addressed in the bill," including by "retaining current law" on for-cause removal. *Id.*

In sum, history shows that Congress and the Executive Branch understood removal protections as both constitutional and essential to a merit-based civil service system. This kind of "'[l]ong settled and established practice is a consideration of great weight in a proper interpretation of constitutional provisions' regulating the relationship between Congress and the President," *NLRB v. Noel Canning*, 573 U.S. 513, 524 (2014) (quoting *The Pocket Veto Case*, 279 U.S. 655, 689 (1929)). In the face of Congress's and the Executive Branch's long settled and established practice of recognizing the constitutional validity of civil service protections, the Board's radical reinterpretation of the President's Article II authority should be rejected.

## III. The Board's Decision Threatens To Disrupt the CSRA's System of Review and the Ability of MSPB Administrative Judges To Fairly Adjudicate Disputes.

### a. Affirming the Board's decision would risk stripping MSPB administrative judges of their civil service protections.

If upheld, the Board's reasoning may well extend to many thousands of government employees, undermining the core values of independence and impartiality that Congress and the President enacted the CSRA to protect. Under the Board's view, the removal protections afforded by the CSRA are unconstitutional and therefore inapplicable to any inferior officer exercising more than "limited duties," which the Board defined broadly to extend even to adjudicators whose decisions are "subject to review" by the "Attorney General." Add. 14–15. The Board also adopted the view that the CSRA's removal protections cannot apply to an adjudicator issuing a decision reviewable within the Executive Branch if the topic of the adjudication involves "a significant area of our nation's domestic and foreign policy." *Id*. at 15. As Petitioners explain, it is difficult to discern under the Board's approach which inferior officers could have constitutionally valid civil service protections, *see* Br. 52, 58–59, especially given that countless federal employees perform duties comparably modest to those of immigration judges.

Thus, the Board's novel and incorrect view of Article II has implications extending well beyond the immigration judges at issue here. For example, MSPB administrative judges and immigration judges have similar roles and responsibilities.

*See* 8 U.S.C. § 1101(b)(4) (characterizing immigration judges as a kind of "administrative judge"). Both preside over adjudicatory proceedings, make factual determinations, and issue initial decisions. *See* 8 C.F.R. § 1003.10(b); 5 C.F.R. § 1201.41(b). And both types of initial decisions are subject to further review. 8 U.S.C. § 1101(b)(4); 8 C.F.R. § 1003.10(c), (d); 5 U.S.C. § 7703; 28 U.S.C. § 1295(a)(9); *McIntosh v. Dep't of Def.*, 53 F.4th 630, 640 (Fed. Cir. 2022) (MSPB "maintains significant review authority over administrative judges' decisions"); *Azarkhish v. Off. of Pers. Mgmt.*, 915 F.2d 675, 679 (Fed. Cir. 1990) ("Congress explicitly granted the full Board authority to reopen any initial decision upon its own motion."). Amicus does not concede that it necessarily follows from a conclusion that immigration judges must be removable at will that MSPB administrative judges are too. But the risk of that result is clear from the Board's decision.

**b. If MSPB administrative judges are stripped of their civil service protections, it would undermine civil service protections for all federal employees.**

MSPB administrative judges perform functions essential to upholding the civil service protections for all employees subject to the CSRA. Every day, they adjudicate cases involving civil service protections applicable to rank-and-file federal employees who are not inferior officers. MSPB administrative judges conduct adjudicative proceedings in much the same way as other tribunals. *See generally* 5 C.F.R. §§1201.11–1201.113. Processing of a case may involve issuing

notices and orders, ruling on motions and discovery matters, convening status or prehearing conferences, and facilitating settlement. If a hearing is held, administrative judges are responsible for administering oaths, ruling on offers of proof, receiving relevant evidence, regulating the course of the hearing, ordering the production of evidence, and ruling on witness and exhibit issues. After the hearing or close of the written record, administrative judges issue an initial decision that resolves material issues of fact and law, states the reasons for their findings and conclusions, and states a final disposition of the case. Each step in this process depends on an independent, impartial adjudicator. *See* 5 C.F.R. § 1201.41(b) ("[Administrative] Judges will conduct fair and impartial hearings and will issue timely and clear decisions based on statutes and legal precedents."); *see also* U.S. Merit Systems Protection Board, Judge's Handbook 58 ("[T]he behavior of the [administrative judge] must be characterized by fairness, impartiality, courtesy, decisiveness, and patience.").

Removing civil service protections from MSPB administrative judges would weaken all federal employees' civil service protections by subjecting the adjudication of their cases to decisions by officials subject to the political whims of the President. If the CSRA's civil service protections do not apply to MSPB administrative judges, the Executive Branch may pressure administrative judges to rule for the government in particular cases under the threat of at-will termination or

other retaliation. Even if MSPB administrative judges are not immediately fired, the fear of at-will termination will impose a chilling effect on their willingness to rule for employees who are disfavored by the Administration. *See, e.g.*, *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 574 (1968); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63–64 (2006); *The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 415–16 (4th Cir. 2006). As the Supreme Court has explained, "the authority to remove an officer at will is a powerful tool for control," and "[a]n officer's presumed desire to avoid removal generally creates a here-and-now subservience." *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 762 (2025) (citation and internal quotation marks omitted). Without for-cause removal protections, MSPB administrative judges will face pressure to "obey" the removing authority's commands. *Id*.

MSPB administrative judges are unique in that their own removal protections protect and strengthen removal protections for all employees covered by the CSRA. Unlike other members of the federal workforce, MSPB administrative judges' responsibilities often involve alleged wrongdoing by the federal government. They can only operate fairly and impartially in cases against the government if they cannot be removed by that same government. Otherwise, MSPB administrative judges would face the unfortunate scenario of trying to fairly adjudicate disputes between the federal government and federal employees, knowing a decision in favor of the

federal employee could lead to the administrative judge's dismissal. Such a system cannot provide even the most basic due process for federal employees facing serious adverse employment actions. *See Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) ("Due process guarantees 'an absence of actual bias' on the part of a judge." (quoting *In re Murchison*, 349 U.S. 133, 136 (1955))).

This kind of political pressure is not hypothetical. Recent reporting has revealed that Executive Branch officials exerted pressure on the MSPB to make the underlying ruling in this case. Jonah E. Bromwich, et al., *White House Secretly Swayed Board Meant to Stop Civil Service Politicization*, N.Y. TIMES (June 28, 2026), https://www.nytimes.com/2026/06/28/us/politics/trump-firings-workers-merit-systems-protection-board.html. This came after one of the Board members of the MSPB, Cathy Harris, had been fired in February 2025 without cause, despite a clear for-cause removal protection provision.[2]

Because MSPB administrative judges are finders of fact, this issue is not easily remedied on appeal. This Court defers to MSPB administrative judges on factual findings, which are often the core of adverse employment action disputes.

---

[2] The MSPB also appears to have begun removing all references to its own independence from public communications such as job postings and its website. *See* Drew Friedman, *After Slaughter Decision, MSPB No Longer Calling Itself 'Independent,'* FED. NEWS NETWORK (July 21, 2026), https://federalnewsnetwork.com/management/2026/07/after-slaughter-decision-mspb-no-longer-calling-itself-independent.

*See Haebe v. Dep't of Just.*, 288 F.3d 1288, 1299–1300 (Fed. Cir. 2002). The Board cannot "overturn an administrative judge's demeanor-based credibility findings merely because it disagrees with those findings." *Id.* at 1299. If it does, the Federal Circuit "will not sustain its decision on appeal unless the [B]oard has articulated sound reasons, based on the record, for its contrary evaluation of the testimonial evidence." *Id.* at 1300 (quoting *Kimm v. Dep't of Treasury*, 61 F.3d 888, 892 (Fed. Cir. 1995)); *see, e.g.*, *Leatherbury v. Dep't of the Army*, 524 F.3d 1293, 1306 (Fed. Cir. 2008) (finding "that the Board failed to give the AJ the deference required by *Haebe* and impermissibly reversed the AJ's credibility determination").

This is not an outcome that the Congresses and Presidents who, over more than a century, enacted the system of civil service protections ever envisioned. As Congress understood when it enacted the CSRA, there is "an irreconcilable conflict" between "management of the civil service system" and "adjudication of complaints against" that system. 124 Cong. Rec. 27505, 27536 (Aug. 24, 1978). If MSPB administrative judges do not have civil service protections, then no federal employee has meaningful civil service protections. Amicus urges the Court to resolve this matter as quickly as possible and clarify for federal employees who would be harmed by the Board's reasoning whether they are still protected by the CSRA. Every day that the Board's decision stands, immigration judges and thousands of other

similarly situated federal employees are forced to perform their jobs while fearing arbitrary or politically motivated dismissal.

**CONCLUSION**

The Court should reverse the Board's decision.

Date: July 28, 2026

Respectfully submitted,

*/s/ Trisha Anderson*
Trisha Anderson
*Counsel of Record*
HECKER FINK LLP
1050 K Street NW | 10th Floor
Washington, D.C. 20001
(212) 763-0883
tanderson@heckerfink.com

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) and Fed. Cir. R. 29(b) because this brief contains 3,538 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.

Dated: July 28, 2026

Respectfully submitted,

*/s/ Trisha Anderson*
Trisha Anderson
*Counsel of Record*
HECKER FINK LLP
1050 K Street NW | 10th Floor
Washington, D.C. 20001
(212) 763-0883
tanderson@heckerfink.com

*Counsel for Amicus Curiae*